Declaration of George W. Woods, M.D.
Pursuant to 28 U.S.C. § 1746


I, George W. Woods, M.D., hereby verify and declare and follows:

1. I am a medical doctor with a specialty in neuropsychiatry. I was retained as an expert by the defense in the case of United States v. Edward L. Fields that was tried in the federal court in Muskogee, Oklahoma. I testified on Mr. Fields' behalf and was qualified as an expert in psychiatry by the Court. There has been no material changes to my qualifications since the Court found me qualified in 2005, other than my installation as Secretary General of the International Academy of Law and Mental Health in 2009.

2. Mr. Fields' present lawyers have requested that I tell them about my involvement with the trial team in this case and to comment on the mental health evidence that was presented and not presented at trial.

3. I have known Isaiah Gant for a long while. As I recall, it was at his suggestion that I became involved in this case. This case was my first chance to work with Julie O'Connell. Although both lawyers are wonderful people and skilled attorneys, it was obvious to me almost from the beginning that they did not work well together. I cannot say why that was the case. However, I was a witness to the effect that this inability to work together had on both the pre-trial and trial phases of this case. It was as if Mr. Fields had one lawyer, and not two. Mr. Gant played a very passive role and contributed little to the defense's efforts. In my interactions with counsel during pre-trial discussions and meetings, Ms. O'Connell led the way. She asked the relevant questions and made appropriate suggestions. Mr. Gant did not. During my witness preparations as the trial was approaching, this disparity was even more obvious. Ms. O'Connell did everything regarding my preparation, and handled a variety of other tasks simultaneously, while Mr. Gant did not.

4. Even though Ms. O'Connell was the engaged member of the team, I never believed that she gave the presentation I ultimately made the proper time and attention that it required. I had the definite sense that Ms. O'Connell was in over her head. To be clear, I do not mean that she was not capable of handling a complex set of issues, such as those presented by Mr. Fields' case. Instead, I believed that she was being required to handle too much work to be able to responsibly and competently make the required presentation. From my perspective, it was rather obvious that her inability to pay the required attention to the preparation and presentation of my testimony was traceable to Mr. Gant's failure to carry his share of the work.

5. The effects of the strained relationship between counsel had a toll on the presentation that I was able to make. Our preparation was rushed and incomplete and as a result I do not think that I was able to fully and clearly explain my opinions to the jury. I believed that Mr. Fields suffered from a "manic switch" resulting from the ill-advised administration of Effexor. I understand that the jury did not find this to be the case, and that it found no mental health related mitigating factors. While I obviously do not agree with the jury's findings rejecting the manic switch, I understand and accept it. What is even more troubling to me from a clinical and forensic

perspective is that the jury did not find as a mitigating factor that Mr. Fields had suffered from chronic depression and auditory hallucinations. As I recall one of the Government's experts agreed that he suffered from these conditions. It was especially perplexing that the jury failed to make a positive finding regarding Mr. Fields' depression and hallucinations – after all, they were documented in the medical records that pre-dated the offense and therefore could not reasonably be assailed as malingering.

6. I understand that Daniel Martell, Ph.D., recently administered a battery of neuropsychological tests to Mr. Fields. I also understand that he finds Mr. Fields to be severely impaired, in terms of his overall cognitive functioning, and specifically impaired in frontal lobe functioning, called executive functioning. Dr. Martell has documented not only severe frontal pathology, but a progressive neurological disorder that is diffuse, affecting multiple neurological domains in addition to the frontal lobe dysfunction. I have also reviewed the declaration of Michael Gelbort, Ph.D., who was the neuropsychologist who was retained at trial. He, too, believed that Mr. Fields was impaired in his frontal lobes at the time of his testing. After reviewing Dr. Price's findings, it is Dr.Gelbort's belief that Dr. Price's testing supports Dr. Gelbort's findings as wels.

7. Regardless of whether one accepts my opinion about a manic switch, the presence of frontal lobe impairments is highly significant. People with frontal lobe impairments as severe as those present in Mr. Fields experience disinhibition – that is, an impaired ability to control one's impulses. They also experience impairments in social judgment. Such people act out without making the types of judgments that persons with intact frontal lobe functioning can make. By itself, this type of impairment is a highly mitigating factor. If this impairment is added to my clinical opinion that Mr. Fields underwent a manic switch, then we see a situation where Mr. Fields' already impaired ability to control himself made him even less able to negotiate the flight into mania that I believe occurred.

8. I was provided with Dr. Gelbort's and Dr. Price's report before my testimony and I recall that there had been favorable consideration given earlier in the case to the presentation of organic brain damage or dysfunction as a supplement to my opinion regarding manic switch, or as a free-standing mitigating factor. However, the presentation of brain damage dropped out of the picture in the lawyers' last minute and rushed preparations during trial. I was not prepared by the attorneys to discuss it and was not asked any questions about it. As I now understand, there was no defense presentation of organic brain damage, and all that was presented on that score was the Government's testimony of Dr. Price.

9. In sum, this case stands out as the one where I believe that the jury never received a full, complete and accurate picture of Mr. Fields' mental health deficits and abysmal social history that supported his severe mental illness.

.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalty of perjury, pursuant to 28

U.S.C. § 1746.

George W. Woods, M.D.



Dated:

March 28, 2010

Oakland, California