# From the Office of Bradley D. Grinage, M.D.
## P.O. Box 1116, Lawrence, KS 66044

Date: June 24, 2005

## FORENSIC MENTAL HEALTH EVALUATION

RE: United States of America vs. Edward Leon Fields, Jr.
United States District Court, Eastern District of Oklahoma Case Number: 3CR-73-WH

## IDENTIFYING INFORMATION:

The defendant, Mr. Edward Fields, Jr. is a 38-year-old, divorced, Caucasian male referred for forensic psychiatric assessment by federal public defender Julia L. O'Connell. The defendant was charged with two counts of First Degree Murder, two counts of Use of a Firearm in a Federal Crime of Violence Causing the Death of a Person, one count of Robbery with a Firearm, and one count of Burglary of an Automobile pursuant to Title 18, United States Code, Sections 7, 13, 924, and 1111. Charges stem from events that occurred on July 10, 2003 after the defendant allegedly shot and killed two people and took their possessions against their will and without their consent.

Prior to the interview, the defendant was informed that the usual doctor-patient relationship did not exist and information obtained in the course of the evaluation may not be confidential. He was informed that a report might be prepared and submitted to his defense counsel. He was also informed that the report could possibly be distributed to the Court and prosecuting attorneys, and could be used in legal proceedings. The defendant's responses indicated that he understood the nature of the evaluation and was agreeable to participate.

## REFERRAL QUESTIONS:

Requested was made for the following:

1.  Detailed findings including factors in the defendant's background, record, or character or other circumstance of the offense that may mitigate against imposition of the death sentence;
2.  An opinion as to whether the defendant, at the time of the alleged criminal conduct suffered severe mental or emotional disturbance;
3.  An opinion as to whether there was significant impairment in the defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 2

## SOURCES OF INFORMATION:

Information contained in this report was obtained from:

1.    Referral data from the Federal Public Defender's office
2.    Preliminary Psychosocial Assessment conducted September 11, 2003 by Glori J. Shettles
3.    Oklahoma State Bureau of Investigation records
4.    Muskogee County Detention Center records
5.    Muskogee County Sheriff's office records
6.    Federal Bureau of investigation records
7.    Board of Medicolegal Investigations toxicology and pathology records
8.    LeFlore County Medical Center medical records
9.    Heavener Medical Clinic medical records
10.   Tulsa County Jail medical records
11.   Records from a neuropsychological evaluation conducted by Michael Gelbort, Ph.D. dated August 11, 2004
12.   Fifteen-minute collateral history with Mike Kemp, M.D. on June 22, 2005
13.   Fifteen-minute collateral history George Woods, M.D. conducted June 20, 2005 regarding a neuropsychiatric evaluation
14.   Three-hour clinical interview and mental status examination of the defendant conducted June 18, 2005

## BACKGROUND INFORMATION:

### Family History:

The defendant was born in Oklahoma City, Oklahoma on ███████ and he was raised in Oklahoma, Utah, and West Virginia. Records note that the defendant underwent premature birth with life threatening respiratory distress resulting in prolonged hospitalization due to significant hypoxia (lack of oxygen to the brain). Although records state that there were no further developmental delays, they also indicate that the defendant may have undergone "special education classes" in the fourth and fifth grade for learning disability. The defendant denied physical or sexual abuse as a child.

Records indicate that one of the defendant's paternal cousins has a diagnosis of Bipolar Disorder and his grandmother may have had some psychiatric illness that required electro-convulsive therapy. The defendant reported that his mother was treated for depression and anxiety. He stated that his sister was seen by mental health providers for unknown reasons.

### Developmental History:

As noted above the defendant was born prematurely. He denied knowledge of difficulty with developmental milestones.

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 3

## Educational History:

Reports indicate that the defendant was suspended from school in the 11th grade and he did not complete high school. Records note that he obtained his GED. The defendant reported that he was placed in remedial math and reading classes in the fourth or fifth grade but denied attending behavioral disordered classes. The defendant stated that he left the 11th grade after being suspended to join the United States Navy at the request of his father. He indicated that he was suspended from school for "writing a letter in class." He denied expulsion from school or failing a grade but admitted to infrequent truancy. He reported being involved in one fight in High School.

## Military History:

The defendant stated that he joined the United States Navy Reserves in 1984 and was on active duty in the United States Navy from 1985 to 1988. He noted that he was honorably discharged as an E-5 and received no significant disciplinary action. Military records were not available for review.

## Employment:

The defendant reported that his longest period of employment was working for the Oklahoma Department of Corrections from 1995-2000. He stated that prior to his service in corrections, he worked two separate jobs as an armed security guard. The defendant also described various employment as a factory worker. He worked "temp" jobs for one year in 2002 and stated that during that time he was unable to afford medical care.

