UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIV-10-115-RAW |
| Respondent, | : | |
| | : | CAPITAL 2255 PROCEEDINGS |
| -v- | : | |
| | : | HON. RONALD A. WHITE |
| EDWARD LEON FIELDS, JR., | : | |
| | : | |
| Petitioner. | : | |
| | : | |

_____  :

**PETITIONER'S MOTION FOR
NON-DISPOSITIVE OMNIBUS RELIEF
AND CONSOLIDATED BRIEF IN SUPPORT**

Petitioner Edward Leon Fields, Jr., hereby moves for non-dispositive omnibus

relief in support of his pending *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside,*

*or Correct Sentence by a Person in Federal Custody* (the "*Motion*"). Mr. Fields

requests: (1) an order permitting him to be transported to an appropriate local medical

facility for brain scans and imaging at no cost to the Court or the Bureau of Prisons;

(2) narrow and specific discovery of items in the Government's possession that are

relevant to his claims and leave to take the deposition of an important non-cooperating

witness; (3) leave to file a brief in support of the *Motion* on or before September 1,

2010, with the Government's response to follow within ninety (90) days; and (4) an

1

evidentiary hearing on all disputed material facts.[1]   A proposed order accompanies

this motion.

In support of this motion, Mr. Fields states that the requested relief will assist

the Court in resolving the issues raised in the *Motion*.   In further support of this

motion, Mr. Fields states the following:

**I.      Request for an Order Permitting Mr. Fields to be Transported to a
        Local Medical Facility for Brain Scans and Imaging.**

1.      Mr. Fields requests that the Court issue an order permitting him to be

transported to a local medical facility for brain scans and imaging at no cost to the

Court or the Bureau of Prisons.  This request is relevant to Grounds 1(C) and 2 of the

*Motion*.

2.      Since the time of trial, Mr. Fields has suffered a cataclysmic decline in

his already impaired cognitive functioning.  *Motion*, ¶¶ 38-42 & n. 10.  His expert

neuropsychologist, Dr. Daniel Martell, has opined that this decline is likely due to

either a tumor or other disease process.  Report of Dr. Daniel Martell ("Martell

Report"), p. 16 (attached at *Appendix*, Exhibit 9).  Dr. Martell further explains that Mr.

Fields' "apparent degenerative brain disease process also raises important questions

about his behavior at the time of the instant offense, as there is evidence in the test

data from the time of trial that there was something abnormal and deteriorating about

---

[1]Except as otherwise noted, the Government opposes all of the requested relief.

his neurocognitve functioning . . . that indicates that whatever the underlying disease processes is, it affected his cognition and behavior at [the time of the offense]." Id., pp. 16-17. Thus, in Dr. Martell's view there is a potential connection between Mr. Fields' current organic impairment and his conduct at the time of the offense.

3.      According to Dr. Martell, brain scans and imaging may help identify the origins and course of Mr. Fields' cognitive impairments. Martell Report, p. 16. This information, in turn, would assist Mr. Fields in proving his claims that trial counsel were ineffective for failing to investigate his organic brain damage, that his execution is precluded under the Eighth Amendment because of his mental illness, and that he will not be competent for execution. See *Motion*, Grounds 1(C) & 2. For these reasons, it is imperative that counsel explore the source of Mr. Fields' impairments and their course through brain scans and imaging.

4.      Mr. Fields requires brain scans and imaging that can be performed only with equipment that is not available at the United States Penitentiary in Terre Haute, where Mr. Fields currently is incarcerated. Counsel have consulted with their expert, who has advised that there are any number of reasonably local medical facilities that have the capacity to perform the required imaging. Moreover, counsels' expert has advised that the imaging can be accomplished in a "day-trip" to the facility. Should the Court agree in principle to permit this imaging, counsel will make arrangements

with a local facility to conduct the imaging and will present that information to the Court for final approval.

