EDWARD LEON FIELDS, JR., )
         )
     *Petitioner*, )
         )
v. )     **Case No. CV-10-00115-RAW**
         )     **Criminal Case No. CR-03-73-RAW**
UNITED STATES OF AMERICA )
         )
     *Respondent.* )

## RESPONSE TO MOTION FOR NON-DISPOSITIVE OMNIBUS RELIEF

**COMES NOW**, Respondent, United States of America, by and through undersigned counsel, and in response to Petitioner's Motion for Non-Dispositive Relief respectfully submits the following:

## PROCEDURAL HISTORY

On August 1, 2003, a federal grand jury for the Eastern District of Oklahoma returned an indictment that charged Edward Leon Fields with four non-capital offenses and two counts of the death-eligible crime of first degree murder, stemming from the homicides of Charles Glenn Chick, Jr. and Shirley Elliot Chick. (Trl. Doc. 16.)[1] On March 15, 2004, the government filed a notice of intent to seek the death penalty with respect to both murder charges. (Trl. Doc. 38.) On June 30, 2005, Fields pleaded guilty to all six counts of the indictment. On July 22, 2005, following a penalty phase trial, a jury returned a death penalty verdict for the two murders, for which this Court imposed judgment on November 8, 2005. (Trl. Doc. 228.)

In a published opinion, the Tenth Circuit affirmed this Court's judgment in full. *United States v. Fields*, 516 F.3d 923 (10th Cir. 2008). On April 6, 2010, Fields filed a Motion Under 28

---

[1]The government prefaces docket entries in case no. 03-cr-73-WH by with "Trl." Citations to documents filed on the instant docket, case no. 10-cv-115-RAW, have no preface.

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1.) The same day, he filed a brief entitled Grounds in Support of Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 2.)

On June 1, 2010, he filed the instant Motion for Non-Dispositive Omnibus Relief. (Doc. 4, hereinafter "Mot.") This Opposition follows.

## I. FIELDS'S REQUESTS FOR DISCOVERY ARE BASELESS, PREMATURE AND UNSUPPORTED BY A SHOWING OF GOOD CAUSE

Fields requests orders from this Court that would permit him to conduct three types of discovery. First, he seeks an order compelling the Bureau of Prisons to transport him to a medical facility for a neuro-imaging examination. Second, he requests an order compelling the government to disclose various items and documents that he claims are supposedly within its custody. Third, Fields requests an order permitting him to depose a physician who treated him prior to the commission of the murders, who has allegedly refused to provide information to defense counsel. (Mot. 2-12.) As shown below, Fields's requests are all fatally flawed.

### A. Legal Principals Applicable to Discovery Requests

Before trial, prosecutors must disclose all substantial material evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). But after conviction, the government's duty to disclose information favorable to the defense is not controlled by *Brady*. *Dist. Atty's Office v. Osborne*, 129 S.Ct. 2308, 2319-20 (2009).

During collateral proceedings, courts may order discovery when they conclude "that it is necessary . . . in order that a fair and meaningful evidentiary hearing may be held so that the court may properly 'dispose of the matter as law and justice require.'" *Harris v. Nelson*, 394 U.S. 286,

300 (1969).  A broad-ranging preliminary inquiry is neither necessary nor appropriate in collateral proceedings.  *Harris*, 394 U.S. at 297.  Rather, "[a] habeas petitioner may 'invoke the process of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'" *United States v. Webster*, 392 F.3d 787, 801 (5th Cir. 2004) (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir.1997)).  To demonstrate good cause for discovery, the petitioner must give the court reason to believe that, if the facts alleged are fully developed, the petitioner will be able to show that he is entitled to relief.  *Bracy v. Gramley*, 520 U.S. 899, 906-09 n.10 (1997); *see Webster*, 392 F.3d at 802.

