## DECLARATION OF RONALD F. DISTEFANO

I, RONALD F. DISTEFANO, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.    I am a forensic pathologist formerly employed as a medical examiner at the Office of the Chief Medical Examiner, state of Oklahoma in Tulsa.   In that capacity, I testified at the federal trial of Edward Leon Fields (in Eastern District of Oklahoma case no. CR-03-73-WH) concerning autopsy findings for Charles and Shirley Chick.

2.    I have reviewed portions of a declaration prepared by Robert Tressel regarding the autopsy findings.

3.    Mr. Tressel declares that significant blood drainage was found around Mr. Chick's body, and such drainage was unlikely to have occurred had the body been moved several hours after death.   Mr. Tressel notes that his conclusion is particularly apt because blood would have congealed "more quickly" in the relatively cool air on the night of the murder.

4.    While the clotting mechanism in blood does not stop completely after death, it is markedly slowed.   The enzymatic reactions that affect blood clotting are retarded by cooling not accelerated.   Accordingly, it is completely incorrect to conclude that blood in Mr. Chick's body would have congealed in six hours in relatively cool evening air.   Indeed, based on my experience, I would expect bodily fluids to drain freely from any open defect on the body as much as twenty-four hours after death.

5.    Mr. Tressel declares that livor mortis (or "lividity") becomes fixed and unchangeable within four to six hours after death and that cooler temperatures speed the process of fixation.

# EXHIBIT 2

6.     The fixation of lividity is generally accepted as occurring in eight to twelve hours. It is also a process that occurs not at once but over time. Thus, even after lividity has partially fixed in one position, if the body is then moved to another position, additional secondary patterns can develop.

7.     The pattern visible on the upper legs and buttocks of Mr. Chick, as depicted in Exhibit A to this Declaration, is consistent with lividity having partially fixed while he was in a seated position.

8.     The pattern of lividity and blanching visible on the anterior portion of Mr. Chick's upper thighs, as depicted in Exhibit B to this Declaration, is consistent with subsequent lividity becoming fixed after he was in a prone position.

9.     Mr. Tressel declares that photographs of Mr. Chick's feet are consistent with lividity having fixed while he was in a prone position while his toes were pressed into the ground.

10.     The lividity patterns on Mr. Chick's feet are not inconsistent with the position in which he was thought to be seated at the time of his death – with his feet pointed behind him. In essence, his feet would have been in the same position while prone or seated.

11.     Mr. Tressel declares that rigor mortis fully develops in six to twelve hours after death.

12.     Rigor mortis is generally accepted as beginning in four to six hours, becoming maximal by twelve hours, and being gone by twenty-four hours. In other words, the process of muscle stiffening increases over time before ebbing. However, the speed of the process is greatly affected by multiple factors including, but not limited to, temperature. For instance, rigor mortis

is slowed by cooler weather, but accelerated if the decedent was physically active immediately prior to death.   Though the process begins in all the muscles at the time of death, it first becomes apparent in the shorter muscles of the body, such as those in the jaw and neck, and becomes perceptible in the longer muscles later.

13.     There is no basis for concluding in this case that the onset of rigor would have prevented the movement of Mr. Chick's body approximately six hours after death.

Executed at Tulsa, Oklahoma this 24th day of September 2010:

RONALD F. DISTEFANO