UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

_____

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,            | : |                          |
|                                      | : |                          |
|                                      | : | CIV-10-115-RAW           |
| Respondent,                          | : |                          |
|                                      | : | CAPITAL 2255 PROCEEDINGS |
| -v-                                  | : |                          |
|                                      | : | HON. RONALD A. WHITE     |
| EDWARD LEON FIELDS, JR.,             | : |                          |
|                                      | : |                          |
| Petitioner.                          | : |                          |
|                                      | : |                          |

_____ :

**PETITIONER'S RENEWED MOTION FOR NON-DISPOSITIVE OMNIBUS RELIEF
AND CONSOLIDATED BRIEF IN SUPPORT**

On June 1, 2010 Mr. Fields filed an *Omnibus Motion for Non-Dispositive Relief* (Dkt # 4) ("*Omnibus Motion*"). On June 29, 2010 the Court denied the *Omnibus Motion* in part, stating some of the requests were premature. The Court indicated it would reconsider some of Mr. Fields' requests following completion of the briefing on his § 2255 Motion ("*Motion*"). See Order, at 4 (Dkt. # 11) ("*Order*"). Briefing is now complete.[1]

_____

[1]Mr. Fields filed his *Memorandum of Law in Support of Motion for Relief Pursuant to 28 U.S.C. Section 2255 or in the Alternative Pursuant to 28 U.S.C. Section 2241* ("*Memorandum*") on July 30, 2010. The Government filed its *Answer in Opposition to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody* ("*Answer*") on September 28, 2010. On November 15, 2010, Mr. Fields filed his *Memorandum in Reply to the Government's*

Mr. Fields herein renews some of his prior requests that were denied by the Court in June, 2010. Specifically, he renews the request for an order: 1) permitting him to be transported to an appropriate local medical facility for brain scans and imaging at no cost to the Court or the Bureau of Prisons, 2) for leave to take the deposition of Dr. Michael Kemp, 3) granting an evidentiary hearing on all disputed material facts, and 4) granting portions of his <u>Brady</u> requests.[2]

In support of this renewed motion, Mr. Fields states that the requested relief will assist the Court in resolving the issues raised in the *Motion* and accompanying briefs. In further support of the renewed motion, Mr. Fields states the following:

## I.  Request for Evidentiary Hearing

1.    Under 28 U.S.C. § 2255(b), the Court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief..." <u>See</u> <u>also</u> *Rules on Motion Attacking Sentence Under Section 2255* (the "*Rules*"), Rule 8 (governing evidentiary hearings in Section 2255 proceedings). Thus, an evidentiary hearing is necessary because "[s]ome

*Answer in Opposition to Motion Under 28 U.S.C. § 2255*, ("*Reply*").

[2]The Court previously granted Mr. Fields's request to brief the 2255 Motion. The Court denied his <u>Brady</u> requests. Portions of the <u>Brady</u> request have been resolved (specifically request 2(B)(1) – regarding the 150 mg Effexor bottle – and 2(B)(2) – requesting access to Mr. Fields's hard drives) have been resolved informally by the parties. He reasserts requests 2(B)(3) and (4) below.

ineffectiveness claims cannot be resolved with sole reference to the record" and thus where "factual disputes and inconsistences beyond the record exist; ... a hearing is needed." <u>Moore v. United States</u>, 950 F.2d 656, 660 (10th Cir. 1991); <u>see also United States v. Becker</u>, 109 F. App'x 264, 270, 2004 WL 1949154 (10th Cir. Sept. 2, 2004) (remanding for evidentiary hearing on claim that counsel failed to present expert evidence at sentencing, where petitioner presented expert report in support of ineffectiveness claim); <u>United States v. Gonzalez</u>, 98 F. App'x 825, 831, 2004 WL 1228359 (10th Cir. June 3, 2004) (remanding for evidentiary hearing and observing that when "a habeas petitioner alleges detailed and specific charges," supported by affidavits, "[f]ull consideration of [petitioner's] claims of ineffective assistance of counsel must be done with the benefit of a complete record.") (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 495 (1962)).

