_____ :
:
UNITED STATES OF AMERICA, :
:          CIV-10-115-RAW
Respondent, :
:          CAPITAL 2255 PROCEEDINGS
-v- :
:          HON. RONALD A. WHITE
EDWARD LEON FIELDS, JR., :
:
Petitioner. :
:
_____ :

**PETITIONER'S RESPONSE TO
GOVERNMENT'S MOTION FOR DISCOVERY**

Petitioner Edward Leon Fields, Jr. hereby responds to the government's Motion for

Discovery (Doc. 39) ("Government's Motion").

As an initial matter,  the parties have conferred regarding their discovery requests and

have reached agreement on several matters.  As set forth in detail below, the parties have agreed

to reciprocal witness list and expert witness disclosures pursuant to Rule 26 of the Federal Rule

of Civil Procedure as well the evaluation of Mr. Fields by a neuropsychologist retained by the

government (although not the circumstances of that evaluation).  The remaining issues must be

resolved by this Court.  A proposed order accompanies this response.

**ARGUMENT**

With the exception of the issues upon which the parties have reached agreement, the

government has not demonstrated good cause for its discovery requests.  At most, the

government contends that the requested discovery would uncover relevant evidence and assist it

in identifying expert witnesses and preparing for the evidentiary hearing.  See, e.g.,

Government's Motion at 2, 4-6, 8- 9.  In support of its broad interpretation of Habeas Rule 6's

"good cause" requirement (a broad interpretation it applies only to its own discovery requests),

the government relies on three non-habeas civil cases which do no more than explain the

underlying purpose of the discovery provisions of the Federal Rules of Civil Procedure.[1]

However, the government's interpretation would swallow the rule:  if "good cause" required no

more than contending that the discovery mechanism sought served some purpose in litigation, it

would effectively open as a matter of right the full panoply of the discovery provisions of the

Federal Rules of Civil Procedure to litigants in habeas corpus proceedings.  This result is clearly

contrary to the intentions of the drafters of the Federal Rules of Civil Procedure, Habeas Rule 6

and the Supreme Court:  "At the very least, it is clear that there was no intention to extend to

habeas corpus, as a matter of right, the broad discovery provisions which, even in ordinary civil

litigation, were 'one of the most significant innovations' of the new rules."  Harris v. Nelson, 394

U.S. 286, 295 (1969)(citation omitted); see also Bracy v. Gramley, 520 U.S. 899 (1997).

Moreover, the government's interpretation of Rule 6 fails to acknowledge another

fundamental difference between habeas corpus proceedings and ordinary civil litigation:  a

habeas corpus proceeding is by its nature a *collateral* proceeding.  By virtue of the preceding

---

[1]The government's citation to ClearOne Communications v. Biamp Systems, 653 F.3d 1163, 1176 (10th Cir. 2011), Government's Motion at 4, a misappropriation of trade secrets case, appears to refer to that decision's quotation from the Advisory Committee's Note on Rule 26(a)(2), regarding the purpose for expert witness disclosures.  Its citation to Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008), Government's Motion at 4, a section 1983 excessive force case, also appears to refer to the same quoted language from the Advisory Committee's Note.  In fact, the third case cited by the government, Celotex Corp. v. Catrett, 477 U.S. 317 (1986), cuts against its argument that discovery would be helpful here, as that case stands for the proposition that a party moving for summary judgment need not "support its motion with affidavits or other similar materials negating the opponent's claim," if the nonmoving party has the burden of proof at trial (as Mr. Fields does here) and cannot demonstrate there is a genuine issue of fact.

criminal case, the parties are neither strangers to each other nor many of the factual issues of the proceeding, and come to the habeas corpus proceeding possessing a substantial wealth of information.

