# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BILLIE JEROME ALLEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:07CV0027 ERW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | THIS IS A CAPITAL CASE |
| | ) | |
| Respondent. | ) | |

### PARTIES' JOINT STIPULATION REGARDING CONDUCT OF MENTAL HEALTH EXAMINATION OF BILLIE ALLEN

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Steven E. Holtshouser and Carrie Costantin, Assistant United States Attorneys for said District, and Billie Allen, individually and by and through his counsel, Elizabeth Carlyle, and jointly stipulate and agree to a mental health examination of Billie Allen subject to the following conditions and agreements:

1. The parties agree that the government's expert, Dr. Galit Askenazi, may perform a complete neuropsychological examination and evaluation of Billie Allen at the St. Louis County Jail on October 11, 2011 from approximately 8:00 a.m. to 5:00 p.m.

2. During the examination, Allen's counsel may be present outside the evaluation room and Allen may consult with counsel before and during the evaluation as needed.

3. The evaluation shall be video-taped and audio-taped. The tapes shall not be copied and shall be filed with the court under seal by the Government and may not be viewed by either party or their experts except by Court Order upon a showing of good cause.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

STEVEN E. HOLTSHOUSER, #24277
CARRIE COSTANTIN, #54734
Assistant United States Attorneys
111 South 10th Street, 20th Floor
St. Louis, MO 63101
(314) 539-6894

ELIZABETH UNGER CARLYLE, #41930
   Attorney at Law
   P.O. Box 30418
   Kansas City, MO 64112

SO ORDERED:

_____    _____
United States District Senior Judge        Date

Allen v. United States, 4:07-CV-27-ERW
Petitioner's Response to Motion for Discovery
Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

KEITH D. NELSON,                    )
                                    )
            Movant,                 )
                                    )       Case No. 04-8005-CV-W-FJG
      v.                            )       Crim. No. 99-00303-01-CR-W-FJG
                                    )
UNITED STATES OF AMERICA,           )
                                    )
            Respondent.             )

## GOVERNMENT'S MOTION TO ESTABLISH PROCEDURES BY WHICH A MENTAL HEALTH EXAMINATION OF MOVANT WILL BE CONDUCTED

Comes now the United States of America, by Beth Phillips, United States

Attorney, and Jeffrey Valenti and David Ketchmark, Assistant United States Attorneys,

all for the Western District of Missouri, and moves this court for an Order establishing

the procedures by which a mental health examination of movant will be conducted.

### I. Background

On November 6, 2005, Movant Keith D. Nelson, by and through counsel, filed

a Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States

Code, Section 2255.

On February 24, 2006, counsel for the United States filed its response to

Nelson's Motion to Vacate, Set Aside, or Correct Sentence.

On November 21, 2006, this Court issued an opinion denying the movant's

claims in their entirety. Additionally, a certificate of appealability was denied.

After taking an appeal of that decision, on October 27, 2008, a panel of the

Eighth Circuit Court of Appeals, issued an opinion granting a certificate of appealability on six of the allegations of error raised by movant. A hearing is currently scheduled for Monday, June 14, 2010 before this honorable court on the following six allegations of ineffective assistance of counsel:

a.  Failure of trial counsel to conduct adequate mitigation investigation including failure to move for a continuance to complete the mitigation investigation;

b.  Failure of trial counsel to conduct adequate investigation of defendant's mental health;

c.  Trial counsel's advice or instruction to the defendant to decline to submit to a mental health examination by a government examiner;

d.  Failure of trial counsel to make objections to the allegedly inflammatory and improper comments in the Government's closing argument and rebuttal argument;

e.  Failure of appellate counsel to conduct adequate review of the trial record and the law; and

f.  Failure of appellate counsel to raise on appeal the Government's allegedly improper comments in closing arguments.

On March 31, 2010, counsel for movant provided government counsel with the preliminary report of Xavier Amador, Ph.D.

On April 7, 2010, counsel for movant, in support of movant's motion for post-conviction relief, filed a Notice of Intent to Offer Evidence of Mental Disease or Defect Bearing on the Issue of Punishment.

-2-

On April 9, 2010, counsel for movant, filed a Motion Opposing, and/or to Establish Conditions of, Government Mental-Health Evaluation. Having some disagreement with movant's proposed procedures, this response follows.

## II. Summary of Government Position

Under Rule 12.2(c)(1)(B) of the Federal Rules of Criminal Procedure, the Court is vested with wide latitude in establishing the procedures by which a mental health examination of a movant is to be conducted. In this instance, the government believes that the American Bar Associations (ABA) Guidelines on Criminal Justice Mental Health Standards, 7-3.6, is both reasonable and fair. Throughout movant's post-conviction relief petition, he charges former counsel with being objectively unreasonable when assessed under prevailing professional norms. Furthermore, he repeatedly cites to Supreme Court precedent where the ABA Guidelines are frequently referred to as the benchmark for determining what actions taken by counsel are reasonable. Consequently, it is completely inconsistent and unreasonable to object, as movant now does, to using those same standards when judging his mental condition.

