**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EDWARD LEON FIELDS, JR.,** | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| **v.** | ) | **Case No. CV-10-00115-RAW** |
| | ) | **Criminal Case No. CR-03-73-RAW** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| *Respondent.* | ) | |

**RESPONSE IN PARTIAL OPPOSITION TO PETITIONER'S REQUEST FOR
DISCOVERY AND CONSOLIDATED BRIEF IN SUPPORT**

**COMES NOW,** Respondent, United States of America, by and through undersigned

counsel, and in response to Petitioner's Request for Discovery and Consolidated Brief in Support

(Doc. 40) respectfully submits the following:

**PROCEDURAL HISTORY**

Following the affirmance of his federal death sentence for the murders of two people in

this district, Fields sought collateral relief under 28 U.S.C. § 2255.  Doc. 1.  In support of that

action, Fields moved for discovery and an evidentiary hearing, which the Court denied.   Docs. 4

& 11.  Fields filed a renewed omnibus motion, which the Court granted in part, directing trial

counsel to submit their files for in camera review and inspection by the government.  Docs. 21 &

25.  Fields moved for reconsideration, and the Court vacated its order to produce the files and

granted the parties until May 28, 2012, to file any additional discovery requests concerning the

issue of ineffective assistance of counsel.  On May 28, 2012, Fields filed his Request for

Discovery and Consolidated Brief in Support.  This Response in Partial Opposition follows.

1

On June 21, 2012, the parties conferred by telephone regarding their requests for discovery. The parties agreed to exchange witness lists under Federal Rule of Civil Procedure 26(a)(3)(A)(i), which will include a brief summary of their expected testimony. The parties also agreed to exchange expert disclosures under Federal Rule of Civil Procedure 26(a)(2). Counsel for Fields further agreed to produce disclosures concerning Dr. Daniel Martell before the government performed any neuropsychological examination of the defendant. The government agreed that it would provide recordings of any of its mental health experts' interviews with Fields. However, the government refuses to record or permit monitoring of any mental health testing of Mr. Fields. The government believes, based on current scientific literature, that any such monitoring will affect the accuracy and reliability of the test results.

## I. THE GOVERNMENT WILL IDENTIFY ITS WITNESSES AND PROVIDE ADDITIONAL DISCLOSURES FOR EXPERT WITNESSES

Fields requests that the government disclose the identities of its witnesses under Federal Rule of Civil Procedure 26(a)(3). Additionally, he seeks reports, as required by Rule 26(a)(2)(A), for every expert witness the government intends to call at the hearing. Doc. 40 at 2-3. The government agrees to these requests, in part.

As noted, the government has no objection to the request for a list of witness under Rule 26(a)(3), and will provide one at least 30 days prior to the scheduled hearing. *See* Fed. R. Civ. Pro. 26(a)(3)(B). Similarly, the government does not object to the disclosure of expert testimony, generally, under Rule 26(a)(2)(A). At least 30 days prior to the scheduled hearing, the government will serve Fields with a list of all the witnesses it may use at trial to present testimony under Federal Rule of Evidence 702, 703, or 705. The government will also provide

recordings of any interviews of Fields by its mental health experts.  However, it does not agree to provide recordings or third-party access to any mental health testing.

The government will also provide written reports under Rule 26(a)(2)(B) for witnesses it specially retains or regularly employs to provide expert testimony and who are expected to provide such opinions at the evidentiary hearing.  However, the government objects to Fields's suggestion that Rule 26(a)(2)(B) reports should include the witnesses' "notes" or "interviews." The applicable rule does not require the inclusion of "working notes or recordings" in expert reports. *Gillespie v. Sears, Roebuck & Co.*, 386 F.3d 21, 35 (1st Cir. 2004).  Moreover, for those witnesses who are not specially retained to provide expert testimony or who do not regularly provide expert testimony as part of the duties as federal government employees, the government need not provide a written report under Rule 26(a)(2)(B), and will limit its disclosures as required by Rule 26(a)(2)(C).  Nonetheless, the government recognizes that it has requested subpoena power to obtain much the same information from Fields's experts.  Doc. 39 at 8-9. The government is therefore prepared to disclose the same information from its experts that we have requested from Fields.

