**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

EDWARD LEON FIELDS, JR.,    )
    )
    *Petitioner*,    )
    )
v.    )    **Case No. CV-10-00115-RAW**
    )    **Criminal Case No. CR-03-73-RAW**
UNITED STATES OF AMERICA    )
    )
    *Respondent.*    )

## REPLY TO OPPOSITION TO MOTION FOR DISCOVERY

**COMES NOW**, Respondent, United States of America, by and through undersigned counsel, and replies as follows to Petitioner Edward Leon Fields's Response to the Government's Motion for Discovery (Doc. 43):

## PROCEDURAL HISTORY

This Court permitted the parties to seek discovery about claims of ineffective assistance of trial counsel in Fields's Motion under 28 U.S.C. § 2255 (Doc. 1). The government moved for discovery. Doc. 39. Fields's counsel stipulated to some of the government's requests, but opposed others. Doc. 43. In replying to Fields's response, the government does not attempt to respond to all points raised by Petitioner. Most of the points raised are adequately answered by the arguments in the original motion. The absence of discussion about a point indicates it is sufficiently answered in the motion, not that the government concedes it.

## I. THE COURT SHOULD ORDER FIELDS TO DISCLOSE TRIAL COUNSEL'S FILES AND IDENTIFY ANY DOCUMENTS SUBJECT TO PRIVILEGE

The government seeks an order under Federal Rule of Civil Procedure 26, requiring Fields to disclose those portions of trial counsel's file that are relevant to his claims of ineffective assistance of counsel. Additionally, the government believes the discovery order should require

Fields to identify those portions of trial counsel's file that he believes are irrelevant. Fields, offers to disclose those documents he finds relevant to his claims, but argues that no more should be required of him. Doc. 43 at 5-8. Fields's position is inconsistent with this Court's order and would hamstring the government's ability to determine if it had received complete discovery.

The government's discovery motion recognizes – as did this Court – that the waiver of attorney-client privilege implied by Fields's claims of ineffective assistance of counsel is no broader than that necessary to ensure fairness. Doc 39 at 3 (citing Doc. 32 at 2 and *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009)). The Court's evidentiary hearing order reflected its intention to permit the "attorneys" to winnow the documents that fell within that waiver. Doc. 39 at 3 (citing Doc. 32 at 2). Fields asserts that only his attorneys should winnow the documents – that the Court should permit them to disclose only those documents they independently determine fall within Fields's privilege waiver. *Id.*

Fields's construction of the order ignores the fact that the Court envisioned itself deciding privilege disputes involving both parties: "The court is aware that in place of the task of poring over boxes of attorney notes, it is possibly substituting the task of resolving objections and discovery disputes . . . ." Doc. 32 at 2. No dispute can occur if the Court does not order Fields to disclose, in addition to the documents he believes fall within the privilege waiver, a description of the documents he believes fall outside of it. A mechanism for such descriptions is set forth in Federal Rule of Civil Procedure 26(b)(5), which provides for privilege logs. The rule will apply only to the extent that the Court requires Fields to disclose the entirety of his trial counsel's files. Thus, the government reasserts its request that the Court order Fields to provide trial counsel's complete files, recognizing that such an order will trigger his submission of a privilege log to identify documents that are subject to dispute.

## II. THE COURT SHOULD PERMIT THE GOVERNMENT TO DEPOSE THE PETITIONER, HIS EXPERTS AND HIS TRIAL COUNSEL

The government seeks leave to depose Fields, his expert witnesses and his trial counsel. Fields objects, arguing that the government has failed to establish good cause. Doc. 43 at 7-12. However, the government has a right to discovery of information helpful to it, and Fields has only a limited Fifth Amendment right in the context of this action, which he initiated.

The rules following § 2255 do not define "good cause," and the term's precise meaning is unclear. *See United States v. Allen*, case no. 4:07-cv-27, 2011 WL 4729819, *2 (Oct. 7, 2011). At least one court has recognized that the government is "entitled to discover any information tending to undermine" the allegations of a § 2255 movant. *Id*. (citing *Lott v. Bradshaw*, case no. 1:04–cv–822, 2005 WL 3741492 at *6 (N.D. Ohio Mar. 29, 2005)). The *Allen* court found good cause for depositions of trial counsel because their actions were "among the most relevant facts of the instant proceeding." *United States v. Allen*, 2011 WL 4729819 at *3. The *Allen* court likewise allowed depositions of a trial team paralegal and mitigation specialist because they were prime sources of information about the reasonableness of counsel's actions. *Id*. at *4.

