| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIV-10-115-RAW |
| | : | |
| Respondent, | : | CAPITAL 2255 PROCEEDINGS |
| | : | |
| -v- | : | HONORABLE RONALD A. WHITE |
| | : | |
| EDWARD LEON FIELDS, JR., | : | |
| | : | |
| Petitioner. | : | |
| | : | |
| | : | |

**PETITIONER'S RESPONSE TO GOVERNMENT'S
MOTION FOR IN CAMERA REVIEW OF DOCUMENTS**

Petitioner Edward Leon Fields, Jr., hereby responds to the government's Motion for In Camera Review of Allegedly Privileged Documents ("Motion") (Doc. 71).

Pursuant to this Court's discovery order (Doc. 50), Mr. Fields' counsel produced to the government thousands of pages of materials from trial counsel's file, withholding only 274 documents based on attorney-client privilege, the attorney work product doctrine or irrelevance.[1] Many of the documents produced by Mr. Fields at one time had been protected by the attorney-client privilege or attorney work product doctrine, but those protections were waived pursuant to United States v. Pinson, 584 F.3d 972 (10th Cir. 2009), when Mr. Fields raised in his habeas petition specific claims of trial counsel ineffectiveness.

Each of the 274 documents withheld from Mr. Fields' production is described in a log that has been provided to the government. Contrary to the government's characterization of that log,

---

[1]None of the documents withheld only on ground of irrelevance are the subject of the Motion.

for each document Mr. Fields' counsel provided a description, a summary of the contents, and, with regard to documents identified as privileged, an assertion that the document is not relevant to Mr. Fields' claims (and therefore under Pinson the privilege has not been waived).

The government now asks this Court to conduct an *in camera* review of 79 of the 274 documents withheld by Mr. Fields' counsel. As described in the log, these documents relate to a wide range of subject matters – for example, victim outreach, grand jury abuse and jury selection – which plainly are not implicated in any of Mr. Fields' claims for habeas corpus relief. While the government expects this Court to expend judicial resources by engaging in a time-consuming *in camera* review, it has not "clearly articulate[d] waiver under Pinson or some other basis for discovery" pursuant to the Court's discovery order. Order at 10 (Doc. 50). Instead, the government seeks *in camera* review based on nothing more than its *speculation* that these documents may be discoverable – disregarding the United States Supreme Court's warning that *in camera* proceedings should not be used by "opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." United States v. Zolin, 491 U.S. 554, 571 (1989). For this reason, the expenditure of judicial resources to conduct an *in camera* review of documents which the government merely speculates may be discoverable is not warranted at this time.

For the reasons set forth below, the Motion should be denied. Alternatively, the Motion should be denied without prejudice or held in abeyance and the government directed, with regard to each document for which *in camera* review is sought, to articulate a clear rationale for its belief that the document may be discoverable. Mr. Fields' counsel should then be provided an opportunity, in light of such articulated rationale, to supplement its production to the government.

Then, and only then, should the Court consider the government's request to conduct an *in camera* review of any remaining documents.

**ARGUMENT**

Mr. Fields agrees with the government that the parties have obeyed this Court's admonition for them to cooperate in resolving this discovery dispute. As the government observes, the parties have indeed "engaged in a productive dialogue that winnowed the documents in issue." Motion at 5. With regard to the 79 documents that remain in dispute, however, the government has never articulated a specific explanation for why it believes the subject matters of those documents are relevant to any of Mr. Fields' claims and therefore the documents are discoverable under Pinson or some other theory.

As an initial matter, Mr. Fields notes that, as this Court itself has observed, civil discovery rules do not automatically apply to these federal habeas proceedings. Doc. 50 at 1. "At the very least, it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions which, even in ordinary civil litigation, were 'one of the most significant innovations' of the new rules." Harris v. Nelson, 394 U.S. 286, 295 (1969) (citation omitted); see also Bracy v. Gramley, 520 U.S. 899 (1997). For this reason, Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that judges "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure ...."

