**Declaration of Steven S. Nolder, Esq.**
**Pursuant to 28 U.S.C. § 1746**

I, Steven S. Nolder, Esq., hereby verify and declare as follows:

1.      I am currently a name partner with The Scott and Nolder Law Firm, a criminal defense law firm in Columbus, Ohio.  Previously, I was the Federal Defender for the Office of the Federal Public Defender for the Southern District of Ohio in Columbus from November 2006 until I resigned that position in June 2013 to form The Scott and Nolder Law Firm.  I joined the Federal Defender Office in June 1995 and worked as an assistant federal defender for 10 years prior to being appointed Federal Defender by the United States Court of Appeals for the Sixth Circuit.  Before joining the Federal Defender Office, I was a solo practitioner in Columbus for eight years, focusing on criminal defense.

2.      Over the past 25 years, I have represented more than 1,200 people in the United States District Court for the Southern District of Ohio, tried 30 jury trials in federal court, personally written and filed over 50 appellate briefs in the United States Court of Appeals for the Sixth Circuit, and argued more than 25 of those appeals.  I authored the Defender Office's quarterly Federal Criminal Justice Newsletter from 1995 until 2004.  I teach the Federal Rules of Criminal Procedure component for the district's bar class that all new lawyers must take in order to be admitted to the Southern District of Ohio Bar.  I have spoken at continuing legal education presentations sponsored by the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Southern District of Ohio, the Ohio State Bar Association, the Ohio Association of Criminal Defense Lawyers, the Central Ohio Association of Criminal Defense Lawyers, the United States Attorney's Office, and the Federal Bar Association for the Northern District of New York.

3.     I was recently contacted by Edward Fields's post-conviction counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania and asked about my experiences in the John Richard Mayhew federal capital murder prosecution in the Southern District of Ohio.  Mr. Fields's current counsel specifically contacted me because my co-counsel in the Mayhew case – Isaiah "Skip" Gant from the National Resource Counsel Project – was also counsel in the Fields case.

4.     After Mr. Mayhew was indicted in October 2003, I was appointed to represent him along with two other experienced criminal defense lawyers.  We requested assistance from the Resource Counsel Project because while we had tried a number of federal criminal cases, we had never tried a federal capital case.  After I consulted with the Project, which I understood to provide litigation support as well as direct representation, we agreed that having a Project lawyer assist with direct representation, *i.e.*, learned counsel, would be best for Mr. Mayhew's case.  Mr. Gant then entered his appearance as co-counsel in 2004.

5.     My understanding was that Mr. Gant was an experienced federal capital litigator who would help me and my other co-counsel with critical work in the Mayhew case.  Unfortunately, I found that Mr. Gant's reputation preceded him.

6.     Mr. Gant rarely came to Columbus to prepare for trial, which began August 1, 2005.  When he was in town, Mr. Gant's focus was not on readying the case for trial but rather on peripheral matters such as spending long hours enjoying local entertainment and dining options, and making sure he looked well-groomed, going so far as to repeatedly purchase fresh boutonnieres for his suit jacket lapel.  Unlike myself and other co-counsel, Mr. Gant simply did not want to work on Mr. Mayhew's trial preparation.

2

7.    Before the trial began, Julia O'Connell, who was then an Assistant Federal Defender in the Northern and Eastern Districts of Oklahoma, contacted me to discuss Mr. Gant's work on the Mayhew case.  She indicated that Mr. Gant had been her co-counsel in the recently completed federal capital trial of Edward Fields.  This conversation with Ms. O'Connell was the first time I learned that Mr. Gant was working on another federal capital case at the same time as Mr. Mayhew's case.  Mr. Gant never mentioned anything about the Fields case to me at any point.

8.    Ms. O'Connell explained to me the problems she had with Mr. Gant's work on the Fields case, including his failure to prepare witnesses for testimony, his inability to advocate effectively in court and his preoccupation with out-of-court leisure activities at the expense of trial preparation.  I experienced many of the same problems when working with Mr. Gant on the Mayhew case.

9.    When it became clear that Mr. Gant was not going to provide the Mayhew team with any assistance whatsoever, my co-counsel and I stopped expecting anything from Mr. Gant on the case.

10.    I do not recall any substantive assistance that Mr. Gant provided.  Once trial started, Mr. Gant's primary work was to scribble notes in a leather-bound book while staring at jurors.  Mr. Gant also made a pro forma argument to the jury in the very brief second stage death eligibility phase of the trifurcated trial.

11.    Without any assistance from Mr. Gant, I and my other co-counsel handled the entire guilt phase and substantive penalty phase of Mr. Mayhew's trial, including researching, filing and litigating motions; working with experts; and questioning witnesses at trial.  Fortunately, Mr. Mayhew received a life sentence from the jury.

3

12.    After trial, I was contacted by representatives of the Administrative Office of the United States Courts ("AO"), which I understood to be the administrator of the National Resource Counsel Project that included Mr. Gant. The representatives indicated that they were reviewing Mr. Gant's performance in the Fields case and asked me to comment on my experiences with Mr. Gant in the Mayhew case. I shared concerns similar to those expressed herein with the AO representatives.

I hereby certify that the facts set forth above are true and correct to the best of my personal knowledge, information and belief, subject to the penalty of perjury, pursuant to 28 U.S.C. § 1746.

Steven S. Nolder

Dated: September 24th, 2015
Columbus, Ohio.