**34**

**Declaration of Michael Mayer Gelbort, Ph.D.**
**Pursuant to 28 U.S.C. § 1746**

I, Michael Mayer Gelbort, Ph.D., hereby verify and declare as follows:

1.      I am a licensed clinical psychologist, specializing in neuropsychology. I received my Ph.D. in Clinical Psychology with a minor in Applied Human Neuropsychology at Texas Tech University in 1984. I completed a post-doctoral fellowship in neuropsychology and medical psychology at the Rehabilitation Institute in Chicago. Subsequently, I served as the Chief Psychologist, then Director of Psychology at the Institute for Rehabilitation and Research in Houston. I was also on staff at Baylor College of Medicine and engaged in private practice, concentrating on psychological and neuropsychological evaluation. Following my time in Texas, I returned to Chicago to pursue private practice with privileges at several hospitals. My present practice in the Chicago area concentrates on psychological and neuropsychological diagnosis and evaluation, and consultation. I was previously licensed to practice in three states and am currently licensed in Illinois. I have been qualified as an expert in neuropsychology in courts in at least eight states as well as various federal courts. I have been retained to assist capital defense teams in dozens of cases in state and federal court.

2.      I was recently contacted by Edward Fields's post-conviction counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania and asked about my trial work in Mr. Fields's capital prosecution, *United States v. Edward Leon Fields, Jr.*, in the United States District Court for the Eastern District of Oklahoma. I offer all opinions expressed herein based on my expertise and to a reasonable degree of professional and neuropsychological certainty.

3.      In July 2004, Julia O'Connell, Mr. Fields's trial defense counsel, retained me as a mental health expert to conduct a forensic neuropsychological evaluation of Mr. Fields. I

understand that Isaiah "Skip" Gant was also a lawyer on Mr. Fields's case but I do not recall any substantive conversations or contact with Mr. Gant.

4.      I met with Mr. Fields on August 11, 2004 at the Muskogee County Jail. I conducted a clinical interview and administered a battery of neuropsychological tests, including the Wechsler Adult Intelligence Scale-III, the majority of the Wechsler Memory Scale-III, the Wide Range Achievement Test-III, the Halstead Category Test, the Trail Making Test, the Lateral Dominance Exam, the Grip Strength Test, a partial Sensory Perceptual Examination, an Aphasia Screening, items from the Luria Nebraska Neuropsychological Battery, and a diagnostic interview with mental status testing.

5.      The data I obtained accurately reflected Mr. Fields's neuropsychological functioning in the areas assessed at the time of testing and did not indicate malingering. For example, Mr. Fields's results on the Digit Span Subtest of the WAIS-III, which research has shown to be a reliable indicator of effort, satisfied the norms for adequate effort. This good effort was also observed behaviorally, as Mr. Fields put forth tremendous effort in attempting all the tasks placed before him. Further, the government's trial neuropsychologist, Dr. J. Randall Price, administered multiple tests to Mr. Fields specifically designed to measure malingering, all of which indicated that he was compliant with the testing and put forth a good effort.

6.      My testing of Mr. Fields revealed neuropsychological deficits in a number of areas. As a result of my evaluation and testing, I concluded to a reasonable degree of neuropsychological certainty that Mr. Fields suffers from brain dysfunction and cognitive impairments. Mr. Fields's neuropsychological profile indicates that his brain dysfunction is focused in the frontal lobes. This is most prominently evidenced by his impaired performance on the Halstead Category Test. This test is one of the most sensitive to both whole-brain and frontal

2

lobe impairment. My conclusion that Mr. Fields has frontal lobe impairment is also supported by his poor performance on Trails B, which is regarded as being sensitive to frontal lobe deficits. Likewise, Mr. Fields's performance on the WAIS-III is consistent with frontal lobe impairment. Mr. Fields performed below average on the Arithmetic, Digit Symbol-Coding, and Digit Span Subtests, among others—all of which place a great demand on an examinee's frontal lobe abilities, and require concentration and freedom from distractibility.