## Relationship History:

Records note that the defendant father a daughter in 1986 but did not marry the mother. He described financial stress after that time due to obligations of child support. The defendant indicated that he recently attempted to establish a relationship with his oldest daughter. He stated that the relationship has been difficult because she was angry that he was not available to her in her childhood.

Records note and the defendant confirmed that the defendant's longest intimate relationship was with his wife. He married in 1987 for five years. The defendant reported that he left his wife for another woman for approximately three years. He stated he then remarried his ex-wife. Records indicate that he remarried in 1994. The defendant noted that the marital relationship dissolved in 1999 after his wife and children moved to Virginia. However, they remained married until 2003. The defendant reported that he had a 17 year-old daughter and 15 year-old son by his wife and described his relationships with these two children as strong.

The defendant stated that he has always been "obsessed" with sexual intercourse. He stated that "sex" made him "feel good" whether or not he was depressed. He described approximately 45 sexual partners in his life but noted that his wife and girlfriend of three years between his

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 4

marriages were the primary intimate relationships in his life.

## Health History:

The defendant reported that he has a history of hypoglycemia (low blood sugar) and hand tremor. Medical records confirm the diagnosis of hypoglycemia and also give a history of gastroesophageal reflux, sinobronchitis, lumbosacral strain in 1996, and mild head injury in 1997 without loss of consciousness. He has no known drug allergies but experienced an anaphylactic reaction to a bee sting.

## Alcohol and Drug Use History:

The defendant reported that he first drank alcohol at age 13 and was first drunk at age 13. He described history of black outs associated with alcohol as a young adult but denied withdrawal, seizures, delirium, detoxification, DUIs, or treatment associated with alcohol. He reported that prior to his arrest he was drinking approximately three to four drinks two to three times per week. He denied illicit drug use. The defendant quit smoking one pack of cigarettes per day in 1996.

## Psychiatric History:

The defendant reported and records confirm that he was first seen "a couple of times" by a psychiatrist at age 16 for depression. He described a general depression throughout his life lasting more days than not and with episodic remissions lasting one to two weeks. He stated during periods without depression, he experienced episodes of sleeplessness for up to three days. The defendant noted associated racing thoughts described as "rushing thoughts". In addition, he reported hearing a male "voice" inside his head that appeared separate from his own internal voice. The defendant stated that the voice began when he was 14 years old and he continued to hear the voice intermittently throughout his life. During periods of severe depression the auditory perceptual disturbance became derogatory in nature. He described the voice stating, "You're a dumb ass." The defendant additionally reported auditory hallucinations that were command directed such as "It would tell me to do stupid stuff like quit my job or end a relationship." He reported that the voice was associated with anxiety that was difficult to control unless the voice went away or the command was acted upon.

The defendant reported that his primary care provider evaluated him in 1997 for smoking cessation, depression and anxiety. He described trials of buproprion, paroxetine, and nefazodone (antidepressant medications). The defendant reported that these medications helped "some". Records indicate that the defendant was seen by his primary care provider in February 1999 for "anxiety" and placed on buproprion. Records show that in June of 1999 he carried the diagnosis of depression and in September 1999 he was noted to be on paroxetine. Medical records indicate that the patient was seen in April, May, and June 2000 for "Chronic depression." Records document trials of nefazodone, fluoxetine and citalopram (antidepressant medications).

Medical records show that the defendant was evaluated on April 10, 2003. He was diagnosed

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 5

with "clinical depression" and "compulsive disorder." Records document "voices" that told him to "repetitively sharpen his knives." Collateral history from the treating physician described "odd" affect and repetitive voices that were command in nature such as "go to your girl friend's house." He was placed on escitalopram (antidepressant medication) and antipsychotic medication was considered.

The defendant reported that he had experienced increased suicidal ideation in the months prior to the alleged criminal conduct. Medical records dated May 2003 indicate that the defendant reported suicidal ideation with plan to overdose on amitriptyline (antidepressant medication). He was offered hospitalization. He was allowed to remain as an outpatient and his escitalopram was increased. In June 2003 the defendant's depression was noted to be worse and with ongoing suicidal ideation. The escitalopram was stopped and he was placed on venlafaxine (antidepressant medication). He described increased racing thoughts and increased auditory hallucinations after the initiation of venlafaxine. Collateral history from his treating physician indicated that the defendant's provider received a telephone call by a friend six days after he initiated venlafaxine. The friend was concerned about the defendant's behavior that might be associated with suicidal or homicidal ideation. Records indicate that venlafaxine was doubled in dose approximately three days prior to the alleged criminal conduct.

The defendant stated that after his arrest he experienced daily suicidal ideation. He reported that he had not experienced command auditory perceptual disturbances telling him to hurt himself until after his arrest. He described hearing a voice tell him how to obtain a razor and cut himself. Muskogee County records indicate that the defendant underwent a serious suicide attempt on July 18, 2003 with multiple lacerations to his arm by a razor. He was transported and treated at a local hospital and placed on suicide watch.