5. Counsel have had similar imaging conducted in other capital post-conviction cases by having courts order that their client be transported to a local facility. In counsels' experience, the security arrangements can be routinely managed by the prison authorities (the trip is akin to any number of routine medical visits to which prisoners are transported). Counsels' office will assume any Bureau of Prison costs associated with the trip, and counsels' office will of course pay for the actual studies to be conducted.

**II. Request for Discovery.**

6. Mr. Fields requests narrow and specific discovery relevant to Grounds 1(D) and 7 of the *Motion*.

**A. Standards Governing Discovery.**

7. Mr. Fields' discovery requests are governed by Rule 6 of the *Rules on Motion Attacking Sentence Under Section 2255* (the "*Rules*"), which provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." A post-conviction petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the

petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 299 (1969)); Moore v. Gibson, 195 F.3d 1152, 1165 (10th Cir.  1999) (quoting Bracy); Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief.").

8.     When a petitioner establishes good cause, discovery must be allowed. The Supreme Court has explained that "[t]he very nature of [post-conviction proceedings] demands that [such proceedings] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."  Harris, 394 U.S. at 291.[2]  Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [post-conviction] claim are

---

[2]Accord McDaniel v. United States District Court, 127 F.3d 886, 888 (9th Cir. 1997) (where petitioner "presented specific allegations . . .[he] is entitled to discovery"); Johnston v. Love, 165 F.R.D 444, 145  (E.D. Pa. 1996) (Rule 6's "history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief."  Accordingly, "a court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally."); Gaitan-Campanioni v. Thornburgh, 777 F.  Supp. 1355, 1356 (E.D. Tex. 1991) ("Although discovery is permitted only by leave of the court, the court should not hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim.").

adequately developed," a court must allow discovery whenever "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." Id. Accordingly, a court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief. Id. This is never more important than in the context of a capital case, where the unique finality and irreversibility of the sentence require heightened procedural safeguards. See, e.g., Kyles v. Whitley, 514 U.S. 419, 422 (1995) (court's "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case").

9.      For the following reasons, Mr. Fields can demonstrate good cause for each requested item of discovery.

**B.      Specific Discovery Requests.**

**1.      Bottle of 150 mg Effexor capsules seized from Mr. Fields' truck.**

10.      Mr. Fields requests that the Court order the Government to produce the bottle of 150 mg Effexor capsules that was seized from Mr. Fields' truck after his arrest for the offense. This request is relevant to Ground 7(A)(1) of the *Motion*.

11.      At trial, defense experts testified that, in the months preceding the

offense, Mr. Fields' treating physician prescribed him Effexor, a powerful antidepressant, and just days before the offense increased the dosage from 37.5 mg to 150 mg. *Motion*, ¶¶ 82, 90. These defense experts explained that an increase in Effexor dosage could have caused Mr. Fields – who suffered from bipolar disorder – to experience a manic flip. Id., ¶ 12. In response, the Government elicited testimony that there was "no evidence" Mr. Fields ever took any 150 mg Effexor capsules. Id., ¶ 214.

12. At the time the Government elicited this testimony, it was in possession of a bottle of 150 mg Effexor capsules investigators had recovered from Mr. Fields' truck after his arrest. *Motion*, ¶ 211. Mr. Fields filled a prescription for these capsules the day before the offense, and thus the bottle and its contents are exculpatory evidence that would have countered the Government's argument that there was "no evidence" Mr. Fields took any 150 mg capsules. As alleged in Ground 7(A)(1) of the *Motion*, the bottle should have been turned over to the defense prior to trial pursuant to Brady v. Maryland, 373 U.S. 83 (1964).[3]

**2. Contents of the hard drives of Mr. Fields' computers.**

_____

[3]During the parties' conferences pursuant to Local Civil Rule 7.1(g), the Government indicated no objection to this discovery request. Despite repeated follow-up inquiries by counsel, however, the Government has failed to produce the requested item or to explain why it has not been produced. Thus, an order of this Court is necessary for Mr. Fields' counsel to obtain the requested item.