B.  Request for Access to a Medical Examination

Fields requests that this Court order the Bureau of Prisons to transport him, albeit at his own expense, to a facility where he can undergo a neuro-imaging examination.  Fields makes this request without reference to any legal authority or any standard of review.  (Mot. 2-4.)  Fields does not and cannot show that this Court has the authority to simply order him taken to a place of his choosing because he has elected to engage in § 2255 litigation.  Moreover, he cannot justify his request as a meritorious motion for discovery.

The government recognizes that Fields does not require the imprimatur of this Court to personally acquiesce to a physical examination.  However, Fields's request presumes that this Court has some plenary power to compel the Bureau of Prisons, despite its lawful incarceration of the defendant, to transport him to a place of his desire so he can undergo an exam, simply because the results could assist him in his present litigation.  *Cf. Jackson v. Vasquez*, 1 F.3d 885, 888-89 (9th Cir. 1993) (holding that statutory authority to issue writs and fund investigation does not permit a

3

district court to compel a state custodian to transport prisoner for medical exam, though discovery rules may do so).  Fields cites no authority for that proposition, because there is none.  *See id.*  At most, Fields's desire to compel the government to transport him to a medical facility of his choosing might contemplate this Court's authority to order discovery as part of the § 2255 litigation.  *See id.*; Rule 6, Rules Gov'g § 2255 Proceedings.  But Fields cannot show a need to pursue discovery before the government has had an opportunity to respond to the § 2255 Motion, nor can he meet the good-cause standard for discovery.

Fields's request for discovery is necessarily premature.  The government has had no opportunity to respond to Fields's § 2255 allegations.  By extension, this Court has not yet had an opportunity to determine whether factual development and an evidentiary hearing will be necessary in this case.  Rule 8, Rules Gov'g § 2255 Proceedings; *See, infra*, Arg. III.  Accordingly, an order for discovery would be premature, as is Fields's request.  *Harris v. Nelson*, 394 U.S. at 300.

In any event, Fields has failed to show good cause for any request that the government transport him for purposes of examining his brain.  In the underlying § 2255 claim, Fields has argued that his trial attorneys provided ineffective assistance of counsel when they failed to properly investigate and present evidence of his supposed organic brain damage.  (Doc. 2 at 16-26.)  To prevail on such a claim, he must show that his attorneys' performance was deficient and that the deficient performance was prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Accordingly, Fields must show, inter alia, that counsel were on notice that the subject merited investigation, that counsel had no tactical reason to forgo some or all of such an investigation, that counsel's decisions fell below reasonable professional norms, and that counsel's decisions had a reasonably likely impact on the outcome of the trial. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420

4

(2009) (regarding the burden to show performance relative to professional norms); *Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (holding the duty to investigate depends upon the facts known to the attorney); *Massaro v. United States*, 538 U.S. 500, 504 (2003) (observing that *Strickland* requires defendants claiming ineffective assistance of counsel to show that their attorneys' actions "were not supported by a reasonable strategy"); *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (regarding the requisite showing of prejudice).

Despite the fact that any relevant inquiry concerning Fields's alleged brain damage focuses on the conduct of his attorneys, at or before his 2005 trial, the defendant asks this Court to facilitate an examination designed to assist the diagnosis of his condition in 2010. In fact, in recommending a neuro-imaging exam, Fields's current expert notes the possibility that the defendant may suffer from a brain tumor or ischemic brain disease, and asserts that "an MRI study of his brain is strongly indicated to aid in proper differential neurodiagnosis and treatment." (Doc. 2, Ex. 9 at 16.) Fields's expert gives no indication that any information obtained in an MRI conducted now will inform the question of Fields's condition, or trial counsel's conduct, five or more years ago. Simply put, Fields provides no indication that an MRI of his brain in 2010 can demonstrate that trial counsel acted unreasonably in light of the information available to them. Moreover, he provides no indication that the proposed examination will reveal data about his condition at the time of the crime that might be relevant to the question of prejudice.