2.     As alleged in the *Omnibus Motion* and as demonstrated in the *Motion* and accompanying briefs, Mr. Fields is entitled to an evidentiary hearing.  He has alleged facts which, if proven, would entitle him to relief, and it is impossible for the Court to resolve most of his claims without examining evidence outside the record. Mr. Fields has presented expert reports, declarations and documentary evidence in support of the claims alleged in the *Motion*.  As detailed in the *Reply*, the Government's *Answer* illustrates that there are significant factual disputes and

credibility determinations that this Court must resolve in order to determine Mr. Fields' entitlement to relief, and thus a hearing is necessary.  See, e.g., Machibroda, 368 U.S. at 495 ("The Government's contention that [petitioner's] allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence."); Gonzalez, 98 F. App'x at 831 (holding that district court abused its discretion in denying Section 2255 motion without evidentiary hearing after court made determination that petitioner was entitled to no relief based upon affidavits before court).

3.      In the *Omnibus Motion,* Mr. Fields included a non-exhaustive list of the facts and issues he anticipated would need to be resolved at an evidentiary hearing. *Omnibus Motion*, 14-16.  The *Answer* contests facts underlying Mr. Fields' right to relief in regard to virtually every ground that he asserted in the *Motion*, and thus Mr. Fields renews his request for an evidentiary hearing on the issues listed in the *Omnibus Motion*.

4.      In many instances in the *Answer*, the Government has posited that trial counsel made reasonable strategic decisions in failing to investigate, present and argue certain evidence, and in failing to make certain objections.  See, e.g., *Answer*, 15, 24-6, 31, 35, 51, 63-5, 96-8.  The Government's hypothetical strategies are at odds with what trial counsel stated in her declaration were her actual reasons for

4

taking, or failing to take, particular actions on Mr. Fields' behalf. The Government's hypothetical reasons also conflict with the factual statements in the declarations of the trial experts, members of the defense team and other witnesses. See, e.g., *Reply*, 7, 12, 18, 20, 26, 38, 42, 55. This Court must make a factual determination of the actual reasons for trial counsel's acts and omissions, Wiggins v. Smith, 539 U.S. 510, 526-27 (2003), and thus there are significant factual issues for this Court to resolve regarding whether trial counsel's decisions in presenting or forgoing certain evidence, lines of argument or objections were based upon any strategy or were the product of inadvertence and ill-preparation. These factual determinations cannot be made based upon the record that is presently before the Court. See, e.g., Gonzalez, 98 F. App'x at 831.

5. In support of his allegations that trial counsel's deficient performance caused him prejudice, Mr. Fields has submitted declarations from the expert witnesses who testified on his behalf at trial regarding the impact of trial counsel's deficient performance on their testimony, reports and declarations from expert witnesses retained by undersigned counsel outlining testimony that trial counsel could have easily presented in Mr. Fields' defense, as well as declarations from lay witnesses regarding helpful testimony they also could have provided at trial. See Pet. Ex. 2-4, 9-13, 20, 23, 26. The Government has contested the weight and credibility of these

declarations, and has offered declarations of its own in rebuttal.  <u>See</u> Gov. Ex. 1-2.

6.      As the record currently stands, the Court is presented with a quintessential set of disputed material facts regarding <u>Strickland</u> deficient performance and prejudice, each requiring evidentiary resolution.  The *Motion*, *Memorandum*, *Answer* and *Reply* demonstrate that "factual disputes and inconsistences beyond the record exist" and thus "a hearing is needed."  <u>Moore</u>, 950 F.2d at 660.