In the instant matter, the government has already extensively investigated Mr. Fields' criminal culpability, life history and mental state. In addition to the lay and expert witnesses the government cross-examined at trial, it interviewed scores of life history/mitigation witnesses. From approximately five dozen interview reports turned over to Mr. Fields prior to trial, it appears that the government identified and interviewed Mr. Fields' mother, sister, daughter, aunts, cousins, ex-wife and at least six ex-girlfriends, former brother-in-law, at least eighteen co-workers from at least three prior jobs, and numerous friends and acquaintances. The government also obtained Mr. Fields' Navy service records, employment records from Kenco, Bremner-Wortz, the Oklahoma Department of Corrections and Wackenhut, divorce and child support documents, school records and medical records. See Report of Neuropsychological Evaluation of J. Randall Price, Ph.D, Dated July 1, 2005 ("Price Report") at 2-6 (attached to Appendix to 2255 Motion at 8) (itemizing ten notebooks of materials reviewed by Dr. Price). Furthermore, prior to trial the government had Mr. Fields evaluated by Dr. Jeffrey Mitchell, a psychiatrist, and Dr. Randall Price, a psychologist.

Clearly, the government already possesses a wealth of information that will assist it in selecting its expert witnesses and preparing for an evidentiary hearing.[2] Moreover, the cooperation of so many of Mr. Fields' family members, friends, acquaintances and former co-workers demonstrates that the government has and is able to obtain much of the information it

---

[2]Indeed, according to its motion the government has already selected its expert witnesses.

now requests from Mr. Fields without resort to the discovery procedures of the Federal Rules of Civil Procedure. Given the history of this case, the government cannot rely on general statements that additional discovery will assist it in litigating this matter.

A showing of "good cause" requires far more than the government has alleged in support of its discovery requests. "A district court has discretion to grant discovery in a habeas case upon a *fact-specific showing* of good cause under Rule 6." Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001) (emphasis added); see also Wallace v. Ward, 191 F.3d 1235, 1245 (10th Cir. 1999); United States v. Moya-Breton, 439 F. App'x 711, 716 (10th Cir. 2011) (applying same standard to section 2255 petitions).[3] "The burden of demonstrating the materiality of the information requested is on the moving party." Stanford, 266 F.3d at 460. Discovery will not be granted where the moving party's allegations are "general and conclusory" or "pure speculation." Wallace, 191 F.3d at 1245; cf. Braden v. Bagley, No. 2:04-cv-842, 2007 WL 1026454, *4 (S.D. Ohio Mar. 30, 2007) (granting discovery where "[t]he discovery he requests is specific, limited, and reasonably calculated to lead to evidence in support of his claim..."). At the very least, the government must demonstrate "good cause" for any of its discovery requests by pointing to specific facts and allegations in Mr. Fields' petition or in the voluminous investigative and trial record that would suggest discovery is warranted, and give some indication of the type of

---

[3]Clark v. Johnson, 202 F.3d 760, 767 (5th Cir. 2000) ("Discovery must relate solely to a specifically alleged factual dispute, not to a general allegation."); Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994) ("Conclusory allegations are not enough to warrant discovery under Rule 6 of the Federal Rules Governing Section 2254 Petitions; the petitioner must set forth specific allegations of fact. Rule 6, which permits the district court to order discovery on good cause shown, does not authorize fishing expeditions."); Braden v. Bagley, No. 2:04-cv-842, 2007 WL 1026454, *2 (S.D. Ohio Mar. 30, 2007) ("In keeping with the well-settled principle that habeas [litigants] are not entitled to go on a fishing expedition in search of damaging evidence, Rule 6's 'good cause' standard requires [litigants] to at least attempt to identify what he expects to uncover through his discovery requests.").

information the government believes it will obtain through discovery. As discussed further below, it has not done so.

## A. Trial counsel files

Mr. Fields will produce material from trial counsel's files that is relevant to the claims of ineffective assistance of counsel alleged in the 2255 Motion. The government, however, demands all of trial counsel's files, regardless of the relevance of material to the issues that must be decided by the Court in this proceeding.