## III. Argument

A district court is vested with wide latitude when establishing procedures or protocols to follow in conducting a mental health examination of a movant when it has decided to order one upon a motion by the government. Federal Rules of Criminal Procedure, 12.2(c)(1)(B). The movant has given notice that he intends to utilize mental health evidence as it bears on the issue of punishment. Likewise, current counsel

-3-

provided the government with the preliminary mental health report of Dr. Xavier Amador, among others. As a result, the government has, by separate motion, asked this court for an order authorizing it to conduct a mental health examination of the movant, conducted by its own expert witnesses. Should such an examination be ordered by the court, it is necessary to determine the manner by which this examination will take place.

The Supreme Court has said, "[p]revailing norms of practice as reflected in the American Bar Associations standards and the like. . . ." are examples of objectively reasonable attorney practices. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). More recently, the Court reiterated its view that the ABA standards are "'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) quoting *Strickland*, 466 U.S. at 688. Apparently agreeing with these statements when preparing the Memorandum of Law supporting his 2255 petition, movant repeatedly cited to various ABA Standards when charging his former counsel with constitutionally deficient representation. Now, however, he argues that his mental health evaluation should be conducted in a manner that is in conflict with those same ABA Standards. This position is inconsistent, inherently unreasonable and arguably a stratagem designed to frustrate the government and this Court from fairly coming to a conclusion on his mental state.

-4-

A.    *Government's Proposed Procedures for Conducting Mental Health Examination*

Consistent with the ABA Guidelines on Criminal Justice Mental Health Standards, 7-3.6[1], the government proposes the following protocols for its examination:

1) Government experts, Dr. Park Dietz (psychiatrist) and Dr. Dan Martell (psychologist), would conduct a joint, two or three day examination of the movant at the facility of his incarceration, F.C.C. Terre Haute[2];

2) The examinations would be both audio- and video-taped[3];

3) A copy of the recorded tapes would be provided to both government and post-conviction counsel promptly;

4) The doctor's notes will be preserved for later production to counsel;

5) Recognizing the movant's Sixth Amendment right to counsel, the government experts would allow the movant to have representation present, but not in the room while the examination is occurring. Instead, at appropriate points, the movant will be allowed to consult with counsel, who will be allowed to make any necessary clarifications, or offer documents before the examinations are complete. To the extent possible (based on facility capability), some type of audio or video feed will be provided so counsel can monitor the examination;

6) Mental health testing and instruments selected would be chosen by the individual expert witness. Consideration to the tests and instruments selected

---

[1] Attached to this motion as Exhibit "A."

[2] ABA Standard 7-3.6(e) states, ". . . [j]oint evaluations should be encouraged . . . They should be permitted when agreed upon by the prosecutor and defense attorney. A joint evaluation involves either a simultaneous evaluations by two or more mental health . . . professionals or a single evaluation by a mental health . . . professional agreed on by both parties." Since defense counsel has already conducted its own mental health evaluation of movant, this proposal applies to a mental health evaluation conducted by two government-hired professionals.

[3] ABA Standard 7-3.6(d) states, ". . . [a]ll court-ordered evaluations of movant initiated by the prosecution should be recorded on audiotape or, if possible, videotape, and a copy of the recording should be provided promptly to the defense attorney. . . ."

by defense experts will be given, but cannot be controlling. Repetitive use of the same instrument can cause issues due to the "practice effect" and the government witnesses need the flexibility to exercise the professional judgment for which they have been hired. It is not practical, nor would a reliable result obtain from either government counsel, post-conviction counsel, or this court to try and micro-manage the testing and evaluation of a subject in the area of mental health, where testing decisions do not follow a script, but instead are the product of professional judgment and clinical presentation of the tested subject. Moreover, the government experts need to be able to administer tests that assess the reliability and validity of other test data collected and be able to make independent determinations of whether either malingering or coaching has taken place.

**B.    *Response to Movant's Evaluation Procedures***

Assuming that the government would file a request to conduct a mental examination of him, the movant has submitted six procedures for this court's consideration. Those conditions are summarized as: (1) opposition to audio- or videotaping of the examination; (2) retention, followed by later production of the government examiner's notes; (3) a limitation on the use of any admissions made by movant in the course of examination; (4) a request pursuant to *Estelle v. Smith*, 451 U.S. 454 (1981) to monitor, but not record, the examination; (5) a limitation to be imposed on the government examiner to only conduct testing previously performed by defense experts; and (6) an agreement that defense counsel can approve, or be given notice at least 10 days in advance of testing, of any testing to be conducted by the government experts, such that litigation can ensue if no agreement is met. In response to each condition, the government argues the following:

> (1) As stated above, the government objects to the defense proposal that no audio- or video-taping of the examination will take place. Given the ABA

Standards repeated reference by the Supreme Court as being the guide that helps to determine reasonableness, it seems objectionably reasonable to follow those Standards here. In a case as important as this, the ultimate goal is reaching a correct, just result. One way to accomplish that goal is to conduct these examinations transparently. Accordingly, the movant wants the government expert's notes to be retained and ultimately produced, but those notes are not the best record of what will transpire in the examinations. Instead, a audio- or video-recording would be the best record of what will occur. Additionally, notes are inadequate for capturing relevant behavioral data that an expert may witness, but be unable to adequately describe in written notes. If the real goal in this post-conviction setting is to get to the truth, there is a much better way of recording the movant's examination. Indeed, audio- or video-taping the examination is the better practice and should be the more objectively reasonable course.

(2) The government agrees that its expert's notes will be retained for production at a later date to counsel. Additionally, the government would promptly produce either an audio- or video-tape of the movant, should one be ordered by the Court.

(3) The government partially objects to the proposed limitation on the information that the movant may disclose upon examination. The government agrees that if the movant elects to proceed with mental health evidence at the upcoming post-conviction hearing (as he has provided notice to do), the government may rebut or utilize statements made by the movant. To the extent that the government is barred from using this information for any other purpose, the government objects. Should the movant prevail at anytime on his motion for post-conviction relief and consequently be granted a new guilt phase trial or penalty phase hearing, the government would not and should not be barred from using any admissions made by the movant during the anticipated mental health evaluation in the event the movant would attempt to use mental health diseases or defects as either an affirmative defense or as mitigating evidence. This reservation is forward-looking and may never come to pass, but a limitation as broadly worded as espoused by the movant could potentially bar a future prosecution unnecessarily. To the extent that the movant would place his mental health in issue, the government should not be barred from using his statements, but would agree that otherwise, such a limitation is appropriate.

(4) The government agrees that defense counsel should be allowed to monitor the examination, but should not be allowed into the room while the examination is taking place. Being present in the room while the examination is occurring

-7-

creates a well recognized threat to the reliability and validity of test data, primarily due to the contamination of the testing process by deviating from standardized test administration practices. Instead, some ability to monitor the examination will need to be worked out with F.C.C. Terre Haute, but the government would suggest a live audio- or video-feed which would allow counsel to monitor, and, at appropriate times, counsel their client. Should such an audio- or video-feed not be feasible, perhaps a second recording device of counsel's choosing could be implemented.

(5) The government objects to limiting its experts to testing performed by the defense experts. Repetition of the same tests can affect the reliability and validity of test data because of the "practice effect," a phenomenon whereby subjects test artificially high because of increased skills as a result of practice on a particular type of test. Additionally, if a subject has advance notice of the testing to be employed, they can either be coached, or have thought of their answers in advance. Neither scenario gets the type of accurate information that is at the heart of why an examination is necessary in this case. Finally, without making comment on the tests performed by the defense experts, they may not have chosen the best tests available, or may not have chosen to administer tests that would be necessary to critically assess the reliability and validity of collected test data, such as test effort and/or psychopathology. To draw these conclusions, the government experts need to be free to exercise their professional judgment, tempered by their knowledge of the prevailing professional norms in their respective fields.

(6) The government objects to essentially giving defense counsel line-item veto power of how they conduct a mental health evaluation. Lawyers need not micro-manage exert witnesses, but instead should look to see if professional norms are followed. In this case, experts in the field of psychiatry and psychology are in a far better position than government counsel, post-conviction counsel, or even this Court to determine which tests should be administered in a mental health examination. Oftentimes, which test to administer is the product of the clinical presentation of the person being examined and is influenced by the strengths and weaknesses that become apparent during evaluation. Also, choosing a battery of tests that compliment, rather than mimic the tests performed by defense experts, will provide a more complete picture of the overall mental health of the movant, while still avoiding the "practice effect" issue.

-8-

## IV. Conclusion

The United States respectfully requests that the Court order the movant be examined by its mental health experts under the procedures outlined above.

Respectfully submitted,

BETH PHILLIPS
United States Attorney

By    */s/Jeffrey Valenti*

JEFFREY VALENTI
Assistant United States Attorney

DAVID KETCHMARK
First Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri  64106
Telephone:  (816) 426-3122

*Attorneys for Respondent*

-9-

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served this 19th day of April 2010 by electronic notice or by U.S. Mail, postage prepaid, to:

> David A. Ruhnke
> Ruhnke & Barrett
> 47 Park Street
> Montclair, NJ 07042
>
> Gary E. Brotherton
> Legal Writes, LLC
> 1390 Boone Industrial Drive, Suite 120
> Columbia, MO 65202-3381

> *Jeffrey Valenti*
> Jeffrey Valenti
> Assistant United States Attorney

JV/blw                          -10-