## II. THE GOVERNMENT'S DISCOVERY BURDEN IS LIMITED TO CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Fields asks this Court to order the disclosure of all documents relating to a bottle of Effexor capsules seized from his truck after his arrest.  Doc. 40 at 3-4.  Because the request does not concern a claim of ineffective assistance of counsel, this Court should disregard it.

This Court specifically permitted discovery requests concerning claims of ineffective assistance of counsel.  Doc. 32 at 3.  Fields, however, has relied upon a claim of prosecutorial misconduct to justify his request for discovery of documents related to the Effexor bottle.  *See*

3

Doc. 40 at 3-4 (relying on Ground 7(a)(1) of the § 2255 Motion). Fields did allege ineffective assistance of counsel in connection with the Effexor Bottle. He conditionally asserted that if the government did not have an independent duty to disclose information about the bottle, his lawyers failed in their constitutional duty to uncover exculpatory evidence connected to it. Doc. 1 at 123-24. Fields cannot show good cause for disclosures to support a claim based on the notion that the government did not owe him discovery in the first instance. Regardless, as the Court has already recognized, Fields has previously represented that the dispute over information related to the Effexor bottle was resolved. *See* Doc. 25 at 1-2; Doc. 21 at 2 n.2.

**III. FIELDS CAN ONLY ESTABLISH GOOD CAUSE TO DEPOSE GOVERNMENT WITNESSES TO WHOM HE LACKS MEANINGFUL ACCESS**

Fields seeks to depose Dr. Michael Kemp, as he requested in prior motions. Separately, Fields argues that there exists no good cause for depositions in this matter, but that the Court cannot grant the government's request for such discovery without allowing him to depose at least 13 witnesses. Doc. 40 at 4-7. Fields's request to depose witnesses should fail to the extent that it lacks a showing of good cause, and independent of the government's showing.

A. Dr. Michael Kemp

Fields requests leave to depose Dr. Michael Kemp, the physician who treated him just prior to the murders. Fields theorized at trial that Kemp misdiagnosed him and wrongly prescribed him with an anti-depressant that caused him to enter a bipolar "flip," leading to the murders. Fields now claims his attorneys were ineffective for failing to elicit Kemp's testimony to rebut government evidence that the defendant malingered auditory hallucinations that supposedly affected him at the time of the crime. Doc. 1 at 7-16.

The discovery that Fields seeks is irrelevant to the resolution of the § 2255 claim. To succeed on that claim, Fields must show that his attorneys' failure to call Kemp was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, he must show that counsel were on notice that Kemp could offer helpful testimony, that counsel had no tactical reason to forgo that testimony, that counsel's decisions fell below reasonable professional norms, and that counsel's decisions had a reasonably likely impact on the outcome of the trial. As explained in the Answer, Fields has not shown that a decision to forgo Kemp's testimony was prejudicial ineffectiveness. *See* Doc. 16 at 28-32. Kemp could have provided only evidence cumulative to his records, information that trial counsel presented through retained experts. Kemp's observations would have been subject to attack on cross-examination based on his lack of expertise to diagnose mental health issues – something Fields himself implied through his experts. Kemp's alleged errors were the lynchpin of a theory that Fields was not entirely responsible for two murders. Trial counsel could not have credibly argued, on the one hand, that the jury should rely on the doctor's diagnosis while arguing, on the other, that the witness's mishandling of Field's mental health led to two homicides.

Fields does not indicate how information in Kemp's possession is relevant to the issue of trial counsel's performance. Because Kemp does not appear to possess information that would meaningfully inform the resolution of the ineffectiveness issue before the Court, it should find that Fields has failed to show good cause to depose him.

B. Remaining Witnesses

Fields claims that the government has not shown good cause for the depositions it has requested to take (*see* Doc. 39), but he nonetheless attempts to hinge his right to at least 13 depositions on the outcome of the government's motion for discovery.[1] Doc. 40 at 5-7.