In this case, Fields has made 11 claims of ineffectiveness, proffering the declarations of a trial attorney and a mitigation specialist, which attest to the alleged deficiencies of his lawyers. *See* Doc. 1 Exs. 1 &4 (declarations of Julia O'Connell and Glori Shettles). The government should have an opportunity to discover information tending to undermine Fields's factual claims by deposing attorneys Julia O'Connell, Isaiah Gant and Barry Derryberry, as well as mitigation specialist Glori Shettles. At a minimum, the depositions will permit the government to test the credibility of Fields's allegations that Ms. O'Connell unreasonably shouldered an overwhelming burden at trial. For instance, Messrs. Gant and Derryberry may dispute Ms. O'Connell's assertion that she was abandoned by her co-counsel and overburdened with the responsibilities of

this case. *See* Doc. 1 Ex. 1 at 16. Additionally, these depositions will assist the government in interpreting the trial counsel's files, and will potentially permit it to winnow Fields's claims, by developing evidence that undercuts his theories. Thus, apart from focusing the parties' understanding of the evidence, depositions will potentially lead to time-saving dispositive motions for summary judgment.

The government also seeks to depose the expert witnesses whom Fields has relied upon: George W. Woods, Bradley D. Grinage, M.D., Glori J. Shettles,[1] Michael M. Gelbort, Daniel A. Martell, and R. Robert Tressell. Expert witness depositions were permitted in *Allen* because the witnesses had reached conclusions different from those offered at trial, "based on a wide variety of sources in addition to their education and experience." 2011 WL 4729819 at *6. The same conditions exist in this case, as Fields's experts have relied on a variety of information, including an evaluation of the petitioner, to generate new opinions about his mental health and the adequacy of the mitigation presentation. Also, as in *Allen*, the experts' conclusions bear directly on Fields's assertions of deficient performance by trial counsel. *Id.* Depositions of these witnesses will not only facilitate a more efficient hearing, but may well assist the court and counsel in narrowing the litigable issues ahead of time.

Fields objects under the Fifth Amendment right against self-incrimination to the government's request to depose him. As the *Allen* court found, "the Fifth Amendment itself is not an absolute bar to" a deposition of a § 2255 litigant. 2011 WL 4729819 at *6 (citing, inter alia, *Bean v. Calderon*, 166 F.R.D. 452 (E.D. Cal. 1996); *Lott v. Bradshaw*, No. 1:04–cv–822, 2005 WL 3741492 (N.D. Ohio Mar. 29, 2005)). The Rules following § 2255 contemplate such

---

[1] Ms. Shettles has proffered a declaration that includes the recollections of an eyewitness and the opinions of an expert in mitigation investigation. *See* Doc. 1 Ex. 4. Likewise Dr. Woods also offers recollections of the trial attorneys' interactions. *See* Doc. 1 Ex. 2.

depositions.  Additionally, § 2255 proceedings are distinguishable from criminal trials for Fifth Amendment purposes:

> Habeas is different.  It is a remedy that seeks to overturn miscarriages of justice. There is no other proceeding . . . in which the truth of matters asserted is so important.  That search for the truth is impeded by assertion of privileges— especially when that search for the truth is initiated by the person who now desires to assert a self-incrimination privilege.

*Allen*, at *6 (quoting *Bean*, 166 F.R.D. at 455-56).  In a § 2255 proceeding "a blanket assertion of the Fifth Amendment is appropriate" only if the court concludes the witness could legitimately refuse to answer all relevant questions.  *Allen*, at *6 (citing *Detrich*, 2007 WL 177831, *2 (D. Ariz.2007)).