Assuming that this Court intends for the Federal Rules of Civil Procedure's discovery rules to apply to this particular dispute, the government is correct in noting that Mr. Fields bears the burden of asserting the privilege with regard to the documents in question. Motion at 3; see also Fed. R. Civ. P. 26(b)(5)(A). The Court ordered Mr. Fields to prepare a privilege log pursuant

3

to Rule 26(b)(5)(A), which provides that a party asserting the privilege must (1) expressly make the claim, and (2) "describe the nature of the documents .... without revealing information itself privilege or protected ...."   The government concedes that a party meets this burden by identifying a document's "date of creation, author, title or caption, address and each recipient, and general nature or purpose of creation."  Motion at 3 (citing <u>Zander v. Craig Hosp.</u>, 743 F. Supp. 2d 1225, 1232 (D. Colo. 2010)).

Notwithstanding its own recognition that the withholding party need only identify a document's "general nature," the government objects to what it calls the "summary nature" of Mr. Fields' log.  The government fails to acknowledge, however, that the description of documents identified in a privilege log *must* be summary in nature, lest the party asserting the privilege waive protection by disclosure of the documents' contents.  <u>See</u>, <u>e.g.</u>, <u>St. Johns Ins. Co. v. Nautilus Ins. Co.</u>, 2008 WL 1897572, at \*2 (M.D. Fla. Apr. 28, 2008) (privilege log should contain "a brief description or summary of the document sufficient to understand its context without revealing the contents"); <u>In re Denture Cream Products Liability Litigation</u>, 2012 WL 5057844, at \*10 (S.D. Fla. Oct. 18, 2012) ("While the Court understands the Plaintiffs' desire to have additional information regarding the contents of the documents withheld by the Defendants, *requiring a fully detailed description of the withheld document would, in essence, eviscerate the purpose of the privilege rule.*") (emphasis added); <u>see</u> <u>also</u> Fed. R. Civ. P. 26(b)(5)(A).

Mr. Fields' log complies with Rule 26(b)(5)(A) and <u>Zander</u> – as well as this Court's discovery order – by identifying, with regard to each withheld document, the date of the document, the type of document (including the author and recipient when known), the number of

pages, the basis for withholding the document, and a description of the document's subject matter. Thus, Mr. Fields has met his burden in asserting the privileged nature of the documents in dispute.

Under the Rules of Civil Procedure, once a party satisfies his initial burden of asserting the privileged nature of the documents at issue, the burden shifts to the opposing party to demonstrate a "substantial need" for those documents and to show that without the document the party will suffer "undue hardship ...." Fed. R. Civ. P. 26(b)(3)(A)(ii); see also Murphy v. Kmart Corp., 259 F.R.D. 421, 428 (D. S.D. 2009).

The government does not attempt to make such a showing in this case. Instead, it speculates that Mr. Fields may have waived any privilege with respect to certain documents by asserting claims of ineffectiveness and asks this Court to undertake an *in camera* review to determine whether the asserted privilege has been waived. In support of this request, the government offers only the general assertions that: (1) "correspondence between members of the defense team should be scrutinized for its amenability to a claim of privilege, especially given Fields's claims of dysfunction among his trial lawyers"; and (2) "drafts and notes that potentially reflect on counsel's tactics and strategies are of critical importance in determining whether the attorneys' actions at trial amounted to ineffective assistance." Motion at 5-6.

This speculation as to why the disputed documents may not be protected from disclosure belies the government's misunderstanding of applicable law. The government appears to believe that Mr. Fields' claims of ineffectiveness work as a blanket waiver of privilege – and thus, for instance, "drafts and notes that potentially reflect on counsel's tactics and strategies" are discoverable without regard to what those drafts and notes may pertain to. As Mr. Fields has noted in previous pleadings, however, Pinson instructs that a party impliedly waives attorney-

client or attorney work product privilege *only* "with respect to communications with his attorney necessary to prove or disprove his claim ...." 584 F.3d at 978. Thus, a party's allegation of ineffectiveness does not work a blanket waiver of privilege; the waiver applies only to documents needed to prove or rebut specific claims for relief.