7.    Frontal lobe damage is well-known to adversely impact executive function, which acts in part as the "brakes" for a person's actions. Impairments in frontal lobe executive functions are correlated with impulsivity, disinhibition, poor reasoning, acting in an eccentric manner, affected judgment, and impaired ability to gauge the consequences of one's actions, all of which are present in Mr. Fields's case. Mr. Fields's neurocognitive impairments affect his ability to adequately judge and comprehend a given situation, to reflect and reason before making decisions, and to fully recognize the consequences of those decisions. Stressful situations exacerbate Mr. Fields's inability to control his actions and solve problems in a reasonable manner.

8.    Neuropsychological testing demonstrated these problems with Mr. Fields's executive function. Measures of his higher cognitive functions showed impulsivity and disinhibition to be present, especially when he was encouraged to work quickly or under more taxing demands. Furthermore, slowed information processing speeds were seen on more complex or "speeded" tasks, whereas Mr. Fields performed better where work was untimed or when he could take his time to perform the task. In addition, measures of higher cognitive abilities showed that Mr. Fields's problem solving and reasoning skills are in the mildly impaired range. His areas of limitation or suppression occur in higher cognitive activities, effective and

efficient learning and memory, and abstract reasoning or information processing. These deficits appear to be long-standing and impact his ability to think in a logical, adaptive and goal-directed manner; for example, Mr. Fields's repeated identical errors on the Halstead Category Test show an inability to relinquish incorrect logic and learn from prior mistakes. These deficits also affect his social functioning.

9.      Particularly, the results from Mr. Fields's neuropsychological testing indicate cognitive anomalies and do not conform to patterns expected or seen in normal individuals. Instead, Mr. Fields's results display a pattern often found in individuals with frontal lobe or non-dominant hemisphere neurocognitive dysfunction, as I wrote in my initial report that I provided to Ms. O'Connell.

10.      I relayed my preliminary finding of brain dysfunction focused on the frontal lobe to Ms. O'Connell on August 24, 2004. Between the date of my evaluation and the start of trial, I heard from counsel several times. I provided a preliminary report to Ms. O'Connell on November 10, 2004. I spoke with trial counsel on March 4, 2005, and then provided an updated report to Ms. O'Connell on March 8, 2005. In June 2005, trial counsel asked if I could do additional testing; I asked counsel to clarify exactly what kind of additional testing they wanted me to conduct, as I did not need any additional testing to reach my opinion of Mr. Fields's brain impairments to a reasonable degree of neuropsychological certainty. Counsel said they would have to think about this issue and would get back to me but never did. Had trial counsel followed up and asked me to conduct additional neuropsychological testing, I would have told them it was unnecessary and would have instead suggested that a qualified expert conduct medical testing such as PET scan or EEG to analyze Mr. Fields's brain from a physical standpoint. On June 19, 2005, Ms. O'Connell requested my final report, which I provided to her.

4

11. On June 23, 2005, Ms. O'Connell asked me for my rate for testifying, which I provided to her on June 25, 2005, saying "let me know so that we can get it on the books," as my schedule fills up rather quickly. On July 1, 2005, Ms. O'Connell informed me that she would need me to testify at trial and that the defense case could begin as early as July 18, 2005. To cover my costs for testifying, Ms. O'Connell e-mailed me a new contract on July 3, 2005, telling me she expected to need me sometime around July 18, but was not yet positive about the exact date. On July 6, 2005, I informed Ms. O'Connell that the contract attached to the e-mail would not open and asked her to fax a copy to my office. On July 11, 2005, I sent a reminder e-mail to Ms. O'Connell, letting her know that I could testify on July 18 or July 19, but that I was leaving the country on the evening of July 20. I have no recollection or record of any contact with Ms. O'Connell or any other trial counsel representing Mr. Fields after July 11, 2005.