Records from Tulsa County Jail indicate that the defendant was transferred to Tulsa County Jail on escitalopram and risperidone (antipsychotic medication). Mental health records dated September and October 2003 describe a diagnosis of Schizoaffective Disorder (primary psychotic disorder) and his medications were changed to lithium carbonate (mood stabilizer) and fluoxetine. He was also maintained on risperidone. Medical records indicate that the defendant was also tried on stelazine (antipsychotic medication). The defendant was ultimately stabilized on 40 milligrams daily of fluoxetine, 900 milligrams nightly of lithium carbonate, 50 milligrams nightly of loxapine (antipsychotic medication), and 4 milligrams nightly trihexyphenidyl (anticholinergic medication for side effects of loxapine). The defendant described his thoughts as slowing down considerably after the initiation of lithium carbonate. He reported that the racing thoughts stopped completely with the initiation of loxapine.

## Legal History:

The defendant denied legal problems or past arrests prior to his current arrest. He stated that he had "been to court" for child support issues. Records indicate that the defendant has not past prior arrests.

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 6

## MENTAL STATUS EXAMINATION:

### Appearance/Behavior:

The defendant was incarcerated at the time of the evaluation and was escorted to the interview room by detention center personnel. He presented as a well-developed Caucasian male who appeared slightly older than his stated age and he appeared to be in no acute distress. The defendant displayed normal kinetics, and his eye contact was varied, but in general appropriate. He was dressed in detention center attire, and his hygiene and grooming were fair. He had a mustache. The defendant's speech was with normal rate, rhythm, tone, and volume. He was without speech impediment. Rapport sufficient for the purpose of the evaluation was established and maintained.

### Mood/Affect:

The defendant stated that his mood was "all right." He described "good" sleep and noted obtaining up to 10 hours of sleep per night. He admitted to poor energy and concentration that was improved on medication. He denied problems with appetite. The defendant denied depressed mood since stabilization on medication but reported that he had infrequent and intermittent passive suicidal ideation that had also improved on medication. He reported that he desired the death penalty. The defendant further reported that if he were to remain incarcerated, he would most likely attempt suicide again in the undetermined future depending on "how long I could take it." At the time of the interview, the defendant denied immediate suicidal ideation or intent/plan to hurt himself. The defendant's affect was with normal intensity and range, however, at times his affect appeared incongruent with the conversation with episodic inappropriate smiling. He related well to the examiner.

### Thought Process/Thought Content:

The defendant's thought processes were linear, logical, and goal directed. There was no evidence of flight of ideas, thought blocking, or derailment. The defendant stated that he last "heard a voice" approximately one month ago. He added that there was no longer a component of intense anxiety associated with hearing a voice and that it was easily dismissed. The defendant described the voice as occurring inside his head and now with some insight that it "must be part of me." He denied hearing voices outside of his head. He denied other perceptual disturbances, ideas of paranoia, or aberrant thought formation.

### Cognitive Functioning:

The defendant was oriented to person, place, time, and situation. Based upon his vocabulary, grammar, and general fund of knowledge, the defendant's general intellectual functioning is judged to be in the average range consistent with his intelligence testing (IQ of 93). He demonstrated a sufficient complexity of concept formation. There were no indications of expressive or receptive language deficits. He was able to encode and recall new information without difficulty. The defendant was able to follow simple instructions, and he demonstrated

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 7

adequate immediate, short-term, and long-term memory. The defendant displayed good abstraction and obtained five out of five correct answers by serial subtraction of seven from 100. He responded appropriately to hypothetical situations requiring knowledge of norms, rules, and expectations of society.

## CLINICAL SUMMARY:

Results of the evaluation indicate an individual with significant brain injury at birth and a long history of depressive symptoms and auditory perceptual disturbances that began as an adolescent. The defendant also has a history of irritable mood swings with probable mixed manic states. Although seen for mental health purposes sporadically throughout his life, the defendant predominantly went without appropriate mental health treatment until after his incarceration. The defendant meets the criteria for Bipolar Disorder. Despite a past diagnosis of Schizoaffective Disorder, there were no available data indicating active auditory hallucinations in the absence of mood symptoms that would warrant a diagnosis of Schizoaffective Disorder. For these reasons, the defendant is given the diagnosis of Bipolar I Disorder, Severe With Psychotic Features.

## DIAGNOSIS:

Axis I: Bipolar I Disorder, Severe With Psychotic Features

Axis II: Deferred

Axis III: History of hypoglycemia and mild hand tremor

## MENTAL STATE AT THE TIME OF THE ALLEGED CRIMINAL OFFENSE:

The defendant's memory was intact for the time period surrounding the alleged event, and he was able to offer a detailed account of his thoughts, perceptions, and actions. His report and the information he provided was generally consistent with the information contained in police investigation reports.