13. Mr. Fields requests that the Court order the Government to produce the contents of the hard drives of two computers seized by law enforcement from Mr. Fields. This request is relevant to Ground 7(A)(2) of the *Motion*.

14. Reports of the Oklahoma State Bureau of Investigation ("OSBI") indicate that two computers containing nearly 7,000 email messages and 16,000 documents were seized from Mr. Fields after his arrest. *Motion*, ¶ 216. These emails and documents likely contain exculpatory information that would reveal Mr. Fields' impaired mental state around the time of the offense, but they were never produced to trial counsel. As alleged in Ground 7(A)(2) of the *Motion*, these materials should have been produced to the defense prior to trial pursuant to <u>Brady v. Maryland</u>.[4]

---

[4]During the parties' conferences pursuant to Local Civil Rule 7.1(g), the Government indicated no objection to this discovery request. Despite repeated follow-up inquiries by counsel, however, the Government has failed to produce the requested items or to explain why they have not been produced. Thus, an order of this Court is necessary for Mr. Fields' counsel to obtain the requested items.

**3. Previously undisclosed FBI Form 302s and OSBI reports.**[5]

15.     Mr. Fields requests that the Court order the Government to produce all previously undisclosed FBI Form 302s and OSBI reports, including any so-called "1A" notes of agents used to generate the Form 302s. As alleged in Ground 7(A)(3) of the *Motion*, these materials should have been produced to the defense prior to trial pursuant to Brady v. Maryland.

**4. All other exculpatory documents, evidence and information.**

16.     Because the Government's due process obligations under Brady v. Maryland continue in post-conviction proceedings, see Imbler v. Pachtman, 424 U.S. 409, 427 n.25 (1976), Mr. Fields requests that the Court order the Government to review all documents, evidence and information in its possession, custody or control for their exculpatory value in view of the allegations set forth in the *Motion* and to produce such documents to the extent disclosure is required under Brady.

---

[5]If the Government asserts that any of the following items are subject to a privilege and are therefore protected from disclosure in full or in part, Mr. Fields requests that the Government comply with Fed. R. Civ. P. 26(b)(5)(A)(ii) by "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed – and doing in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

If the Government asserts a privilege as to portions of a document, communication or thing that is requested, Mr. Fields requests that the Government describe the purportedly protected portion as required under Rule 26(b)(5)(A)(ii) and disclose those portions not covered by the privilege being asserted.

**D.    Deposition of Dr. Michael Kemp.**

17.    Mr. Fields requests that the Court grant leave for his counsel to depose Dr. Michael Kemp, his treating physician in the months preceding the offense.  This request is relevant to Ground 1(D) of the *Motion*.

18.    At trial, the defense introduced evidence that Mr. Fields had auditory hallucinations, suffered from bipolar disorder, and experienced a manic flip at the time of the offense.  See, e.g., *Motion*, ¶¶ 11-12.  The Government contended that Mr. Fields was malingering and attacked the manic flip diagnosis of defense experts as the opinions of "left coast ... hired guns."  Id., ¶¶ 53-58.

19.    Trial counsel could have countered the Government's contentions by calling a number of local medical professionals who had treated Mr. Fields for these and other symptoms both prior to and immediately after the offense.  These medical professionals – including Dr. Louise Bumgardner, Dr. Larry Trombka, Dr. R.L. Winters, and Dean Anderson – all believed that Mr. Fields was not malingering.  *Motion*, ¶¶ 60-64.  Moreover, Dr. Bumgardner agreed with the manic flip diagnosis, id., ¶ 61, and Dr. Trombka believed Mr. Fields suffered from a schizoaffective disorder (either depression with psychotic features or bipolar disorder with psychotic features).  Id., ¶ 64. Instead, the Government's contentions went unrebutted.  As

alleged in Ground 1(D) of the *Motion*, it was ineffective for trial counsel not to call these medical professionals in the defense's case-in-chief or as rebuttal witnesses.