Fields likewise fails in arguing that good cause exists for the MRI because it would inform the analysis of his claim that he is incompetent to be executed. (Mot. at 3.) Fields has conceded in his § 2255 Motion that the competence claim is not ripe. (Doc. 2 at 55.) Indeed, the great weight of legal authority suggests that this Court cannot adjudicate the competence claim at this time. *See,*

*e.g.*, *Nooner v. Norris*, 499 F.3d 831, 834 (8th Cir. 2007); *Pierce v. Blaine*, 467 F.3d 362, 367 n.2 (3d Cir. 2006); *Coe v. Bell*, 209 F.3d 815, 823 (6th Cir. 2000). Given that the Court cannot decide the claim, the issue cannot support good cause for ordering discovery.

Fields's request that this Court facilitate an MRI examination of his brain is untimely and bereft of a good cause showing. Accordingly, the Court should reject it.

C. <u>Request for Specific Items Allegedly Possessed by the Government</u>

Under the auspices of a discovery request, Fields asks this Court to order the government to disclose three items allegedly seized by investigators – a bottle of 150mg Effexor capsules and two computers that belonged to Fields at the time of the murders. According to Fields, the government had an obligation under *Brady* to disclose these items at the time of trial and should therefore do so now. Moreover, he contends that the government does not object to these requests. (Mot. 6-8.) As discussed below, Fields is wrong.

Counsel for the government has never agreed, during repeated telephonic discussions about the requested items, that formal discovery is necessary or appropriate. Counsel for the government has, however, agreed to cooperate in locating or explaining the whereabouts of the requested items. The government maintains, despite its attempts to cooperate with defense counsel, that no formal discovery should be ordered in this matter until it has had an opportunity to demonstrate that no evidentiary development is necessary. *See Harris v. Nelson*, 394 U.S. at 300. But regardless of the timing of the discovery requests, Fields has failed to show good cause for them, as the government does not have custody or control over the requested items and has offered to share the data found on Fields's computers.

1. <u>The Pill Bottle</u>

The FBI has advised counsel for the government that it did not collect, as evidence, a bottle of 150mg Effexor capsules observed in Fields's truck. The FBI has no record that it retained the pill bottle. Rather, the FBI has represented to the government's counsel that it delivered the bottle to the jail where Fields was held before trial, so that he could continue to take the medicine. Insofar as the government is aware, Fields ingested the contents of the bottle. Counsel for the government has informed Fields's attorneys of these facts. Defense counsel have stated that they will secure a release of medical records from their client so that the government can obtain documentary confirmation that the defendant was administered the 150mg Effexor capsules prior to trial. Fields's counsel presently estimate that they will obtain the release around June 18, 2010. Counsel for the government will, upon receipt from the jail, provide Fields with any relevant records concerning the Effexor bottle and its contents.

Even if the apparent fate of the requested Effexor bottle remained unknown, Fields still would not have shown good cause for a discovery order. His § 2255 Motion notes that Oklahoma State Bureau of Investigation ("OSBI") Agent Iris Dalley observed, but did not recover, the bottle. (Doc. 2 at 120-21; *see also* Doc. 2 Ex. 29 (Dalley's report).) The Motion goes on to assert that the FBI did not include the container when it returned the contents of Fields's truck several months after Dalley's observation of the container. (Doc. 2 at 120-21.) Based on the assertion that the bottle was not returned, Fields speculates that "[l]aw enforcement officials seized the bottle," but there exists no documentary proof of that supposition in his possession or the government's. (*Cf.* Doc. 2 at 121.) Fields's assertion is, however, based on a weak link in the chain of custody. Crediting Fields's own exhibits, it appears that his entire truck was returned to a friend, Paul Fields, whose wife, Jovanna

Fields, collected the contents and sent them to a defense investigator for inventory. (Doc. 2 Ex. 31.) At a minimum, Fields has failed to show that Paul or Jovanna Fields did not keep or misplace the bottle of pills, for which the government has no records of retention.

Because the government does not have the bottle of Effexor, and had not retained it as evidence at the time of trial, there can exist no good cause for ordering its production. Accordingly, this Court should deny this request for discovery.