## II.      Request for Transport Order

7.      Mr. Fields renews his request that the Court issue an order permitting him to be transported to a local medical facility for brain scans and imaging, at no cost to the Court or Bureau of Prisons.  As explained in the *Motion*, *Memorandum* and *Reply*, this request is relevant to Ground 1(C) of the *Motion*.[3]

8.      Mr. Fields' expert neuropsychologist, Dr. Daniel Martell, has opined that Mr. Fields has suffered a cataclysmic decline in his cognitive functioning due to either a tumor, stroke or other disease process that Dr. Martell believes may have been present prior to and at the time of the crimes.  Pet. Ex. 9, 16-17.[4]  According to

---

[3]This request is also relevant to Ground 2 of the *Motion*, however, Mr. Fields agrees that his <u>Ford</u> claim is not ripe for adjudication at this time.

[4]<u>Id.</u> at 10 ("His subtest scores [on the Halstead-Reitan battery] fell in the range of moderate to severe brain damage.  Some of his test performances were among the

Dr. Martell, brain scans and imaging may help identify the origins and course of Mr. Fields' cognitive impairments, and that "red flags" should have alerted trial counsel to the need for such in-depth testing prior to trial.  Id. at 15-17.[5]  The requested examination is crucial to the proper development of Mr. Fields' Section 2255 claims. Information that Mr. Fields was suffering from a tumor or other disease process that affected his cognition and behavior at the time of the crimes is mitigating, and would assist Mr. Fields in proving his claims that trial counsel were ineffective for failing

---

worst I have seen (i.e. TPT, Trails B)."); 12 ("First, it is my opinion to a reasonable degree of neuropsychological certainty that any reasonable neuropsychologist looking at Dr. Price's neuropsychological data would have identified the presence of significant impairments in Mr. Fields' brain functioning, primarily involving frontal lobe functioning."); 16 ("This apparent degenerative disease raise questions about his behavior at the time of the instant offense, as there is evidence in the test data at the time of trial that there was something abnormal and deteriorating about his neurocognitive functioning.  This is relevant in light of research literature demonstrating linkages between transient ischemic attacks and strokes, and violent behavior.[] Although his overall level of cognitive functioning was significantly higher at that time, there is evidence in the neuropsychological test data from Drs. Gelbort and Price that indicates whatever the underlying disease process is, it affected his cognition and behavior at that time.").

[5]Id. at 16 ("[A]n MRI study of his brain is strongly indicated to aid in proper differential neurodiagnosis and treatement."); id. (consistency of Mr. Fields' brain impairments at time of trial with those of his mother in 2001 is "red flag" indicating "the need for a more comprehensive neurodiagnostic work up, including MRI and neurological examination'"); see also id. at 6 ("Given the rapid deterioration of Mr. Fields' neuropsychological test findings ... over the period of time he reports this growth to have been enlarging, this warrants further investigation via Magnetic Resonance Imaging to rule out any underlying neuropathologic process.").

7

to investigate his organic brain damage.

9. In the *Order*, this Court noted that Mr. Fields did not demonstrate that the Court had the authority to issue the requested transport order. *Order*, at 3. However, the Court has the requisite authority. It has jurisdiction over the matter under 28 U.S.C. § 2255, and thus possessed of jurisdiction, the All Writs Act permits it to issue "all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This undoubtedly includes the movement of the prisoner before the Court.

10. Further authority is found under 18 U.S.C. § 3599 (f), whereby this Court may authorize appointed counsel to obtain reasonably necessary expert and investigative services in connection with issues relating to sentencing. An order to transport Mr. Fields to a medical facility local from his place of incarceration is within the Court's authority under section 3599 (f). See, e.g., Nields v. Bradshaw, No. 1-03-cv-019, 2010 WL 148076, at *1-*2 (S.D. Ohio Jan. 11, 2010) (granting motion ordering warden to transport state capital prisoner to local medical facility for neurological imaging related to his § 2254 case)[6]; Pizzuto v. Hardison, No. CV-05-

---

[6]The petitioner in Nields had completed his Section 2254 proceedings and sought neurological imaging in order to discover evidence to be used in a state clemency petition. The transport order was stayed pending the respondent's appeal, but the parties reached an agreement that allowed the petitioner to be transported for neurological imaging to be conducted. See Nields v. Bradshaw, 2010 WL 290963