As this Court correctly held in its Order of March 29, 2012 (the "Order"), a habeas petitioner's implied waiver of attorney-client privilege "is limited to the claims [of ineffective assistance of counsel] made in the 2255 petition." Order at 2. See also United States v. Pinson, 584 F.3d 972, 978 (10th Cir. 2009); Barrett v. United States, No. 09-CIV-105-JHP, 2009 WL 2982670, at *5 (E.D. Okla. Sept. 11, 2009) (finding that habeas petitioner's waiver of attorney-client privilege "is limited to claims of ineffective assistance of counsel claims as raised in the § 2255 motion"); Mower v. United States, No. 2:08-CV-5-TC, 2008 WL 2223200 (D. Utah) (finding that habeas petitioner "impliedly waived the privilege concerning communications with her trial lawyer that are at issue in her § 2255 motion").

Contrary to the government's assertion, Mr. Fields' claims of ineffective assistance of counsel do not "encompass every aspect of the trial proceedings, including proof of the crime itself, proof of the defendant's mental health, and arguments to the jury," Government's Motion at 3, but rather are limited to the discrete allegations that:

- Trial counsel ineffectively failed to argue that Mr. Fields' uncontested mental illness was mitigating (Ground I.B);

- Trial counsel were ineffective for failing to investigate and present evidence of Mr. Fields' organic brain damage (Ground I.C);

- Trial counsel ineffectively failed to investigate and present available medical and mental health providers who could have supported the manic flip defense and who would have testified that Mr. Fields' mental illness was genuine, not malingered (Ground I.D);

- Trial counsel were ineffective for eliciting damaging testimony during the cross-examination of Dr. Price (Ground I.E);

- Trial counsel were ineffective for failing to investigate and present evidence of compulsive aggression in Effexor patients (Ground I.F);

- Trial counsel ineffectively failed to thoroughly and properly prepare the two mental health experts who testified (Ground I.G);

- Trial counsel were ineffective for failing to investigate, present and argue evidence that would have rebutted the substantial planning and mental anguish aggravating factors (Ground III.A-C);

- Trial counsel were ineffective for failing to present Mr. Fields' social history through the testimony of a mitigation specialist or mental health expert and arguing that social history as a mitigating factor (Ground IV);

- Trial counsel ineffectively failed to object to and raise on direct appeal improper argument during the Government's closing (Ground V);

- Trial counsel were ineffective for failing to object to instructions and a verdict form that allowed the jury to approve a general verdict of death based on the combined weighing of aggravating factors applicable to two separate murder counts (Ground VI); and

- Trial counsel were ineffective for failing to investigate and present exculpatory evidence (Ground VII).

As a result, any waiver of attorney-client privilege is limited to matters relevant to these discrete claims, and is certainly not "all-embracing," Government's Motion at 3, as the government

6

contends.   As this Court indicated in the Order, counsel for Mr. Fields will "winnow[]" the files of trial counsel and provide those materials that are relevant to the claims listed above.

**B.      Expert witness disclosures and witness list**

The parties have agreed that they will exchange witness lists thirty days prior to the evidentiary hearing pursuant to Rule 26(a)(3).

The parties have agreed to exchange expert witness disclosures (including the raw data relied on by the experts) ninety days prior to the evidentiary hearing pursuant to Rule 26(a)(2), except that Mr. Fields agrees to provide a Rule 26(a)(2) disclosure for Daniel A. Martell, Ph.D., prior to any date scheduled for a neuropsychological evaluation by a government expert.[4]

**C.      Depositions**

The government has not demonstrated good cause for its request to depose Mr. Fields, trial counsel Julia O'Connell, Barry Derryberry and Isaiah Gant, and expert witnesses Dr. George Woods, Dr. Bradley Grinage, Glori Shettles, Dr. Michael Gelbort, Dr. Daniel Martell and Robert Tressell.  At most, the government contends that these individuals are important witnesses and possess relevant information, and that depositions "will permit the government to fully and fairly prepare for the evidentiary hearing and to seek summary judgment as to claims that can be determined without evidentiary development."  Government's Motion at 5.  This is no more than

---

[4] Rule 26(a)(2)(A) requires a party to disclose information regarding "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Mr. Fields has not made a final determination of which witnesses he may use to present evidence pursuant to Federal Rules Evidence 702, 703 or 705, but notes that several of the individuals listed in the government's motion will not be called as such witnesses.  Mr. Fields should be permitted to determine which witnesses he will use for such purposes, as an ordinary civil litigant would, rather than being required to produce Rule 26(a) disclosures for all the individuals on the government's list.

a restatement of the purpose underlying the Federal Rule of Civil Procedure providing for depositions of witnesses, and hardly meets the heightened burden imposed by Habeas Rule 6's "good cause" requirement.