The government requested depositions so that it could discover information ahead of the ordered hearing and facilitate potentially dispositive motions.[2] *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The witnesses the government seeks to depose are all employees or members of the defense: the defendant himself, his trial attorneys, and the expert witnesses he retained in anticipation of trial and these collateral proceedings. The government has no expectation that it will have meaningful access to these witnesses if it does not obtain leave to depose them. In order to interview the witnesses Fields relies on in his § 2255 Motion, and fully prepare for the evidentiary hearing, the government has sought leave to conduct depositions. The government's showing of good cause in this regard has no bearing on Fields's entitlement to discovery.

However, the government agrees that its reasoning should permit Fields to depose Iris Dalley and Dr. Ronald Distefano, whose declarations explaining prior testimony were proffered in support of the answer to the § 2255 Motion. The government anticipates that it will call both witnesses at the evidentiary hearing, if the Court does not narrow the scope of the proceeding to obviate their testimony. Thus, the government does not object to Fields's request to depose those two witnesses, to the extent they possess information relevant to claims of ineffective assistance of trial counsel. In fact, the government has no general opposition to depositions of witnesses it intends to rely on at the evidentiary hearing, to the extent that Fields cannot independently interview them.

---

[1] Each side of the case is presumptively limited to ten depositions. Fed. R. Civ. Pro. 30(a).
[2] Fields argues that the government has not shown that it requires depositions to preserve testimony. The government made no pretense to the contrary: it requested the depositions under Federal Rule of Civil Procedure 26, not 27.

Fields has not shown any good cause at this juncture to depose the remainder of the witnesses he names. For instance, he requests leave to depose FBI Agent Gary Graff, who drafted a report that reflected Daniel Presley's statement that Fields invited him to "do something" a few hours before the murder. *See* Doc. 1, Ex. 20 at 3. The government has never questioned the accuracy or veracity of Agent Graff's report. *See* Doc. 16 at 49-50. Indeed, Fields separately presented Presley's declaration, which implies that Graff's report is accurate, even if the witness felt the agent failed to ask a salient question: "If asked I would have told them that when Ed came to the house that day he wanted me to go snake hunting with him." Doc. 1, Ex. 20 at 3. Fields fails to explain how deposing Graff will meaningfully inform the presentation of evidence about alleged ineffective assistance of counsel. Rather, it appears that Fields seeks to depose Graff and several other law enforcement officials (William Donnie Long, Jessie Scott, Gary Rose, Paul Jolivette and Sherry Bedford) who responded to the crime scene in an effort to reinvestigate the evidence, generally. But his effort is misplaced, as the Court has prospectively limited the evidentiary hearing to issues of ineffective assistance. Fields also overreaches in requesting the opportunity to Depose Gary Rose, Paul Jolivettte, Iris Dalley and Stan Florence in regard to the claim that the government suppressed exculpatory evidence, as that issue falls outside the scope of the ordered evidentiary hearing.

Fields asks to depose Dr. Randall Price, claiming the witness determined that he suffers from organic brain damage. That is simply untrue: Dr. Price testified "I did not see much neuropsychological impairment, not significant neuropsychological impairment, that's correct." Tr. 3204-05 (quoted in the § 2255 Motion at 41). Indeed, Fields has elsewhere argued that his trial attorney erred in eliciting that very opinion from Price. *See* Doc. 1 at 39-46. Since trial, Fields has retained an expert who has opined that Price misinterpreted his own data. *See* Doc. 1 at 23 n.8. At present, the government has not indicated any intent call Dr. Price at the evidentiary hearing, and

Fields has not shown any good cause to obtain information from a trial witness whose testimony is a mere foil for his claims of relief.

In a similar vein, Fields seeks to depose Dr. Jeffrey Mitchell because he allegedly possesses information pertinent to a claim that trial counsel ineffectively investigated petitioner's mental health. Fields has never made such a claim before. Instead, he argued that counsel were ineffective for failing to properly exploit Mitchell's testimony in argument. *See* Doc. 1 at 7-16. In short, Fields has relied on the historical fact of Dr. Mitchell's testimony as the basis for his counsel's performance, and the witness possesses no independent information that could alter the assessment of that claim. Moreover, the government has not indicated any intent to adduce any new opinions from Dr. Mitchell at the evidentiary hearing, and Fields has not shown any good cause to obtain new testimony from the witness ahead of the proceeding.