Fields cannot meet that standard in questioning about the adequacy of counsel.  *See Detrich*, 2007 WL 177831 at *2 (holding that information about mitigating evidence and communications with attorneys about that evidence is not inherently incriminating).  Thus, the Fifth Amendment is not an absolute bar to Fields's deposition.  The government recognizes that Fields may assert the Fifth Amendment privilege, as needed, during his deposition to protect his rights in a future criminal proceeding.  *See, e.g*., *Lott v. Bradshaw*, 2005 WL 3741492 at *10. But invocation of the privilege will permit the court to draw an adverse inference against him. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see, e.g., Bean*, 166 F.R.D. at 457.

Fields's statements and actions to his lawyers presumably informed the reasonableness of their actions and choices.  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  Thus, his interactions with his attorneys are highly probative of his myriad claims of ineffective assistance of counsel.  The government is entitled to discover petitioner's account of the relationship he had with trial counsel.  *See Bean v. Calderon*, 166 F.R.D at 457 (E.D.Cal.1996).  Thus, it has shown good cause to depose Fields.

**III. THE COURT SHOULD PERMIT THE GOVERNMENT TO CONDUCT A PSYCHIATRIC EVALUATION OF FIELDS, BUT NOT REQUIRE IT TO RECORD MENTAL HEALTH TESTING**

The government seeks leave to conduct a neuropsychological and a psychiatric evaluation of Fields. Fields concedes the existence of good cause for the former but not the latter. In both cases, he argues that the government should be required to permit recording or observation of its neuropsychiatric testing. Doc. 43 at 12-14. Fields, however, has proffered new psychiatric opinions, and cannot demonstrate a right to have his neuropsychological testing observed or recorded.

A.  The Government Should Have an Opportunity to Psychiatrically Evaluate Fields

In arguing against the government's proposed psychiatric evaluation, Fields observes that he has submitted the declarations of two psychiatrists (both of whom testified at trial), but asserts that neither expert has offered a new opinion about the petitioner's mental health. Fields did not take that position in his § 2255 motion, in which he liberally quoted the experts, explaining how newly disclosed prefrontal lobe deficits enhanced the psychiatrists' earlier findings. *See* Doc. 1 at 27-28. Given that the two experts have offered new opinions, based on new information, it stands to reason that the government should have an opportunity to test their evidence by psychiatrically evaluating Fields in view of the neuropsychological data developed by its expert.

Beyond the fact that Fields has offered new psychiatric opinion, the government cannot predict what findings its neuropsychological expert, Dr. Seward, might make during his evaluation of the petitioner. Should Dr. Seward develop evidence different from Fields's neuropsychologist, the government should have an opportunity to interpret that evidence through a psychiatrist, just as the petitioner has done. The government recognizes that Dr. Seward may simply contradict the defense's assertion of prefrontal lobe deficits and, by extension, the new

opinions of Fields's psychiatric experts. Under such circumstances, the government cannot presently foresee the need to conduct its own psychiatric evaluation. But the government cannot foretell the results of Dr. Seward's evaluation and avoided piecemeal requests for mental health evaluations by making a single request to counter Fields's experts with similarly qualified witnesses. The government's unified approach was in keeping with the letter and spirit of the Court's order to request discovery in a single motion. *See* Doc. 32 at 3.

B. Fields has no Right to the Observation or Recording of Neuropsychological Testing

The government's experts intend to record their interviews with Fields. However, the government opposes recordation or observation of neuropsychological testing. This position stems from studies that indicate that observation, by human or mechanical means, depresses performance on some neuropsychological exams. *See* Exs. A to G. Beyond the demonstrated effect of observation on the test subject, the tests "have not been standardized in the presence of involved third party observers, and thus, it is inappropriate to compare the examinee's results to the normative results from the standardization sample." Ex. H at 436; *see also* Exs. I to K (norms and guidance from professional organizations regarding observation of testing, including ethical bars to surreptitious recording). Thus, the government's resistance to observation of neuropsychological testing is driven by the need to ensure the validity of the results.