As indicated by the descriptions included in the log, the documents in dispute are not "necessary to prove or disprove" Mr. Fields' specific claims for relief based on the ineffectiveness of trial counsel. For instance, of the 79 documents for which the government seeks *in camera* review, seven – nearly ten percent – are described in Mr. Fields' log as relating to "victim outreach." Yet Mr. Fields' habeas petition contains *no claims whatsoever* relating to victim outreach. Six documents relate to "juror questionnaires," "death qualification of jurors," or "jury selection procedures." Yet Mr. Fields' habeas petition contains *no claims whatsoever* relating to jury selection. Two documents are described as relating to "grand jury abuse." Yet Mr. Fields' habeas petition contains *no claims whatsoever* relating to grand jury abuse.[2] The government has articulated no theory under which documents discussing victim outreach, jury selection or grand jury abuse are "necessary to prove or disprove" Mr. Fields' particular habeas claims. On their face, many others documents that are the subject of the government's motion for *in camera* review – a calendar entry for the due date of jury instructions, a fax cover sheet and transmission confirmation, emails regarding trial notebook preparations, contact information, and access to a defender internet resource (capdefnet.org), to name a few – also have no relationship to any of Mr. Fields' claims.

---

[2]Indeed, there were no grand jury proceedings at all in Mr. Fields' case.

The government's mere speculation that the disputed documents may be discoverable is not sufficient to warrant *in camera* review. In Zolin, the United States Supreme Court warned that a "blanket rule allowing *in camera* review as a tool for determining the applicability of [an alleged waiver of the attorney-client privilege] ... would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." 491 U.S. at 571 (1989). The Court also expressed "reason to be concerned about the possible due process implications of routine use of *in camera* proceedings." Id. In addition, the Court noted that it "cannot ignore the burdens *in camera* review places upon the district courts, which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties." Id. As the Court explained, "[t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." Id.

Given these admonitions by the Supreme Court, this Court should not undertake a time-consuming *in camera* review of dozens of documents for which attorney-client privilege or work product protection has been asserted when the government has failed to make the threshold effort of articulating reasons for why Pinson may apply to each document – i.e., why each document relates to a *specific* claim of ineffectiveness in Mr. Fields' habeas petition. To do so would be a waste of judicial resources and, in this capital case where Mr. Fields' life hangs in the balance, would improperly intrude on the attorney-client privilege and attorney work product doctrine.

In the spirit of this Court's urging that the parties cooperate in resolving discovery disputes before resorting to judicial intervention, if the government articulates a rationale for why each disputed document is necessary to prove or disprove one of Mr. Fields' specific ineffectiveness claims, Mr. Fields' counsel will reconsider whether additional withheld documents should be

7

produced pursuant to <u>Pinson</u>.  This likely will narrow the number of documents in dispute.  If any documents remain in dispute after the government articulates its rationale for asserting waiver of the privilege, the Court may consider whether to conduct an *in camera* review of those documents.  But *in camera* review by this Court – if it is appropriate at all – should be the last resort, not the first resort.

**CONCLUSION**

For all of the foregoing reasons, this Court should deny the Motion.  Alternatively, the Court should either deny the Motion without prejudice or hold it in abeyance and instruct the government to clearly articulate for Mr. Fields' counsel why each disputed document may be subject to waiver under <u>Pinson</u>.  After permitting Mr. Fields' counsel a reasonable time to respond (and potentially narrow the number of disputed documents), the Court may then consider whether *in camera* review of any remaining documents in dispute is warranted.

Respectfully submitted,

/s/ David Osborne
Cristi Charpentier
David Osborne
Renee Edelman
Capital Habeas Corpus Unit
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 928-0520
FAX: (215) 928-0826

Counsel for Petitioner Edward Fields, Jr.

**CERTIFICATE OF SERVICE**

I, David Osborne, hereby certify that on this 20th day of November, 2013, the foregoing document was electronically filed and is available for viewing and downloading through the ECF system.

/s/ David Osborne
David Osborne