12. Because I was available to testify at Mr. Fields's trial on either July 18 or 19, 2005, and because my limited communications with trial counsel led me to believe that I would be testifying, I was very surprised that the defense did not call me as a witness for Mr. Fields. If I had testified at Mr. Fields's trial, I would have told the jury that my neuropsychological evaluation showed that Mr. Fields has brain dysfunction focused in the frontal lobe. I could have explained that concept and the resulting impairments to the sentencing jury consistent with what I have expressed in this declaration. To this day, I do not know why I was not called upon to testify.

13. Mr. Fields's current post-conviction lawyers provided me with records, materials, and information, including the following, all of which I understand were available at the time of trial and none of which were provided to me: (1) Criminal Complaint and Affidavit of Probable Cause, *United States v. Edward Leon Fields* (July 10, 2003); (2) competency hearing testimony

5

of Curtis Todd Grundy, Ph.D, *United States v. Edward Leon Fields* (July 28, 2003); (3) trial testimony of Jack Randall Price, Ph.D., *United States v. Edward Leon Fields* (July 20-21, 2005); (4) trial testimony of Jeffrey Raymond Mitchell, M.D., *United States v. Edward Leon Fields* (July 21, 2005); (5) handwritten notes/ raw data regarding Edward Fields from Curtis Todd Grundy, Ph.D.; (6) Forensic Mental Health Evaluation of Edward Fields by Bradley D. Grinage, M.D. (June 24, 2005); (7) Neuropsychological Examination of Edward Fields by George Woods, M.D. (June 25, 2005); (8) handwritten notes/raw data regarding Edward Fields from George Woods, M.D.; (9) handwritten notes/raw data regarding Edward Fields from Jack Randall Price, Ph.D.; (10) Mental Health Evaluation of Edward Fields by Jeffrey Raymond Mitchell, M.D. (June 30, 2005); (11) Progress Notes regarding Edward Fields from Mike Kemp, M.D.; (12) Declaration of Joyce Louise Bumgardner, M.D.; (13) Declaration of Larry Trombka, M.D.; (14) Declaration of R.L. Winters, M.D.; (15) Declaration of Dean Anderson; (16) FBI Record of Interview of Edward Fields (July 18, 2003); (17) FBI Record of telephone call from Edward Fields to Michelle Tipton (July 18, 2003); (18) Letter from United States Attorney, Eastern District of Oklahoma to Bureau of Prisons regarding *United States v. Edward Leon Fields* (June 8, 2005); (19) Preliminary Assessment of Edward Fields by Glori Shettles (September 11, 2003); (20) mitigation timeline by Glori Shettles (September 5, 2003); and (21) Change of Plea Hearing, *United States v. Edward Leon Fields* (July 30, 2005). Current counsel also provided me with some relevant email exchanges between myself and trial counsel to help refresh my recollection with specific dates where needed.

14. These new materials reinforce the opinion that I offered to Ms. O'Connell before trial – and to which I could have testified at trial – regarding Mr. Fields's brain dysfunction and neurological impairment, and which I have detailed in this declaration.

6

15.    Additionally, these new materials, had they been provided and had I been asked by trial counsel to review them, could have helped me assist trial counsel with cross-examining Dr. Price and/or testifying in rebuttal of his opinion. On June 21, 2005, Ms. O'Connell forwarded me excerpts from Dr. Price's preliminary report. She sent me the full preliminary report on June 22. On June 23, 2005, I reported to counsel that Dr. Price's findings – as reflected in his report – supported my conclusions with respect to frontal lobe impairments, although his conclusions, in my view, understate the impact that the impairments had on Mr. Fields's behavior. On July 1, 2005, Ms. O'Connell sent me Dr. Price's final report, but neither she nor anyone from Mr. Fields's defense team ever provided me with the raw data, including audio recordings, from Dr. Price's testing and evaluation of Mr. Fields. On July 3, 2005, Ms. O'Connell asked me to help her prepare for Dr. Price's cross-examination. Had I been given Dr. Price's raw data, I would have been able to provide critical information about the unreliability of Dr. Price's testing and opinion.