The defendant reported that he was depressed most days following the death of his father in October 2002. He reported that he was unable to obtain medical care due to lack of health benefits. Upon acquiring health benefits, the defendant reported that he sought help for depression due to thoughts of suicide by overdose on amitriptyline and auditory hallucinations that were derogatory in nature. In the months leading up to the alleged criminal conduct the defendant reported experiencing marked stressors including the death of his father, mandates to pay child support, completion of his divorce in March 2003, relocation of his mother out of state in June 2003 and ultimately being homeless. In June 2003 the defendant was started on

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 8

venlafaxine and noted improvement in his depressed state. However, he noted worsening of "rushing" thoughts and increase in auditory hallucinations.

On the day of the alleged criminal conduct, the defendant described constant racing thoughts and intermittent auditory hallucinations. He described his mood as "desperate." Consistent with investigative reports and jail records, the defendant stated that he had planned to "only rob" the victims. This plan occurred to him upon arrival at the campsite and seeing the victims. The defendant described thoughts of "tying up" the victims in order to take their money. Just prior to the alleged shooting he experienced a voice telling him to "shoot" and to "just do it, do it, do it." The defendant reported that he had no further memory prior to the shooting but felt significant anxiety of the auditory hallucination. The voice continued throughout the course of the shooting. He stated that it abruptly stopped after the shooting. The defendant reported that afterwards his racing thoughts diminished but he felt general anxiety and panic. He denied hearing voices or experiencing the specific compelling anxiety associated with auditory hallucinations during the timeframe of the alleged burglary.

The defendant reported that his racing thoughts returned the next day, however he did not experience auditory hallucinations again until after his arrest.

Information contained in the police investigation reports note a history of depression and antidepressant treatment. The defendant's behaviors, as documented by investigative reports, appeared adequately organized and executed with no indications of cognitive impairment. However, indicative of a volitional impairment, records consistently document the defendant's intention as different than his behavior during the timeframe of the shooting.

The defendant's thoughts, emotions, and behavior at the time of the shooting were consistent with a diagnosis of Bipolar I Disorder With Psychotic Features. Noticeable compelling evidence includes documentation by his treating physician of a markedly depressed and suicidal state with auditory hallucinations just prior to the shooting. His persistent racing thoughts and auditory hallucinations in the context of irritable mood suggest that, at that time, he was experiencing an irritable manic episode.

Bipolar depressive states may not respond to antidepressant therapy as well as other type of depressions. The defendant underwent multiple trials of antidepressant medication prior to the alleged criminal conduct that did not appear effective. Moreover, the risk of suffering a manic episode is increased in bipolar patients with use of antidepressant medication. There is evidence to suggest that use of venlafaxine may be particularly susceptible to switching bipolar patients from depression to mania. This risk is again elevated if the bipolar patient is not taking a mood stabilizer (such as lithium carbonate). As such, the defendant's expansion of racing thoughts and auditory hallucinations with the initiation and increase of venlafaxine is diagnostic of an irritable manic episode.

It is also of interest that the defendant had no arrests prior to this type of antidepressant treatment. Furthermore, with appropriate treatment the defendant experienced stabilization of mood, little or no auditory hallucinations, and complete resolution of racing thoughts. Such

United States of America vs. Edward Leon Fields
US District Court Case Number: 3CR-73-WH
Page 9

effective response to medications designed to treat bipolar disorder is indicative of a bipolar condition.

In the opinion of the examiner, based on a reasonable degree of medical certainty, the defendant was suffering from severe mental and emotional disturbance, specifically an active bipolar disorder with an irritable manic state and psychotic features. Additionally, based on this psychotic state, in the opinion of the examiner, at the time of the shooting the defendant experienced significant impairment in his ability to control his behavior or conform his conduct to the requirements of the law. This opinion is based on documentation of the defendant's multiple stressors prior to the incident, mental health treatment surrounding the alleged criminal conduct, increase in antidepressant use only days before the conduct, description of his mental state at the time of the crime, current diagnosis of a bipolar type illness, and current knowledge of response to bipolar type medications.

## SUMMARY OF REFERRAL QUESTIONS:

1.    Detailed findings as presented above;

2.    In opinion of the examiner, at the time of the alleged criminal conduct, the defendant suffered from severe mental and emotional disturbance, specifically Bipolar I Disorder With Psychotic Features;

3.    In the opinion of the examiner, at the time of the shooting the defendant suffered from mental disease such that he experienced significant impairment in his capacity to conform his conduct to the requirements of the law.

Respectfully Submitted,


Bradley D. Grinage, M.D.
Diplomat of the American Board of Psychiatry and Neurology (ABPN), 1996
ABPN Subspecialty in Forensic Psychiatry, 2003