20.     One important treating medical professional refused to cooperate in counsel's investigation of this claim. Dr. Michael Kemp was a physician who treated Mr. Fields in the months preceding the offense. Medical records indicate that Dr. Kemp diagnosed Mr. Fields as suffering from depression and compulsive disorder. It was Dr. Kemp who first prescribed Mr. Fields the antidepressants Lexapro and Effexor. See Progress Notes of Dr. Michael Kemp (attached at Exhibit A). At trial, the defense argued that Mr. Fields' use of Effexor triggered his manic flip, and thus his treatment by Dr. Kemp became the linchpin of his defense. Although Dr. Kemp potentially is a key witness to this claim, he refused to speak with Mr. Fields' current counsel despite their repeated attempts, including a visit to his medical office in Arkansas.

21.     It is likely that Dr. Kemp has information that will further support the allegations in Ground 1(D) of the *Motion*. Because Dr. Kemp has refused to make himself available to Mr. Fields' counsel despite his importance to this claim, it is necessary to depose him to discover what information he knows. See, e.g., Braden v. Bagley, 2007 WL 1026454 (S.D. Ohio Mar. 30, 2007) (granting habeas petitioner's

motion for leave to depose psychiatrist who evaluated him, trial counsel and mitigation specialist).

**III.  Request for Leave to File Brief in Support of *Motion* Prior to a Response by the Government.**

22.  Mr. Fields requests leave to file a brief in support of the *Motion* before the Government files its response.  The Court has ordered the Government to respond to the *Motion* by July 6, 2010.  Notice to Respond (Dkt. # 3).  Counsel believe that permitting them to file a memorandum of law addressing the claims raised in the *Motion* will clarify the legal issues in this proceeding and therefore assist both the Government in responding to Mr. Fields' allegations and the Court in determining what further action is appropriate.[6]  Consequently, Mr. Fields requests leave to file a brief in support of the *Motion* on or before September 1, 2010 and proposes that the Government be allotted such additional time as is needed for it to respond to the combined *Motion* and *Supporting Memorandum of Law*.

23.  In counsel's experience, in capital post-conviction litigation under both section 2254 and section 2255, it is routine for a petitioner to file a supporting memorandum shortly after the petition (for a section 2254 case) or motion (for a section 2255 case) is filed.  See, e.g., Local Civil Rule 9.4, United States District

_____

[6]Such a brief is authorized under Rule 4(b) of the *Rules*, which permits the Court to order the Government to file a response "or to take other action the judge may order."

12

Court, Eastern District of Pennsylvania (permitting filing of such memoranda following filing of petition in either section 2254 or section 2255 cases) (attached in relevant part at Exhibit B).

**IV.    Request for Evidentiary Hearing.**

24.    Under 28 U.S.C. § 2255(b), the Court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." See also *Rules*, Rule 8 (governing evidentiary hearings in Section 2255 proceedings). The Court of Appeals for the Tenth Circuit has strictly construed this language. See, e.g., United States v. Duran-Salazar, 307 Fed. App'x 209, 212 (10th Cir. 2009) (reversing district court's refusal to hold evidentiary hearing on petitioner's Section 2255 claim that his lawyer prevented him from testifying at trial because "our precedents state a preference for an evidentiary hearing in such circumstances").

25.    Mr. Fields easily meets this standard. He has alleged facts which, if proven, would entitle him to relief, and it is impossible for the Court to resolve most of his claims without examining evidence outside the record. Although the Government has not yet answered the *Motion*, Mr. Fields requests an evidentiary hearing on his claims to preserve his rights. While Mr. Fields is not required at this

juncture to set forth a list of facts or issues that must be determined at an evidentiary hearing, a non-exhaustive list includes:

- Whether trial counsel performed deficiently by failing to argue that Mr. Fields' uncontested mental illness was mitigating (Ground 1(B));

- Whether Mr. Fields suffered from organic brain damage (Ground 1(C));