2. The Computer Hard Drives

The two computers requested by Fields were available to him from other sources. The government does not possess or have access to the CTX computer tower (serial number 650970112-RLAK235-B0). The government's counsel has been advised by the FBI that the computer was returned to Michelle Tipton prior to trial. Likewise, the Government does not possess or have access to the Hewlett Packard Pavilion computer tower (serial number US90108692). The government's counsel has been advised by the FBI that the computer was returned to the defendant's mother, Mary Margaret Fields, prior to trial.

Even if Fields could not obtain access to the computers before trial, images of the hard drives from both units were made by the OSBI. The images were available to Fields at the time of trial, but he made no known request to examine them. Fields's counsel have been advised that the images are available and have been provided with a point of contact at OSBI so that they can copy and inspect the data.

Given that the government has never foreclosed Fields from inspecting the hard drive images, he cannot succeed in his argument that a *Brady* violation merits the issuance of a formal discovery order. *Cf. United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) (noting that suppression

8

of evidence is a prerequisite to a finding that the government violated *Brady*). Indeed, because both computers were available to Fields from other sources he cannot demonstrate that the failure to allow him to inspect the hard drive images would have been a violation of *Brady*. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). As such, he falls far short of establishing good cause for discovery. *Bracy v. Gramley*, 520 U.S. at 906-09 & n.10.

D. Requests for Unidentified, But Allegedly Undisclosed, Documents

Fields seeks a discovery order for previously undisclosed police reports and all other exculpatory documents, evidence and information. (Mot. at 9.) The government complied with its discovery obligations at the time of trial. To the best understanding and belief of counsel for the government, all known *Brady* material was timely disclosed to defense counsel, including, all FBI Form 302s and OSBI reports associated with the murders committed by the Petitioner.[2] Simply put, the government does not possess, or have access to, undisclosed exculpatory evidence. Fields fails to show good cause for discovery by arguing the contrary in an utterly conclusory fashion, before this Court has had an opportunity to decide if evidentiary development is even necessary.

E. The Deposition of Dr. Michael Kemp

Fields requests an order to depose Dr. Michael Kemp, the physician who was treating him just prior to the murders. At trial, Fields theorized that Kemp failed to properly diagnose him and, as a result, wrongly prescribed him an anti-depressant that caused him to enter a bipolar "flip," leading to the murders. Fields now claims his attorneys were ineffective for failing to elicit Kemp's testimony to rebut government evidence that the defendant malingered auditory hallucinations that

---

[2] To the extent that Fields also requests the notes of agents, the government had no duty to disclose those documents, because their contents were accurately reflected in the police reports that were disclosed to defense counsel.

supposedly affected him at the time of the crime. (*See* Doc. 2 at 37-39.) Because Fields asserts that Kemp refuses to cooperate with present counsel, he requests an opportunity to depose Kemp because of the likelihood that the doctor possesses information relevant to the claim of ineffective assistance. (Mot. at 10-12.) Once again, Fields's request fails to establish good cause.

Beyond the fact that the government has not had an opportunity to show that evidentiary development of the underlying claim is unnecessary, the discovery that Fields seeks is entirely irrelevant to the resolution of the § 2255 claim, which involves the alleged ineffective assistance of trial counsel. To succeed on the underlying claim, Fields must show that his attorneys' failure to call Kemp was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. at 687. Thus, he must show, among other things, that counsel were on notice that Kemp could offer helpful testimony, that counsel had no tactical reason to forgo that testimony, that counsel's decisions fell below reasonable professional norms, and that counsel's decisions had a reasonably likely impact on the outcome of the trial. Because trial counsel premised their strategy on arguments that Kemp misdiagnosed and improperly medicated Fields, it appears self-evident why they would not have sought out his testimony to prove that Fields suffered from auditory hallucinations. Kemp's alleged professional errors were the lynchpin of a theory that Fields was not entirely responsible for two murders. Trial counsel could not have credibly argued, on the one hand, that the jury should rely on the doctor's testimonial diagnosis while arguing, on the other, that his mishandling of defendant's condition prior to trial led to two homicides.