516-S-BLW, 2008 WL 5115054, at *6 (D. Idaho Dec.4, 2008) (indicating that court will grant motion to transport habeas corpus petitioner to medical facility for neuropsychiatric testing upon counsel's provision of date, time and location of facility and indication of counsel's willingness to pay costs of security for transport); see also Primus v. Lee, C/A No. 4:07-911-PMD-TER, 2010 WL 1346330, at *1 (D.S.C. Jan. 22, 2010) (noting that district court ordered Department of Corrections to transport prisoner who alleged Section 1983 violations to University of South Carolina, Department of Urology, for medical examination in support of his claims).

11.     Since Mr. Fields is a federal prisoner and not a state prisoner petitioning under 28 U.S.C. § 2254, this Court's authority to order him transported is even more clear.   District courts routinely order the Bureau of Prisons to transport prisoners to designated facilities for competency examinations, pursuant to Fed. R. Crim. P. 12.2.(c)(1) and 18 U.S.C. §§ 4242 and 4244.  See, e.g., United States v. Burgess, No. CR-08-078-JHP, 2009 WL 232999  (E.D. Okla. Jan. 30, 2009) (ordering Bureau of Prisons to transport defendant to medical facility for competency evaluation pursuant to 18 U.S.C. § 4241);   United States v. Kennedy, No.96-40066-SAC, 2005 WL

---

(S.D. Ohio Jan. 15, 2010); Nields v. Bradshaw, No. 1-03-cv-019 (S.D. Ohio Docket. Nos. 71, 72). The Governor of Ohio subsequently granted Mr. Nields' request for clemency.  See Governor's Statement on Parole Board Recommendation Regarding Richard Nields, http://governor.ohio.gov/Default.aspx?tabid=1678.

2988722, at *1 (D. Kan. Oct. 4, 2005) (ordering Bureau of Prisons to transport defendant to medical center for competency evaluation on defendant's motion pursuant to Fed. R. Crim. P. 12.2(c)(1)(A)); United States v. Chamberlin, No. 07-00377 SOM, 2009 WL 3926405, at *1 (D. Haw. Nov. 17, 2009) (ordering Bureau of Prisons to transport prisoner to appropriate facility for psychiatric or psychological examination pursuant to 18 U.S.C. § 4244). Indeed, the Government sought such an order prior to trial in this case. United States v. Fields, 6:03-cr-00073-RAW-1 (Dkt. # 11, July 25, 2003).

12. As explained above and in the *Motion*, *Memorandum* and *Reply*, Mr. Fields has demonstrated that brain scanning is an "investigative, expert or other service[] ... reasonably necessary for the representation of the defendant ... in connection with issues relating to ... the sentence." 18 U.S.C. § 3599(f). A transport order is within this Court's authority and jurisdiction, and the information brain scanning will provide is central to the resolution of the factual issues underlying Mr. Fields' claim that trial counsel rendered ineffective assistance in failing to present evidence of brain damage. As the Supreme Court has explained, courts in habeas corpus proceedings may rely on the All Writs Act "in issuing orders appropriate to assist them in conducting factual inquires." Harris v. Nelson, 394 U.S. 286, 299

(1968).[7]

13.     Where, as here, "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally  and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Id. at 300.  The transport order Mr. Fields seeks is a necessary  to facilitate an adequate inquiry into the merits of his claims.

14.     In previously denying this request, the Court also indicated that there may not be a need for such brain imaging, because some documents in the record showed that Mr. Fields was "generally well oriented to person, place and situation." *Order*, at 3.  However, the report of Dr. Martell, to which the Court was referring, states that while Mr. Fields was oriented to "person, place and situation," he was "consistently confused with regard to time, reporting the year was 2001 both verbally during mental status examination, and hours later in written form while completing test forms." Pet. Ex. 9, 7.  Dr. Martell further opines, as noted above, that Mr. Fields suffers from "moderate-to-severe brain damage," id. at 10, and that brain imaging is

---

[7]Cf. United States v. New York Telephone Co., 434 U.S. 159, 172 (1977) (All Writs Act permits district court to compel third party telephone company to assist FBI in installing pen registers); Price v. Johnston, 334 U.S. 266, 282 (1948) (All Writs Act permits court of appeals to order prisoner to be brought before it to argue his own appeal).