Ordinary civil litigants are granted access to discovery procedures such as witness depositions as a matter of right because they help the parties identify factual issues sufficient for trial and prepare for the trial itself. The government must do more to justify discovery in this section 2255 proceeding – the burden is on the government to make "a fact-specific showing of good cause," Stanford, 266 F.3d at 460, and it has not done so here. The Tenth Circuit has explained that a district court should not grant discovery in a habeas proceeding where the moving party's allegations are "general and conclusory," Wallace, 191 F.3d at 1245, as they are here.

Moreover, the government has given no reason why it needs a practice run with Mr. Fields' witnesses, or that cross-examination at the upcoming evidentiary hearing will be insufficient to test the reliability of their testimony. During Mr. Fields' trial, depositions would have only been permitted to preserve testimony, as provided by Federal Criminal Rule of Procedure 15(a).

The government already possesses, or will receive, an abundance of information from and about the individuals it wishes to depose. The government has given no reasons – much less "a fact-specific showing of good cause" – why this information will be insufficient to enable it to prepare for the upcoming evidentiary hearing, such that it should be allowed to depose these witnesses. The government already possesses reports from the expert witnesses listed in the Government's Motion and, if they are to testify at the hearing as expert witnesses, the

8

government will receive extensive Rule 26(a) disclosures. Additionally, the government will receive all relevant material from trial counsels' files. Mr. Fields anticipates that the volume of this production will be significant, and will include such ordinarily-privileged materials as work product that reflects the mental impressions and actions of counsel in representing Mr. Fields and communications to and from Mr. Fields.

Additionally, Mr. Fields retains his Fifth Amendment privilege against self-incrimination in this proceeding. The right against self-incrimination is "accorded liberal construction" and may be asserted whenever a person "has reasonable cause to apprehend danger" from answering the government's questions. Hoffman v. United States, 341 U.S. 479, 486 (1951). "Reasonable cause" exists whenever the person's statements possibly may be used against him in a future prosecution, even where that possibility is remote or speculative. See, e.g., Resnover v. Pearson, 965 F.2d 1453, 1462 (7th Cir. 1992) ("We cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution"); United States v. Sharp, 920 F.2d 1167, 1171 (4th Cir. 1990) ("[O]nce incriminating potential is fund to exist, courts should not engage in raw speculation as to whether the government will actually prosecute"); United States v. Cuthel, 903 F.2d 1381, 1384 (11th Cir. 1990) (witnesses can properly invoke privilege "even if the risk of prosecution is remote").

The protections of the Fifth Amendment apply equally to questions concerning sentencing. Under Estelle v. Smith, 451 U.S. 454, 463 (1981), "[a]ny effort by the State to compel respondent to testify against his will at the sentencing hearing would clearly contravene the Fifth Amendment. The Supreme Court explained:

> In this case, the ultimate penalty of death was a potential consequence of what respondent told the examining psychiatrist.  Just as the Fifth Amendment prevents a criminal defendant from being made "'the deluded instrument of his own conviction,'" Culombe v. Connecticut, [367 U.S. 568,] 581 [1961] quoting 2 Hawkins, Pleas of the Crown 595 (8th ed. 1824), it protects him as well from being made the "deluded instrument" of his own execution.

Smith, 451 U.S. at 462.