## IV. FIELDS'S ATTORNEYS SHOULD CONTINUE TO OBTAIN FUNDING FROM THE ADMINISTRATIVE OFFICE OF THE COURTS

To the extent the Court permits the government to take depositions, Fields's attorneys ask it to order the government to pay for their fees, travel and subsistence expenses pursuant to Rule 6(c) of the Rules Governing § 2255 cases. Doc. 40 at 7. The Court should deny this request in view of the circumstances of counsel's appointment.

"If the government is granted leave to take a deposition, the judge *may* require the government to pay the travel expenses, subsistence expenses, and fees of the moving party's attorney to attend the deposition." 28 U.S.C. foll. 2255 Rule 6(c) (emphasis added). The rule permits the shifting of costs to ensure the adequacy of an indigent petitioner's representation. 28 U.S.C. foll. 2254 Rule 6, advisory committee notes (made applicable to § 2255 cases through 28 U.S.C. foll. 2255 Rule 6 advisory committee notes). Indeed, the Advisory Committee foresaw a specific scenario in providing the courts with this discretion to protect the rights of indigent prisoners:

> [T]he indigent petitioner . . . may be prejudiced by his inability to have counsel, often court-appointed, present at the taking of a deposition. It is recognized that under 18 U.S.C. § 3006A(g), court-appointed counsel in a § 2254 proceeding is entitled to receive up to $250 and reimbursement for expenses reasonably incurred. (Compare Fed.R.Crim.P. 15(c).) Typically, however, this does not adequately reimburse counsel if he must attend the taking of depositions or be involved in other pre-hearing proceedings. Subdivision (c) is intended to provide additional funds, if necessary, to be paid by the state government (respondent) to petitioner's counsel.

28 U.S.C. foll. 2254 Rule 6, advisory committee notes (made applicable to § 2255 cases through 28 U.S.C. foll. 2255 Rule 6 advisory committee notes).

The concerns addressed by Rule 6(c) are not present here. In this case, Fields sought the appointment of his counsel, headquartered in Philadelphia, by assuring the Court that the attorneys' office "has received dedicated funding from the Administrative Office of the United States Courts (AO) to provide assistance in capital § 2255 litigation like this one, around the nation." Case no. 03-73-RAW, Doc. 278 at 2. Fields further explained, "Because [habeas counsel have] dedicated funding, their services will be provided at no cost to the Court (e.g. no expert fees, attorney fees or travel expenses). *Id*. at 3. The Court appointed present counsel based on their assertion that they would "not bill the Court for any fees or expenses related to their representation." Case no. 03-73-RAW, Doc. 280 at 1-2. Since their office's appointment, counsel have been freely substituted into the case, and Fields currently has three attorneys in Philadelphia. Unfettered by the cost controls under 18 U.S.C. § 3006A, counsel have engaged the services of two expert witnesses in California (George Woods and Daniel Martell), one expert witness in Georgia (Robert Tressell) and one expert witness in Kansas (Bradley Grinage). *See* Doc. 1 Exs. 2, 3, 9 and 23.

Having sought appointment in this matter despite East Coast offices, and having retained experts throughout the nation, counsel now attempt to wield Rule 6(c) as an apparent sword to deter the government from conducting needed discovery. There is no danger that Fields's counsel will be precluded from representing their client's interests if the government is granted leave to depose

witnesses in this case, as they have assured the Court that they enjoy "dedicated funding" that permits them to travel and hire experts. Cost shifting is inappropriate in view of counsel's financial independence, which ensures that Fields will receive representation at any government-conducted deposition. Given that the Court expressly relied on counsel's financial wherewithal in appointing them from out of state, it would be particularly unfair to shift to the Department of Justice expenses that arise from circumstances largely of defense counsel's making, such as the need to travel great distances to depose witnesses they retained to appear in this case.

## CONCLUSION

Based on the foregoing reasoning and authority, the government urges this Court to deny in part and grant in part Fields's discovery motion.

Dated: July 13, 2012

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ Christopher J. Wilson
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ Jeffrey B. Kahan
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 345
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF SERVICE

I, hereby certify that on 13th day of July, 2012, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David Osborne, Attorney for Petitioner
Renee Edelman, Attorney for Petitioner
Christi Charpentier, Attorney for Petitioner

/S/ Christopher J. Wilson
United States Attorney's Office