In response, Fields implies that the Supreme Court has endorsed the ABA view that all government mental health evaluations must be recorded. Doc. 43 at 13 n.8 (citing *Estelle v. Smith*, 451 U.S. 454, 462 (1981)). In *Estelle*, the Supreme Court held that a defendant had a Sixth Amendment right to notice and to consult with counsel before – but not during – a mental evaluation. *See Estelle*, 451 U.S. at 470–71 & n.15. Applying *Estelle*, the District of Iowa court found that, at most, a § 2255 movant was entitled to "reasonable access to her counsel before and

after an evaluation session, but neither her counsel nor any other representative [was] . . . permitted in the room during examinations." *Johnson v. United States*, case no. C 09-3064-MWB, 2010 U.S. Dist. LEXIS 25347, at *42 (N.D. Iowa Mar. 18, 2010); *see also Pizzuto v. Hardison*, case no. 05-CV-00516-S-BLW, 2010 WL 672754 (D. Idaho Feb. 20, 2010) (stating that movant has no constitutional right to recording or observation of a mental health exam).

Given that the reliability of the testing results may hinge upon the issue of observation, to which Fields has no demonstrable right, this Court should deny his request.

## IV.  THE GOVERNMENT IS WILLING TO DEFER ITS REQUESTS FOR SUBPOENAS DUCES TECUM

The government seeks leave to serve subpoenas duces tecum on trial counsel, for their files, to the extent Fields is unwilling or unable to produce them himself.   The government also seeks leave to serve subpoenas duces tecum on various third parties for documents related to Fields's personal history.   In his opposition, Fields states that he can and will produce trial counsel's file, which will include "school records, employment records, medical records, and inmate records, as well as an additional copy of Mr. Fields' Navy personnel records."   Fields further assures the Court that it is unaware of any sealed court records concerning him.   Doc. 43 at 15-16.   These assurances indicate that the government will receive the materials necessary for it to stand on equal footing with Fields, and to provide its experts with material necessary to conduct the relevant evaluations.   Accordingly, the government is willing to defer its subpoena requests until it has had an opportunity to inspect the materials disclosed by Fields.

## V.  THE COURT SHOULD GRANT THE GOVERNMENT'S REQUESTS FOR INTERROGATORIES

The government seeks leave to propound interrogatories intended to obtain a complete portrait of Fields's personal history.  The government made clear in its discovery motion that it

sought to rely on the interrogatories to ensure it possessed a complete personal history from Fields, because of his obvious value as a source of such information. Fields argues that the government's approach is speculative, because it has not shown that distant events might reflect on relevant aspects of the petitioner's life or that people he knew long ago might possess such information. Fields also argues that the government possesses a great deal of the information it would obtain through responses to its proposed interrogatories. Doc. 43 at 16-19. While the interrogatory responses would undoubtedly yield information already known to the government, they will ensure that it has a complete portrait of the petitioner, something necessary for it to stand on equal footing with him in this litigation.

Fields has presented this Court with expert opinions based, in part, on distant events and tenuous relationships. His current mental health expert, Daniel Martell, reviewed the defendant's birth certificate, baptism certificate, St. Francis de Sales school records, Ranchlands High School records and yearbook photos, and Southwest Virginia Community College records. Doc. 1 Ex. 9 at 3-4. The neuropsychologist he retained at trial observed that Fields had suffered "from a dose of the clap," been in two motor vehicle accidents at age 16, had had a vasectomy, and had a sister who owned fast food restaurants. Doc. 1 Ex. 6. Additionally, Fields has specifically relied on events in his distant past as a basis for a showing of ineffective assistance of counsel. *See, e.g.* Doc. 1 at 85-86.

The Court should not permit Fields to simultaneously rely on distant, and seemingly unrelated, events as a basis for relief while denying the government his unique knowledge of them. *See generally Allen*, 2011 WL 4729819 at *2 (noting the government is "entitled to discover any information tending to undermine" the allegations of a § 2255 movant).

**CONCLUSION**

Based on the foregoing reasoning and authority, the government urges this court to grant the proposed discovery order.

Dated: August 13, 2012

<div style="margin-left:50%">

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ Christopher J. Wilson
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ Jeffrey B. Kahan
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 345
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I, hereby certify that on August 13, 2012, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David Osborne, Attorney for Petitioner
Renee Edelman, Attorney for Petitioner
Cristi Charpentier, Attorney for Petitioner

<div style="margin-left:50%">

/S/ Christopher J. Wilson
United States Attorney's Office

</div>