16.    Now that I have reviewed Dr. Price's raw data, I realize that he made significant errors in his testing. For instance, he repeatedly made scoring errors on the WAIS-III that make Mr. Fields seem less impaired than he actually is. These errors call into question the validity of Dr. Price's testing results and the competency of his trial testimony, which I have reviewed. I could have detailed these mistakes in rebuttal, had I been called upon to do so, and/or assisted counsel in preparing for cross-examination.

17.    Additionally, post-conviction counsel have provided me with the September 15, 2015 declaration of Dr. Alan S. Kaufman. I have reviewed Dr. Kaufman's declaration and agree with him that Dr. Price's neglect in administration of the WAIS-III raises significant concerns

7

about the reliability of his expert opinion.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th day of September, 2015, at Joliet , Illinois.

Michael Mayer Gelbort, Ph. D.

## *Michael M. Gelbort, Ph.D.*

## *Clinical Psychologist*

2714 Caton Farm Road
Joliet, Illinois
60435
Phone:  815.230.2262
Fax:    815.230.2444

### Education

Post-Doctoral Fellowship, Neuropsychology and Medical Psychology.
    Rehabilitation Institute of Chicago, 1984-1985.

Ph.D., Clinical Psychology (APA approved program), August, 1984.
    Department of Psychology, Texas Tech University, Lubbock, Texas.
    Minor:  Applied Human Neuropsychology.

B.A., Double Major:  Psychology and General Sciences, with Honors.
    May, 1977.  Grinnell College, Grinnell, Iowa.

### Clinical Experience

CLINICAL AND NEUROPSYCHOLOGIST, PRIVATE PRACTICE

Chicago Area, Illinois.  1989-present.

Neuropsychological and psychological evaluations of inpatients and outpatients.  Clinical consultations, evaluation, and intervention.  Services provided in physical rehabilitation and psychiatric inpatient units, as well as in the office.

CONSULTANT

Cornerstone Services, 1994-present.

Provide psychological evaluations for residents from this facility which services 250 mentally retarded individuals.

CHIEF PSYCHOLOGIST DIRECTOR, PSYCHOLOGICAL SERVICES

The Institute for Rehabilitation and Research. 1985-1989.
Responsible for provision of psychological services as required by patients in the Head Injury and stroke programs in particular, and serving persons with

spinal cord injuries, multiple sclerosis, amputation, pain, and other disabled patients in general in a major regional dedication rehabilitation hospital. Duties included both neuropsychological and personality assessment, treatment planning, treatment, and consultation to the Interdisciplinary Treatment Team. Patients served included both inpatients and outpatients in each phase of rehabilitation. The position included hospital administrative duties including directing the Psychology Department, program development, and research involvement. The department had three Ph.D. level psychologists, two psychometrics, and support personnel.

**CLINICAL ASSISTANT PROFESSOR**

Baylor College of Medicine, Department of Rehabilitation, 1985-1989.

**PRIVATE PRACTICE**

Houston, Texas. 1986-1989.

Evaluation and treatment of outpatients and inpatients in a private practice setting. Patients most typically suffered from neurotic or characterological difficulties or had a physical disability. The practice also involved consultation to rehabilitation units in acute care hospitals, as well as disability evaluations for a variety of referral sources.

**POST-DOCTORAL FELLOW IN MEDICAL PSYCHOLOGY**

Rehabilitation Institute of Chicago, 1984-1985.

Provision of psychotherapy and counseling to spinal cord injured, head injured, and amputee patients and their families in both inpatient and outpatient settings. Member of an Interdisciplinary Team charged with coordination and provision of rehabilitative treatment. Responsible for ordering and interpreting Neuropsychological assessment batteries.

**FACULTY APPOINTMENT: LECTURER STATUS**

Northwestern University Medical School; Department of Psychiatry and Behavioral Sciences, 1984-1985.