- Whether trial counsel performed deficiently by failing to discover and present evidence of Mr. Fields' organic brain damage (Ground 1C));

- Whether Mr. Fields' treating medical professionals could have supported a manic flip defense and rebutted the Government's allegations of malingering (Ground 1(D));

- Whether trial counsel performed deficiently by failing to call Mr. Fields' treating medical professionals as witnesses; (Ground 1(D));

- Whether trial counsel performed deficiently by eliciting damaging testimony from one of the Government's mental health experts (Ground 1(E));

- Whether Effexor is associated with compulsive aggression (Ground 1(F));

14

- Whether trial counsel performed deficiently by failing to present evidence of Effexor's relationship to compulsive aggression (Ground 1(F));

- Whether Mr. Fields' mental health experts were thoroughly and properly prepared to testify on his behalf (Ground 1(G));

- Whether trial counsel performed deficiently by failing to thoroughly and properly prepare Mr. Fields' mental health experts (Ground 1(G));

- Whether Mr. Fields is not or will not be competent to be executed (Ground 2);

- Whether the Government's substantial planning and mental anguish aggravators could have been rebutted (Ground 3(B));

- Whether trial counsel performed deficiently by failing to rebut the Government's substantial planning and mental anguish aggravators (Ground 3(C));

- Whether the Government presented false and misleading evidence regarding the substantial planning aggravator (Ground 3(D));

- Whether additional mitigating social history evidence could have been presented to the jury (Ground 4(A));

- Whether trial counsel performed deficiently by failing to present additional mitigating social history evidence (Ground 4(B));

- Whether trial counsel performed deficiently by failing to object to improper closing argument by the Government (Ground 5(C));

- Whether trial counsel performed deficiently by failing to object to instructions and a jury verdict slip that allowed the jury to approve a general verdict of death based on the combined weighing of aggravating factors applicable to two separate murder counts (Ground 6(B));

- Whether the Government withheld exculpatory evidence, including a bottle of 150 mg Effexor capsules, emails and other computer documents, and FBI and OSBI reports (Grounds 7(A) and (B)); and

- Whether trial counsel performed deficiently by failing to discover such exculpatory evidence (Ground 7(C)).

**REQUEST FOR RELIEF**

WHEREFORE, for all of the above reasons, as well as for all of the reasons set forth in the *Motion*, Mr. Fields respectfully requests the following relief:

A.   That the Court issue an order permitting Mr. Fields to be transported to an appropriate local facility for brain scans and imaging;

B.   That the Court grant Mr. Fields the discovery requested in this motion;

C.   That the Court grant Mr. Fields leave to file a brief in support of the *Motion* on or before September 1, 2010, with the Government's response to follow within ninety (90) days; and

D.   That the Court conduct an evidentiary hearing on all material facts in dispute that are relevant to the disposition of the issues raised in the *Motion*.

Respectfully Submitted,

/s/Michael Wiseman
Michael Wiseman
Chief, Capital Habeas Corpus Unit
Cristi Charpentier
Assistant Federal Defender
Federal Community Defender for the
  Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
Philadelphia, PA 19106
215-928-0520
Michael_Wiseman@fd.org
Cristi_Charpentier@fd.org

Counsel for Petitioner
Edward Leon Fields, Jr.

17

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(g)**

I, Michael Wiseman, Esq., hereby certify that on April 26, 2010, and on other subsequent dates, I conferred with counsel for the United States of America, specifically, AUSA Christopher Wilson and AUSA Jeffrey B. Kahan, in good faith and in a sincere attempt to resolve differences regarding the subject matter of this motion. These conferences took place by electronic mail and telephone because the distance between counsels' offices made a personal conference infeasible.

/s/ Michael Wiseman
Michael Wiseman

**CERTIFICATE OF SERVICE**

I, Michael Wiseman, Esq., hereby certify that on this 1st day of June, 2010, the foregoing document was electronically filed and is available for viewing and downloading through the ECF system.

/s/ Michael Wiseman
Michael Wiseman