Accordingly, Fields gives no indication how information in Kemp's possession would inform the question of counsel's performance at the time of trial, as their strategy was premised on discrediting his professional opinions and conduct. The Court should therefore deny the request to

depose Dr. Kemp.

## II. FIELD'S REQUEST FOR LEAVE TO FILE ADDITIONAL BRIEFING IS UNTIMELY AND LEGALLY BASELESS

Fields requests leave of court to file a memorandum of law in support of his § 2255 Motion. (Mot. 12-13.) Fields provides no legal basis for his right to make such a submission, and provides no explanation as to his failure to offer the proposed brief at the time he filed his initial pleading.

As authority for submitting the proposed brief, Fields relies on the local rules of the Eastern District of Pennsylvania, which have no application here. (See Mot. Ex. B.) Not only is the cited rule non-controlling, it is not persuasive. If this Court is to give effect to the timing requirements of the Anti-Terrorism and Effective Death Penalty Act of 1996 (*see* 28 U.S.C. § 2255(f)), it makes no sense to use the one-year statute of limitations as the basis for providing *additional* time to a capital litigant to expound upon his claims. *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) ("Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases"). Thus, if Fields wanted to file a discretionary memorandum of points and authorities, he should have done so at the time he filed his § 2255 – the last permissible day for submitting that pleading – rather than waiting to assert an inapplicable local rule as the basis for such a document months later.

To the extent that this Court is, nonetheless, inclined to apply the Pennsylvania rule to this case, it should apply it with full force. As such, the Court should limit the combined length of Fields's § 2255 and proposed brief to 150 pages.

## III. FIELDS'S REQUEST FOR AN EVIDENTIARY HEARING IS PREMATURE

Fields requests that this Court order an evidentiary hearing to resolve any factual disputes

presented by the § 2255 Motion. (Mot. 13-16.) This request should be denied because Fields's request is premature and wholly unnecessary.

The Rules following § 2255 place an affirmative duty upon this Court to "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2255 Proceedings in the United States District Courts; *see* Mot. at 1. This rule creates a duty that arises *after* the government's responsive pleading is filed. *See Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir.1996)(noting court's obligation to exercise discretion).

Accordingly, the Court is already obliged by the rules to consider the propriety of an evidentiary hearing, and Petitioner's Motion is an empty gesture – a request to make a determination the Court will have to make, if and when the question becomes ripe. The Motion is not merely extraneous, it is premature, because the Court's duty to determine the need for an evidentiary hearing does not arise until the government has had an opportunity to answer the §2255 Motion. The Court cannot now determine if the answer, which has not been filed, creates any factual conflicts that will require resolution through evidentiary development. Indeed, the government has not had an opportunity to show that relief should not be granted even if Fields can prove his factual allegations. *See United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000).

This Court should therefore deny the request for an evidentiary hearing as premature and preempted by an existing judicial obligation.

**CONCLUSION**

Based on the foregoing reasoning and authority, the government respectfully urges this Court to deny Fields's Omnibus Motion.

Respectfully submitted,

Dated: June 15, 2010:

SHELDON J. SPERLING
United States Attorney
Eastern District of Oklahoma


s/     Christopher J. Wilson
CHRISTOPHER J. WILSON, OBA #13801
Assistant United States Attorney
Eastern District of Oklahoma
1200 West Okmulgee
Muskogee, OK 74401-6848
Tel: (918) 684-5100

s/     Jeffrey B. Kahan
JEFFREY B. KAHAN, PA Bar No. 93199
Trial Attorney
U.S. Department of Justice
1331 F Street, N.W.; Rm. 345
Washington, D.C. 20530
Tel: (202) 305-8910

**CERTIFICATE OF SERVICE**

I, hereby certify that on 15th day of June, 2010, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Michael Wiseman - Michael_Wiseman@fd.org
Cristi Charpentier - Cristi_Charpentier@fd.org

s/    Christopher  J. Wilson
Assistant United States Attorney