"strongly indicated" in this case. <u>Id.</u> at 16. In any event, Dr. Martell, who has reviewed the entire mental health record and has extensively evaluated Mr. Fields, has opined that such neuroimaging will likely be helpful to his ability to identify the causes and further course of Mr. Fields' organic dysfunction. That opinion is not contested in the record, and this Court's reliance on the partial observation that he is oriented to "person, place and situation" does not nullify Dr. Martell's opinion.[8]

### III. Request for Deposition of Dr. Michael Kemp

15. Mr. Fields renews his request for leave to take the deposition of Dr. Michael Kemp. In the *Answer*, the Government conceded that Mr. Fields' treating medical providers could provide important and relevant information, particularly on the hotly-contested issue of whether Mr. Fields was malingering. <u>See</u> *Answer*, 29-31. Moreover, the Government emphasized that both of Mr. Fields' testifying experts relied on Dr. Kemp's written observations in forming their opinions. <u>See</u> *id.*, 30. Dr. Kemp's deposition is likely to provide relevant information and aid this Court in determining, *inter alia*, whether Mr. Fields suffered prejudice from trial counsel's failure to present the testimony of Mr. Fields' treating medical providers. Dr. Kemp's deposition is a "necessary facilit[y] and procedure[] for an adequate inquiry" and thus

---

[8]Petitioner further submits that the Court may not deny this request on this ground without hearing from Dr. Martell. Petitioner would be happy to present him at a hearing on this portion of the instant Motion.

this Court should grant Mr. Fields' request.  <u>Harris</u>, 394 U.S. at 299.

**IV.    Brady Requests**

As noted above, sections (B)(1) and (2) of the initial *Omnibus Motion* have been resolved between the parties.  Mr. Fields herein reasserts his entitlement to the <u>Brady</u> requests previously designated as (B)(3) and (4).

Mr. Fields understands that the Court previously denied this requests as being too general.  *Order*, at 3-4.  Petitioner has nothing new to add to these prior requests, but reasserts them, lest they be deemed waived.

**REQUEST FOR RELIEF**

WHEREFORE, for all of the above reasons, as well as for all of the reasons set forth in the *Motion*, *Memorandum* and *Reply*, and based upon the full record before the Court, Mr. Fields respectfully requests the following relief:

A. That the Court conduct an evidentiary hearing on all material facts in dispute that are relevant to the disposition of the issues raised in the *Motion*;

B. That the Court issue an order permitting Mr. Fields to be transported to an appropriate local facility for brain scans and imaging;

C. That the Court grant leave to conduct a deposition of Dr. Michael Kemp; and

D. That the Court grant his <u>Brady</u> requests.

Respectfully Submitted,

/s/Michael Wiseman

Michael Wiseman
Cristi Charpentier
Federal Community Defender for the
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner
Edward Leon Fields, Jr.

Dated:     January 4, 2011
           Philadelphia, PA

14

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(g)**

I, Michael Wiseman, Esq., hereby certify that on January 3, 2011, I conferred with counsel for the United States of America, specifically, AUSA Christopher Wilson and AUSA Jeffrey B. Kahan, in good faith and in a sincere attempt to resolve differences regarding the subject matter of this motion. These conferences took place by electronic mail because the distance between counsels' offices made a personal conference infeasible. Counsel for the Government oppose the requests set forth herein.

/s/ Michael Wiseman

Michael Wiseman

**CERTIFICATE OF SERVICE**

I, Michael Wiseman, Esq., hereby certify that on this 4th day of January, 2011, the foregoing document was electronically filed and is available for viewing and downloading through the ECF system.

/s/ Michael Wiseman

Michael Wiseman