 In Mitchell v. United States, 526 U.S. 314 (1999), the Supreme Court extended the Fifth Amendment right to refuse to testify about any sentencing fact, whether or not the death penalty was at issue.  There the Court held that in sentencing the defendant after her plea of guilty, the trial court could not draw adverse inferences from her failure to provide details of her crimes at sentencing, observing that "[t]his Court has already rejected the proposition that 'incrimination is complete once guilt has been adjudicated,'... and we reject it again today."  526 U.S. at 325 (quoting Smith, 451 U.S. at 462).  Mitchell went on to hold that the privilege ends only when "no adverse consequences can be visited upon the convicted person by further testimony."  526 U.S. at 326.  Significantly, the Mitchell Court held that Ms. Mitchell was entitled to assert her Fifth Amendment privilege at sentencing, and to be free from any adverse inference related to that assertion, even though she had affirmatively waived the privilege as to guilt by entering a plea of guilty, as Mr. Fields did here.

Almost any question to Mr. Fields regarding the penalty phase of his trial could implicate his absolute constitutional privilege to refrain from statements that could be used to impose a sentence of death.  The breadth of the possible aggravating circumstances in a federal capital case, and the fact that traditional rules of evidence do not apply during the penalty phase of the

trial, provide no assurance that a statement by Mr. Fields in these proceedings would not be used against him in a future re-sentencing proceeding.[5]

If Mr. Fields is granted relief in this section 2255 proceeding, he may be entitled to a new penalty hearing at which any statements made in connection with this proceeding could be used against him, either directly or as a basis for the development of further government evidence in support of a death sentence. The Fifth Amendment privilege has long been broadly construed. See, e.g., Counselman v. Hitchcock, 142 U.S. 547, 562 (1892) (privilege "must have a broad construction in favor of the right which it was intended to secure"). It protects against not only direct admissions of guilt but also disclosures which would "furnish a link in the chain of evidence needed to prosecute the claimant." Hoffman, 341 U.S. at 486.

Given the scope of the Fifth Amendment privilege, Mr. Fields has a privilege against disclosing any fact which the government may use in support of a statutory or non-statutory aggravating factor or in rebuttal of a mitigating factor. The wide-open provisions of the federal death penalty statute underscore the importance of protecting Mr. Fields' Fifth Amendment rights. Because his death sentence may be vacated and he may face a penalty retrial at some point in the future, Mr. Fields "has reasonable cause to apprehend danger" from being deposed by the government, and thus his right against self-incrimination attaches. Hoffman, 341 U.S. at 486. The government cannot overcome this constitutional privilege with the bare statement that

---

[5]The federal death penalty statute enumerates sixteen aggravating factors which could merit the death penalty for capital homicide, but also authorizes the government to present evidence of other, non-statutory aggravating circumstances. 18 U.S.C. § 3592(c). The statute does not limit the evidence the prosecution can present at the penalty hearing. 18 U.S.C. § 3593. In addition to the virtually unlimited scope of aggravating evidence, the government may also rebut mitigating factors presented by the defense. Id.

"Fields's own conduct and statements necessarily informed counsel's actions and the opinions of the defense's experts." Government's Motion at 6.

For all of these reasons, this Court should deny the government's request for depositions of Mr. Fields' witnesses.

### D. Mental health evaluations

Mr. Fields agrees to a neuropsychological evaluation by a government expert, but the parties have not agreed upon the circumstances of the evaluation. The government has agreed to record the interview portion of the evaluation, but does not agree to record or to allow for the presence of a defense representative during the testing portion of the evaluation. Mr. Fields requests that the government be ordered to record and produce the recording of the entire evaluation, including the testing portion, and/or to allow for the presence of a defense representative during the entire evaluation. At trial, the government's neuropsychological expert, Dr. Price, taped his evaluation of Mr. Fields, and the tapes were provided to trial counsel. Tr. 7/21/12 at 3233. Moreover, the government frequently requests and/or agrees to taping of mental health evaluations and the presence of counsel at the evaluation during section 2255 proceedings.[67] At least one court has ordered the government to allow the videotaping of evaluations of its mental health experts, including a neuropsychological evaluation, during