Lectured and performed supervision of doctoral students in Northwestern University's Medical School program in Clinical Psychology. Lectured Northwestern University medical students. Member

|  | of Admissions Committee group responsible for rating application materials of those applying for admission to the Doctoral Program in Clinical Psychology. |
|---|---|
| NEUROPSYCHOLOGICAL CONSULTANT | From the Department of Psychology to the Department of Medical-Surgical Neurology, Texas Tech University School or Medicine, 1982-1984. |
|  | Administration and interpretation of neuropsychological screening and complete batteries as referred by two neurosurgeons and two neurologists in a major regional teaching hospital. Techniques included both Halstead-Reitan and Lurian batteries, as well as an extensive number of other assessment measures.   Patients were both inpatients and outpatients and ranged from one to ninety years of age.  The test batteries were idiographically designed to answer questions regarding range and extent of dysfunction and rehabilitation placement. |
| NEUROPSYCHOLOGICAL CONSULTANT | Texas Rehabilitation Commission, Lubbock, Texas, 1983-1984. |
|  | Administration and interpretation of approximately forty-five Luria-Nebraska Neuropsychological Batteries and additional academic achievement tests to college age students being evaluated for the diagnosis of learning disability. |
| PSYCHOLOGICAL INTERN | Milwaukee County Mental Health Complex (APA approved program), Milwaukee, Wisconsin, 1981-1982. |
|  | Administration and interpretation of psychological test batteries on a wide spectrum patient population; provision of inpatient and outpatient psychotherapy to adults and children; performance of intake interviews and assessments; attendance at and presentation of seminars. |
| PSYCHOLOGIST | Developmental Disabilities Center, Texas Tech University, Lubbock, Texas, 1980-1981. |

|  | Assessment of developmental delays and psychological/neuropsychological functioning of newborns to three-year-olds; input to Multidisciplinary Team; Clinic Administrator and administrator/interpretator of psychological assessments for Screening Clinic for school-age children; coordinator of feedback and recommendations to parents; language learning disability evaluator. |
|---|---|
| STUDENT THERAPIST | Texas Tech University Psychology Clinic, Texas Tech University, Lubbock, Texas, 1977-1981.<br><br>Provision of outpatient psychotherapy, as well as performance of intellectual and personality assessments to adults and children. |
| RESIDENTIAL LIVING SUPERVISOR | Lubbock Regional MH/MR Center, Transitions II Halfway House, Lubbock, Texas, 1979-1981.<br><br>Employed interpersonal interventions and behavioral modification programs to aid newly released prisoners and parolees to reintegrate into community living. Participated in administrative decision making and program development. |
| STUDENT THERAPIST SUPERVISOR | Texas Tech University Psychology Clinic, Texas Tech University, Lubbock, Texas, 1980-1981.<br><br>Provision of individual supervision to second year practicum students on their outpatient cases. This experience was supervised by a faculty psychologist. |
| PSYCHOLOGY EXTERNSHIP | V.A. Mental Hygiene Clinic, Lubbock, Texas, 1980-1981.<br><br>Provision of psychotherapy and psychological assessment to outpatient veterans. |

## Research

A Neuropsychological Investigation of Two Subtypes of Dyslexia in College Students. Doctoral dissertation completed June, 1984.

A Brief Lurian Evaluation for Hospital Use with Head Trauma Victims.

Unpublished, performed in cooperation with J. Thomas Hutton, M.D.

The Rey Complex Figure Test:  Does it Really Measure Visual Memory?
Unpublished research.

Functional Electrical Stimulation in Multiple Sclerosis Patients with Chronic Foot
Drop.  Paper co-authored with E. Simon Sears, M.D., presented at the 111th
Annual Meeting of the American Neuropsychological Association, October 6,
1986.

Toward an Understanding of Violence:  Neurobehavorial Aspect of Unwarranted
Physical Aggression:  Aspen Neurobehavioral Conference Consensus Statement.
Neuropsychiatry, Neuropsychology, and Behavioral Neurology Vol. 14, No. 1,
2001
Lippincott, Williams, and Wilkins, Inc., Philadelphia.