---

[6]See, e.g., Allen v. United States, No. 4:07-cv-00027-ERW (E.D. Mo. Oct. 5, 2011) (Parties' Joint Stipulation Regarding Conduct of Mental Health Examination of Billie Allen providing that neuropsychological evaluation shall be videotaped and audiotaped and that counsel may be present outside evaluation room); United States v. Nelson, No. 04-CV-08005-CV-FJG (W.D. Mo. April 20, 2010) (Government's Motion to Establish Procedures by Which a Mental Health Evaluation of Movant Will be Conducted, requesting videotaping and audiotaping of neuropsychological and psychiatric examinations over the objection of the petitioner, the provision of the expert's notes to counsel for petitioner, and the presence of counsel outside the examination room but with audio- or video-feed so that counsel may monitor the evaluation) (orders attached hereto as Exhibit A).

section 2255 proceedings.  <u>United States v. Bourgeois</u>, Crim. A. No. C-02-216-JGJ (S.D. Tex. May 6, 2010) (order requiring videotaping of mental health examinations by government experts); <u>United States v. Bourgeois</u>, Crim. A. No. C-02-216 (S.D. Tex. June 9, 2010) (order denying government motion to reconsider order requiring videotaping of mental health examinations, including neuropsychological evaluation) (orders attached hereto at Exhibit B). Because the proposed evaluation is adversarial and not purely investigative, this Court can and should impose conditions on any government mental health examination and require the taping and the presence of counsel in order to protect Mr. Fields' Fifth Amendment rights and ensure the integrity of the testing.[8]

The government also requests permission to have Mr. Fields evaluated by a psychiatrist, but this request is not supported by a demonstration of good cause.  As part of his 2255 Motion, the only new evidence of his mental state that Mr. Fields has offered is the report of Dr. Daniel Martell, a neuropsychologist, who opines that Mr. Fields suffered from organic brain impairment at the time of trial and did so to a much greater degree of severity at the time of Dr. Martell's evaluation in 2010, indicating the presence of an underlying disease process, and the pre-trial report of Dr. Michael Gelbort, a neuropsychologist, who opines that Mr. Fields demonstrated a pattern of neuropsychological deficits consistent with organic brain damage, with further evaluation warranted.  Mr. Fields has not offered new psychiatric evidence of his mental health during these section 2255 proceedings.

---

[8]<u>See</u> American Bar Association Guidelines on Criminal Justice Mental Health Standards 7-3.6(d) ("...[a]ll court-ordered evaluations of movant initiated by the prosecution should be recorded on audiotape or, if possible, videotape, and a copy of the recording should be provided promptly to the defense attorney..."); <u>Estelle v. Smith</u>, 451 U.S. 454, 462-62 (1981).

Prior to trial, Mr. Fields was evaluated by two government experts, Dr. Randall Price, a neuropsychologist, and Dr. Jeffrey Mitchell, a psychiatrist. Mr. Fields was evaluated pre-trial by three defense experts, Dr. George Woods, a neuropsychiatrist, Dr. Bradley Grinage, a psychiatrist, and Dr. Gelbort.[9] Dr. Woods and Dr. Grinage have provided declarations in support of the 2255 Motion, which primarily address trial counsel's preparation for the presentation of mental health evidence at trial and the materials the experts were not provided with at the time of trial. Neither expert re-evaluated Mr. Fields in the course of these proceedings, or at any other time.

There is no good cause to allow a government psychiatric expert to conduct a "full-scope psychiatric evaluation," Government's Motion at 7, of Mr. Fields. Mr. Fields has not offered new psychiatric evidence of his mental health in this proceeding. To the extent that either Dr. Woods or Dr. Grinage have anything new to say about his mental health (which they do not), it is merely based upon their review of additional documents, and not on an evaluation of Mr. Fields. A psychiatrist, such as the government's proposed expert, is not qualified to administer or interpret neuropsychological tests, see Declaration of Bradley D. Grinage, M.D. (attached to Appendix to 2255 Motion at 3), and thus a "full-scope psychiatric evaluation" will shed no light on the evidence at issue in the 2255 Motion.[10]

---

[9]All of the experts except Dr. Gelbort testified at trial.