## Presentations

Psychological Issues and Rehabilitative Treatment of Patients with Amputations.
Continuing Education Course, Rehabilitation Institute of Chicago, Illinois, 1984.

Incidence of Closed Head Injury in Spinal Cord Injured Patients.  Spinal Cord
Injury Conference, Chicago, Illinois, 1985.

Contracting with Patients and perspectives of the Rehabilitation Process;
Continuing Education Courses, The Institute of Rehabilitation and Research,
Houston, Texas, 1985, 1986, 1987, 1988.

Rehabilitation Options in Texas.  Presented at the 1987 Texas Head Injury
Foundation state meeting, Houston, Texas, 1987.

Professional Support Group; Current Issues.  Presented at the 1988 Texas Head
Injury Foundation state meeting, Austin, Texas, 1988.

Psychological Issues in Rehabilitation of Traumatically Injured Persons.
Presented at the First Annual Seminar on Rehabilitation for the Clergy, Houston,
Texas, 1988.

Neuropsychological Characteristics of Death Row Inmates.

MMPI-2 Characteristics of Criminal Offenders.

## Professional Affiliations

American Psychological Association,
    Student Affiliate, 1977-1980,

Associate Member, 1980-1984,
Member, 1985-present.

International Neuropsychological Society,
Member, 1986-present.

American Congress of Rehabilitation Medicine,
Member, 1986-present.

American Association of Spinal Cord Injury Psychologists and Social Workers,
1987-present.

Member, State of Illinois Head and Spinal Cord Injury Advisory Council, 1990-present.  Secretary of Council, 1996-1997.

National Surveyor, Commission on Accreditation of Rehabilitation Facilities, 1993-present.

Member of the Board of Directors, Illinois Head Injury Association, 1993.

Member of Professional Advisory Board, Brain Injury Association of Illinois, 1994-present.

Vice-Chair, Brain Injury Association of Illinois, 1994-present.

## Certificate and Licensure

Licensed Clinical Psychologist, State of Illinois, #071-004000

Licensed Psychologist and Health Service Provider in Psychology, State of Indiana, #20040461

Certified and Licensed Psychologist, State of Texas, #3237

Certified, National Register of Health Service Providers in Psychology, #35237

Diplomate in Forensic Neuropsychology, American Board of Psychological Specialties, Identification Number 7666

# Michael M. Gelbort, Ph.D.

## Clinical Psychologist

2714 Caton Farm Road
Joliet, Illinois
60435
Phone:  815.230.2262
Fax:    815.230.2444

### Education

Post-Doctoral Fellowship, Neuropsychology and Medical Psychology.
    Rehabilitation Institute of Chicago, 1984-1985.

Ph.D., Clinical Psychology (APA approved program), August, 1984.
    Department of Psychology, Texas Tech University, Lubbock, Texas.
    Minor:   Applied Human Neuropsychology.

B.A., Double Major:   Psychology and General Sciences, with Honors.
    May, 1977.  Grinnell College, Grinnell, Iowa.

### Clinical Experience

| | |
|---|---|
| CLINICAL AND NEUROPSYCHOLOGIST, PRIVATE PRACTICE | Chicago Area, Illinois.  1989-present. |
| | Neuropsychological and psychological evaluations of inpatients and outpatients.  Clinical consultations, evaluation, and intervention.  Services provided in physical rehabilitation and psychiatric inpatient units, as well as in the office. |
| CONSULTANT | Cornerstone Services, 1994-present. |
| | Provide psychological evaluations for residents from this facility which services 250 mentally retarded individuals. |
| CHIEF PSYCHOLOGIST DIRECTOR, PSYCHOLOGICAL SERVICES | The Institute for Rehabilitation and Research. 1985-1989. Responsible for provision of psychological services as required by patients in the Head Injury and stroke programs in particular, and serving persons with |

spinal cord injuries, multiple sclerosis, amputation, pain, and other disabled patients in general in a major regional dedication rehabilitation hospital. Duties included both neuropsychological and personality assessment, treatment planning, treatment, and consultation to the Interdisciplinary Treatment Team.  Patients served included both inpatients and outpatients in each phase of rehabilitation.  The position included hospital administrative duties including directing the Psychology Department, program development, and research involvement.  The department had three Ph.D. level psychologists, two psychometrics, and support personnel.