[10]In the event the Court disagrees with Mr. Fields and permits the government to conduct a psychiatric examination as well as a neuropsychological examination, the psychiatric examination, too, should be recorded in its entirety or subject to observation by a representative of the defense.

### E. Subpoenas

The government has requested permission to serve *subpoenas duces tecum* on trial counsel as well as on various entities which may possess information regarding Mr. Fields.[11] These requests are unnecessary and unsupported by good cause.

The government is not entitled to trial counsel *subpoenas*. Mr. Fields will provide all material from trial counsel's files that is relevant to the claims of ineffective assistance of counsel in the 2255 Motion. As the government has acknowledged, Mr. Fields is the owner of the attorney files in his case, and "this Court can and should order him to submit them through present counsel." Response in Opposition to Motion for Reconsideration of Portion of Order Dated August 15, 2011, at 4. The government has no good faith reason to believe that additional documents are still in the possession of trial counsel, or that Mr. Fields will not obtain them and provide them to the government if they are not. Its request is merely a fishing expedition, without good cause, and this Court should deny the request for trial counsel *subpoenas*.

The government also requests *subpoenas duces tecum* for a number of sources which may possess information regarding Mr. Fields' life history. As set forth above, the government already possesses a large number of records on Mr. Fields. <u>See</u>, <u>e.g.</u>, Price Report, at 2-6. As part of Mr. Fields' disclosure of trial counsel files and Rule 26(a)(2) expert disclosures, Mr. Fields will provide school records, employment records, medical records, and inmate records, as well as an additional copy of Mr. Fields' Navy personnel records. Mr. Fields is unaware of any sealed court documents, and the government has not made any showing of good cause with

---

[11]The government also requested expert witness *subpoenas*. The government has informed Mr. Fields' counsel that is satisfied with production pursuant to Rule 26(a)(2), and thus the parties deem this portion of the request for *subpoenas* to be withdrawn.

regard to any such materials, if they exist, as its request is purely speculative and devoid of any specific allegations of fact. This request is an unnecessary, duplicative fishing expedition, and the Court should deny the request for records *subpoenas*.

Habeas Rule 6 gives this Court discretion to authorize a party to conduct discovery pursuant to the Federal Rules of Civil Procedure; access to the discovery provisions of the Rules is not automatic upon a showing of good cause. Rule 26 further provides that this Court "must limit the frequency or extent of discovery otherwise allowed by these rules ... if ... the discovery sought is unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive ... [or if] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action...." Fed. R. Civ. P. 26(b)(2)(C). The Court should deny this portion of the government's motion because the requested *subpoenas duces tecum* cover information that will be provided through other agreed-upon discovery mechanisms, is already in the possession of the government or to which the government is not entitled.

### F.      Interrogatories

The government's proposed interrogatories[12] are no more than a fishing expedition for which no good cause exists. Moreover, the request is duplicative because the government already possesses some of the information it seeks, and it will receive records and information responsive to its proposed interrogatories through Mr. Fields' production of trial counsels' file and Rule 26(a)(2) expert disclosures. Additionally, the government's neuropsychological expert

---

[12]It appears that the government did not attach the proposed interrogatories to its motion. For the convenience of the Court, Mr. Fields has attached them to this response as Exhibit C.

can ask Mr. Fields' any questions the government wishes regarding Mr. Fields' life history during the interview portion of his evaluation.

The government's proposed interrogatories are grossly overbroad. Its requests include: (1) all medical professionals, including dentists, dieticians, nurse anesthetists, optometrists and podiatrists, who have treated, examined or diagnosed Mr. Fields with regard to his physical health from birth through the present time; (2) all mental health professionals who have treated Mr. Fields from birth through the present time with regard to his mental health; (3) every employer Mr. Fields has ever worked for, including unpaid and volunteer work; (4) all civil litigation to which Mr. Fields has ever been a party, including as amicus, in proceedings before any type of tribunal in any country; (5) all cases in which Mr. Fields has been charged with a crime; (6) all cases in which Mr. Fields has been deposed or called as an in-court witness, in proceedings before any type of tribunal in any country; (7) identify any occasion on which Mr. Fields has had a medical image made of his head or brain; (8) identify all psychotropic substances, whether legally or illegally obtained, the Mr. Fields has ingested since birth;[13] (9) identify every non-social/non-coincidental contact Mr. Fields has had with law enforcement, including any heads of federal agencies, for reasons unrelated to his employment as a