**CLINICAL ASSISTANT PROFESSOR**

Baylor College of Medicine, Department of Rehabilitation, 1985-1989.

**PRIVATE PRACTICE**

Houston, Texas.  1986-1989.

Evaluation and treatment of outpatients and inpatients in a private practice setting.  Patients most typically suffered from neurotic or characterological difficulties or had a physical disability.  The practice also involved consultation to rehabilitation units in acute care hospitals, as well as disability evaluations for a variety of referral sources.

**POST-DOCTORAL FELLOW IN MEDICAL PSYCHOLOGY**

Rehabilitation Institute of Chicago, 1984-1985.

Provision of psychotherapy and counseling to spinal cord injured, head injured, and amputee patients and their families in both inpatient and outpatient settings.  Member of an Interdisciplinary Team charged with coordination and provision of rehabilitative treatment.  Responsible for ordering and interpreting Neuropsychological assessment batteries.

**FACULTY APPOINTMENT: LECTURER STATUS**

Northwestern University Medical School; Department of Psychiatry and Behavioral Sciences, 1984-1985.

Lectured and performed supervision of doctoral students in Northwestern University's Medical School program in Clinical Psychology.  Lectured Northwestern University medical students.  Member

|  | of Admissions Committee group responsible for rating application materials of those applying for admission to the Doctoral Program in Clinical Psychology. |
|---|---|
| NEUROPSYCHOLOGICAL CONSULTANT | From the Department of Psychology to the Department of Medical-Surgical Neurology, Texas Tech University School or Medicine, 1982-1984. |
|  | Administration and interpretation of neuropsychological screening and complete batteries as referred by two neurosurgeons and two neurologists in a major regional teaching hospital. Techniques included both Halstead-Reitan and Lurian batteries, as well as an extensive number of other assessment measures.  Patients were both inpatients and outpatients and ranged from one to ninety years of age.  The test batteries were idiographically designed to answer questions regarding range and extent of dysfunction and rehabilitation placement. |
| NEUROPSYCHOLOGICAL CONSULTANT | Texas Rehabilitation Commission, Lubbock, Texas, 1983-1984. |
|  | Administration and interpretation of approximately forty-five Luria-Nebraska Neuropsychological Batteries and additional academic achievement tests to college age students being evaluated for the diagnosis of learning disability. |
| PSYCHOLOGICAL INTERN | Milwaukee County Mental Health Complex (APA approved program), Milwaukee, Wisconsin, 1981-1982. |
|  | Administration and interpretation of psychological test batteries on a wide spectrum patient population; provision of inpatient and outpatient psychotherapy to adults and children; performance of intake interviews and assessments; attendance at and presentation of seminars. |
| PSYCHOLOGIST | Developmental Disabilities Center, Texas Tech University, Lubbock, Texas, 1980-1981. |

| | Assessment of developmental delays and psychological/neuropsychological functioning of newborns to three-year-olds; input to Multidisciplinary Team; Clinic Administrator and administrator/interpretator of psychological assessments for Screening Clinic for school-age children; coordinator of feedback and recommendations to parents; language learning disability evaluator. |
|---|---|
| STUDENT THERAPIST | Texas Tech University Psychology Clinic, Texas Tech University, Lubbock, Texas, 1977-1981.<br><br>Provision of outpatient psychotherapy, as well as performance of intellectual and personality assessments to adults and children. |
| RESIDENTIAL LIVING SUPERVISOR | Lubbock Regional MH/MR Center, Transitions II Halfway House, Lubbock, Texas, 1979-1981.<br><br>Employed interpersonal interventions and behavioral modification programs to aid newly released prisoners and parolees to reintegrate into community living. Participated in administrative decision making and program development. |
| STUDENT THERAPIST SUPERVISOR | Texas Tech University Psychology Clinic, Texas Tech University, Lubbock, Texas, 1980-1981.<br><br>Provision of individual supervision to second year practicum students on their outpatient cases. This experience was supervised by a faculty psychologist. |
| PSYCHOLOGY EXTERNSHIP | V.A. Mental Hygiene Clinic, Lubbock, Texas, 1980-1981.<br><br>Provision of psychotherapy and psychological assessment to outpatient veterans. |