[13]For this interrogatory, the government demands that Mr. Fields identify the generic or trade name of the substance, the name of the prescribing medical professional, the location where Mr. Fields obtained the substance, the dosage or quantity of the substance, the frequency with which Mr. Fields obtained the substance, the date on which Mr. Fields began ingesting the substance, and the date on which Mr. Fields stopped ingesting the substance, and the start and stop dates for each period over the course of Mr. Fields' life that he ingested the substance, if the substance was ingested in multiple episodes.

correctional officer, from birth up to but not including the instant crimes;[14] (10) identify every

contact Mr. Fields had with child protective services or similar agency concerning his welfare or

the welfare of his siblings from the time of his birth until the emancipation of his youngest

sibling; (11) identify every contact Mr. Fields has had with child protective services or similar

agency with regard to his own children; (12) identify every sexual partner that Mr. Fields has

ever had; and (13) identify every school that Mr. Fields has every attended.

Many of these requests reflect no more than mere speculation. For example, the

government has not given the Court any reason to believe – much less made any specific

allegations of fact – that a podiatrist, dietician or neighbor for whom Mr. Fields mowed the lawn

as a teenager would have any information conceivably relevant to the instant proceedings, or that

the record from some long-ago, far away civil proceeding in which Mr. Fields served as a witness

would possibly reveal anything of use, or that any of these people or proceedings actually exist.

The government has not demonstrated good cause.

The overbreadth of these interrogatories is particularly stunning given the volume of

information that the government already possesses from its extensive pre-trial investigation, the

volume of information in the 2255 Motion, and the volume of information Mr. Fields has agreed

to produce in this section 2255 proceeding. Both of the government's trial mental health experts

took extensive life histories from Mr. Fields during their evaluations, as did Mr. Fields' trial

experts, whose reports are exhibits to the 2255 Motion. The government interviewed

---

[14]For this interrogatory, the government demands that Mr. Fields identify the date of contact with the police, the name and jurisdiction of the police agency or agencies involved, the name of the officers involved and the reason for the contact.

approximately five dozen mitigation-related witnesses, including close and extended family members, Mr. Fields' ex-wife and ex-girlfriends, numerous co-workers, friends and acquaintances. The government undoubtedly has access to Mr. Fields' criminal history. The government also has long possessed a wealth of records on Mr. Fields, including employment records, Navy records, school records, divorce records and jail/prison records. <u>See</u> Price Report at 2-6.

Pursuant to Habeas Rule 6 and Rule 26(b)(2)(C), this Court must deny the government's request for interrogatories because they are "unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and the government has had "ample opportunity to obtain the information" during the course of Mr. Fields' criminal trial and habeas proceedings.

**CONCLUSION**

For all of the foregoing reasons, Mr. Fields respectfully requests that the Court deny the government's motion for discovery to the extent it is objected to by Mr. Fields and enter an order consistent with the accompanying proposed order.

Respectfully submitted,

/s/David Osborne
Cristi Charpentier
David Osborne
Renee Edelman
Capital Habeas Corpus Unit
Federal Community Defender for the
 Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West, The Curtis Center
Philadelphia, PA 19106
215-928-0520
Cristi_Charpentier@fd.org
David_Osborne@fd.org
Renee_Edelman@fd.org

Counsel for Petitioner
Edward Leon Fields, Jr.

Dated: July 13, 2012

**CERTIFICATE OF SERVICE**

I, David Osborne, hereby certify that on this 13th day of July, 2012, the foregoing document was electronically filed and is available for viewing and downloading through the ECF system.

/s/ David Osborne
David Osborne