## **Research**

A Neuropsychological Investigation of Two Subtypes of Dyslexia in College Students. Doctoral dissertation completed June, 1984.

A Brief Lurian Evaluation for Hospital Use with Head Trauma Victims.

Unpublished, performed in cooperation with J. Thomas Hutton, M.D.

The Rey Complex Figure Test: Does it Really Measure Visual Memory? Unpublished research.

Functional Electrical Stimulation in Multiple Sclerosis Patients with Chronic Foot Drop. Paper co-authored with E. Simon Sears, M.D., presented at the 111th Annual Meeting of the American Neuropsychological Association, October 6, 1986.

Toward an Understanding of Violence: Neurobehavorial Aspect of Unwarranted Physical Aggression: Aspen Neurobehavioral Conference Consensus Statement. Neuropsychiatry, Neuropsychology, and Behavioral Neurology Vol. 14, No. 1, 2001
Lippincott, Williams, and Wilkins, Inc., Philadelphia.

## Presentations

Psychological Issues and Rehabilitative Treatment of Patients with Amputations. Continuing Education Course, Rehabilitation Institute of Chicago, Illinois, 1984.

Incidence of Closed Head Injury in Spinal Cord Injured Patients. Spinal Cord Injury Conference, Chicago, Illinois, 1985.

Contracting with Patients and perspectives of the Rehabilitation Process; Continuing Education Courses, The Institute of Rehabilitation and Research, Houston, Texas, 1985, 1986, 1987, 1988.

Rehabilitation Options in Texas. Presented at the 1987 Texas Head Injury Foundation state meeting, Houston, Texas, 1987.

Professional Support Group; Current Issues. Presented at the 1988 Texas Head Injury Foundation state meeting, Austin, Texas, 1988.

Psychological Issues in Rehabilitation of Traumatically Injured Persons. Presented at the First Annual Seminar on Rehabilitation for the Clergy, Houston, Texas, 1988.

Neuropsychological Characteristics of Death Row Inmates.

MMPI-2 Characteristics of Criminal Offenders.

## Professional Affiliations

American Psychological Association,
    Student Affiliate, 1977-1980,

Associate Member, 1980-1984,
Member, 1985-present.

International Neuropsychological Society,
Member, 1986-present.

American Congress of Rehabilitation Medicine,
Member, 1986-present.

American Association of Spinal Cord Injury Psychologists and Social Workers,
1987-present.

Member, State of Illinois Head and Spinal Cord Injury Advisory Council, 1990-present.  Secretary of Council, 1996-1997.

National Surveyor, Commission on Accreditation of Rehabilitation Facilities, 1993-present.

Member of the Board of Directors, Illinois Head Injury Association, 1993.

Member of Professional Advisory Board, Brain Injury Association of Illinois, 1994-present.

Vice-Chair, Brain Injury Association of Illinois, 1994-present.

## Certificate and Licensure

Licensed Clinical Psychologist, State of Illinois, #071-004000

Licensed Psychologist and Health Service Provider in Psychology, State of Indiana, #20040461

Certified and Licensed Psychologist, State of Texas, #3237

Certified, National Register of Health Service Providers in Psychology, #35237

Diplomate in Forensic Neuropsychology, American Board of Psychological Specialties, Identification Number 7666