**Date:**    7/21/03 4:50 PM
**Sender:** Paul Brunton
**To:**      Michael Abel; Barry Derryberry; Rob Ridenour
**Priority:** Normal
**Subject:** Fwd:Fw: Fwd:Re:Fed Death newsltr and update to FDO cases

```
            FYI
                            Forward Header_____
            Subject:     Fw: Fwd:Re:Fed Death newsltr and update to
            FDO cases
            Author:      "Judy Clarke" <judyclarke@attglobal.net>
            Date:        7/21/03 1:50 PM
```

Paul--there are substantial resources available to you,
including
brainstorming and consulting by the Death Penalty Resource
Counsel
Project--this includes David Bruck, Kevin McNally, Dick Burr
and Michael
Burt, as well as the Federal Defender Capital Resource Counsel
which are
Skip Gant, David Freedman and me.  We're happy to talk with you
about
anything, from who you might want to recommend as 3005 counsel,
setting up
your team, pre-authorization investigation, discovery etc, and
even
budgeting assistance with the AO.  Skip or I would be happy to
come to your
office to spend some time with you and the team talking about
any issues
you'd like, or we can find the right people to consult with
depending on
your case.   (And, we have our own budgets, so it doesn't cost
extra for
your office to have one of us come in for a consult).  And, of
course we've
available by phone.

I'm attaching a brochure we put together that lets you know
some of the
resources available.

For our records, can you tell me the defendant's name (or
defendants if
there's more than one), the indictment #, the charges, race of
deft/victim?
If you haven't done so already, could you fax a copy of the
indictment to
Kevin McNally's office?  Kevin is the keeper of the statistics.
Kevin's fax
is 502-227-4669

When you have time, give me a call (I'm in my office all week **FIELDS13897**
619-544-2720
is the work #, or cell 619-279-3804 after hours), or email so
we can talk
about how you can best take advantage of the resources that are
available.

```
> _____Forward Header_____
> Subject:     Re:Fed Death newsltr and update to FDO cases
```

> Author: Paul Brunton
> Date:        7/21/2003 11:31 AM
>
> Judy: Looks as though we are about to get involved in a death penalty
case. I
> have very able lawyers both with lots of  trial, motions and appeal
experience
> in state dp cases. This would be our first fed case. What if any
assistance is
> out there for us?
> Paul
>



CRCbrochure.wpd

**FIELDS13898**

**Date:** 7/21/03 1:50 PM
**Sender:** "Judy Clarke" <judyclarke@attglobal.net>
**To:** Paul Brunton
**Priority:** Normal
**Subject:** Fw: Fwd:Re:Fed Death newsltr and update to FDO cases

Paul--there are substantial resources available to you, including
brainstorming and consulting by the Death Penalty Resource Counsel
Project--this includes David Bruck, Kevin McNally, Dick Burr and Michael
Burt, as well as the Federal Defender Capital Resource Counsel which are
Skip Gant, David Freedman and me.  We're happy to talk with you about
anything, from who you might want to recommend as 3005 counsel, setting up
your team, pre-authorization investigation, discovery etc, and even
budgeting assistance with the AO.  Skip or I would be happy to come to your
office to spend some time with you and the team talking about any issues
you'd like, or we can find the right people to consult with depending on
your case.    (And, we have our own budgets, so it doesn't cost extra for
your office to have one of us come in for a consult).  And, of course we've
available by phone.

I'm attaching a brochure we put together that lets you know some of the
resources available.

For our records, can you tell me the defendant's name (or defendants if
there's more than one), the indictment #, the charges, race of deft/victim?
If you haven't done so already, could you fax a copy of the indictment to
Kevin McNally's office?  Kevin is the keeper of the statistics. Kevin's fax
is 502-227-4669

When you have time, give me a call (I'm in my office all week - 619-544-2720
is the work #, or cell 619-279-3804 after hours), or email so we can talk
about how you can best take advantage of the resources that are available.

> _____Forward Header_____
> Subject:      Re:Fed Death newsltr and update to FDO cases
> Author: Paul Brunton
> Date:         7/21/2003 11:31 AM
>
> Judy: Looks as though we are about to get involved in a death penalty
case. I
> have very able lawyers both with lots of  trial, motions and appeal
experience
> in state dp cases. This would be our first fed case. What if any

FIELDS13899

```
assistance is
> out there for us?
> Paul
>
```



*CRCbrochure.wpd*

**FIELDS13900**

# Federal Defender Organizations and The Federal Death Penalty:

An Introduction to the Resources Available to Federal Defender Organizations
in the Appointment and Defense of Federal Capital Cases

Prepared by:

Judy Clarke
National Capital Resource Counsel
c/o Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
Work: 619-234-8467
Cell: 619-279-3804
Fax: 619-374-2908
email: judyclarke@attglobal.net
or judy_clarke@fd.org (also on ccmail)

Isaiah "Skip" Gant
National Capital Resource Counsel
c/o Federal Public Defender
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, Tennessee 37203
Work: 615-736-5047
Fax: 615-736-5265
email: skip_gant@aol.com
or skip_gant@fd.org (also on ccmail)

FILED S23901

This pamphlet is designed to assist Federal Defender Organizations ("FDOs") when a case that is eligible for the death penalty arises. It provides information about:

(1) available resources;

(2) the appointment of "learned counsel"; and,

(3) evaluating and preparing for the impact of such a case.

**Federal Death Penalty.** Virtually every federal criminal case that results in a death is eligible for the death penalty. The federal death penalty was revived in 1988, pursuant to 21 U.S.C. § 848 (e) et seq., *Anti-Drug Abuse Act of 1988*. This "Drug King-Pin Act" was the first federal death penalty since *Furman*.[1] In 1994, Congress broadly expanded capital punishment to its current form. 18 U.S.C. § 3591 et seq., *Federal Death Penalty Act of 1994*.

Other statutes relating to the prosecution of capital cases include 18 U.S.C. § 3005 (appointment of two attorneys for defense in capital cases); 21 U.S.C. § 848 (q)(9)(authorization of reasonably necessary investigative, expert and other expenses); 18 U.S.C. § 3235 (venue in capital cases); 18 U.S.C. § 3281 (no time limit on instituting proceedings in capital cases) and 18 U.S.C. § 3432 (requiring disclosure of government witnesses and list of venire men at least three days before trial).

**Resource Counsel and Other Available**

---

[1]*Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

**Resources**. In 1992, the Administrative Office of the U.S. Courts contracted with experienced death penalty practitioners David Bruck (Columbia, South Carolina) and Kevin McNally (Frankfort, Kentucky), to assist in locating and training qualified lawyers to accept appointments in federal capital prosecutions. In 1997, the *Federal Death Penalty Resource Counsel Project* ("Project") was expanded to include Dick Burr (Houston, Texas). In 2002, Michael Burt (San Francisco, California) joined the Project.

The Defender Services Committee of the Judicial Conference approved funding for two full-time *National Capital Resource Counsel* positions ("CRC"). These positions are in essence national "learned counsel," working full-time within the federal defender program. The two CRC lawyers, Isaiah "Skip" Gant (hosted by the FPD in the Middle District of Tennessee) and Judy Clarke (hosted by Federal Defenders of San Diego, Inc.) are available to assist FDOs in a variety of ways.

The CRC are available to:

- be appointed as co-counsel with an FDO or work on the case on "loan" to an FDO staff in a limited number of cases;

- assist FDOs in recommending counsel;

- be a resource to discuss or assist with resources that arise in federal capital cases in your office, including staffing and budgetary issues;

1

- provide on site training on a variety of death penalty related topics; and to

- offer general assistance to FDOs on issues related to the federal death penalty.

The CRC are assisted by David Freedman, an experienced mitigation investigator, who is available to work with the CRC on cases where they serve as co-counsel, as well as to provide training and assistance.

The Project maintains, and distributes, a substantial number of litigation guides and other materials related to the defense of a federal death penalty case. These materials are available through Kevin McNally's office, with the majority of the materials also accessible on the Project's website: www.capdefnet.org. This valuable web site contains information relevant to capital habeas as well as direct federal death cases. There is also a federal trials listserv that FDOs may join by contacting resource counsel.

**Data Collection.** The Project also compiles a variety of statistical information on the implementation of the federal death penalty, information that has proved quite useful to counsel in death motions practice and in the authorization process. FDOs are a valuable source of this information, and need to be sure to alert the Project about the filing of potential capital cases in their districts.

**Appointment of Counsel.** FDOs play a critical role by recommending to the court the appointment of "learned counsel." FDOs must decide also whether or not to accept appointment as one of the counsel in a capital case.

Generally, the best practice is to seek appointment of "learned counsel" as soon as a potential capital case is discovered, not simply when the government advises it will actually seek the death penalty.

Statutory Role of FDOs. 18 U.S.C. § 3005, as amended by § 60026 of the *Federal Death Penalty Act of 1994*, 108 Stat. 1982, provides in pertinent part:

"Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours. In assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization, or, if no such organization exists in the district, of the Administrative Office of the United States Courts. "

Judicial Conference Recommendations. In 1998, the Judicial Conference adopted as policy the recommendations of the Defender Services Subcommittee on Federal Death Penalty Cases (commonly referred to as the "Spencer Committee Report").[2] The first of these recommendations provide:

---

[2] The full text of the Spencer Committee's report and recommendations may be found on www.capdefnet.org (under section on "Relevant Reading", *Spencer Report*).

FIELDS13903

2

"Quality of Counsel. Courts should ensure that all attorneys appointed in federal death penalty cases are well qualified, by virtue of their prior defense experience, training and commitment, to serve as counsel in this highly specialized and demanding type of litigation. High quality legal representation is essential to assure fair and final verdicts, as well as cost-effective case management.

Qualifications of Counsel. As required by statute, at the outset of every capital case, courts should appoint two counsel, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases. Ordinarily, "learned counsel" should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals, or post-conviction review that, in combination with co-counsel, will assure high quality representation."

As a result of the *Spencer Report*, Chapter VII of the *Guide to Judiciary Policies and Procedures: Appointment of Counsel in Criminal Cases* 6.01.A(1) (rev. 8/2/99) supports the early appointment of "learned counsel":

"As required by 18 U.S.C. § 3005, *at the outset of every capital case,* courts should appoint two counsel, at least one of whom is experienced in and knowledgeable about the defense of death penalty cases."[3]

Most district courts acknowledge the

importance of the early appointment of capital counsel. However, the issue has been subject to some litigation. *See e.g., United States v. Boone*, 245 F.3d 352 (4th Cir. 2001) (a capital crime defendant is entitled to the assistance of two lawyers regardless of whether DOJ ultimately chooses to seek the death penalty); *In Re Quester Sterling-Suarez*, 306 F.3d 1170 (1st Cir. 2002) ("promptly," means that learned counsel is to be appointed reasonably soon after indictment and prior to time that submissions are to be made to persuade Attorney General not to seek death penalty).

Importance of Early Appointment of Learned Counsel. It is essential that counsel be a zealous advocate during the time the government is deciding whether or not to seek the death penalty. The complex system of prosecutorial decision-making, mandated by the Justice Department's death penalty protocol, U.S.A.M. 9-10.0100 *et seq.*, provides defense counsel with opportunities to present evidence and argument both to the U.S. Attorney's Office and the Attorney General's Death Penalty Review Committee regarding why the government should not seek the death penalty.[4] As with any

---

[3] The *Guide* also encourages federal courts to exercise their discretion to retain or relieve second counsel once "it is determined that the death penalty will not be sought." *Id.*, Ch. 6.02.B(2).

---

[4] U.S.A.M. 9-10.030 provides that:

"[i]n any case in which a United States Attorney's Office is considering whether to request approval to seek the death penalty, the United States Attorney shall give counsel for the defendant a reasonable opportunity to present any facts, including any mitigating factors, to the United States Attorney for consideration." Likewise, at the Departmental level, U.S.A.M. 9-10.055 states that "[n]o decision to seek the death penalty shall be made without affording defense counsel an opportunity to present evidence and argument in mitigation," and

3

specialized area of administrative law, a lawyer's effectiveness in persuading the government to forego a death penalty prosecution is likely to depend on his or her degree of familiarity with this decision-making process, as well as skill and perseverance in investigating and presenting relevant evidence. The work of persuasion at this early stage of the capital litigation process calls for much the same experience and skill as does representation of a capital defendant at trial.

Plea negotiation and settlement place special demands on capital defense counsel that may be unfamiliar to lawyers whose entire experience is confined to non-capital cases. In view of the increasingly centralized control exercised by DOJ in death penalty cases, counsel will often need to reach a negotiated disposition very early in the case. Such negotiation generally requires a client to accept a severe punishment, most often life without possibility of release. Defense counsel faces a formidable challenge developing a relationship of trust sufficient to permit the client to accept such a sentence. This frequently occurs in a short time, without full discovery of the government's case, and under conditions that hinder a trusting relationship between lawyer and client. Early negotiation to avert the death penalty is in itself a highly specialized kind of representation.

---

U.S.A.M. 9-10.080 commits the government to a three-stage determination, two of which involve direct participation by defense counsel, of whether "whether the statutory aggravating factors applicable to the offense and any non-statutory aggravating factors sufficiently outweigh the mitigating factors applicable to the offense to justify a sentence of death. . . ."

Substantial experience is necessary. *See generally,* Welsh S. White, *Effective Assistance of Counsel in Capital Cases: The Evolving Standard Of Care,* U. Ill. L. Rev. 323, 368-376 (1993) (detailing the professional obligations of defense counsel in settling capital cases through negotiated guilty pleas).

Another particular challenge in the early weeks and months of a death-eligible case concerns the handling of issues and evidence related to the assessment of a client's mental condition. An ill-considered assessment of a client's mental condition in a death penalty case can have unpredictable and disastrous consequences. Assessing and memorializing a client's mental condition immediately after his arrest, without waiving constitutional rights or violating client confidences, presents especially difficult legal and tactical decisions for a lawyer. These decisions must presage the effect on the government's charging decisions and a capital sentencing hearing many months after. Mistakes made early may be impossible to cure later.

In addition, after careful empirical study of seven years' worth of federal capital cases, the Spencer Committee reached the conclusion that early mitigation investigation by experienced counsel facilitates early resolution of capital cases, and promotes judicial economy and efficiency. *Spencer Committee Report* at 40.

Selection of "Learned Counsel." The *Spencer Report* discussed the qualifications of "learned counsel" (i.e. "distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals, or post-

FIELDS13905

conviction review that, in combination with co-counsel, will assure high quality representation"). Additional requirements relating to counsel's experience are codified at 21 U.S.C. § 848(q)(5)-(9) (requiring one attorney have at least 5 years experience in the court of the prosecution and three years in the actual trial of felony cases). A good opinion discussing the qualifications of "learned counsel" is *United States v. Miranda*, 148 F. Supp. 2d 292 (S.D.N.Y. 2001).

Defenders typically know the defense bar in their community, and may have few or many choices of lawyers to recommend. Defenders are *encouraged* to contact the Resource Counsel to discuss this decision before making a recommendation to the district court. Resource counsel can assist in assessing the qualities of counsel and may have previous experience with any number of the lawyers the Defender is considering. Resource counsel will also work with the lawyers who are ultimately appointed in these cases, and should be involved early in the process.

**The FDO As Counsel**. In the early years of the revived federal death penalty, most of the federal capital defense was handled by experienced state death penalty practitioners who accepted CJA appointments. Indeed, the *Spencer Report* noted that federal defender offices had not often been appointed in capital cases, citing as reasons conflicts due to prior representations and lack of capital and homicide experience by the majority of federal defender staff attorneys. *See Spencer Report* at X. However, as the federal death penalty caseload grew, and as federal defenders gained experience in this area, more FDOs

began accepting appointments in federal capital cases.

There are a number of advantages to the participation of the FDO as one of the counsel in these cases. The FDO has the support staff to handle massive amounts of documents, easy access to databases for witness location and legal research, paralegals, research attorneys, investigators, and the funds to support a federal capital case. Defender staff are skilled at negotiating. They are experienced at dealing with local prosecutors and judges. They are highly motivated.

There are challenges. These include the drain on staff, the absence of the assigned lawyer(s) from the normal rotation of cases, and the likelihood of having to request supplemental funding. Federal capital cases require the devotion of substantial time from either an experienced legal secretary or paralegal who can maintain control over discovery as well as the often massive "life history" documents obtained during the mitigation investigation. The paperwork generated in the typical federal capital case can exceed even that in a major multi-defendant white collar case.

Many federal defender offices do not have investigators trained in capital mitigation work, and find the need to contract for such services. Mitigation work requires the development of a life chronology, maintenance of a list of potential witnesses to interview, and a social history for use by other experts.

**FIELDS13906**

Capital clients typically require a great deal of attention from all of the defense team. They are often the products of backgrounds

5

of abuse, neglect and trauma. Many exhibit the effects of serious psychiatric and neurological impairments. The development of a relationship with capital clients can be difficult. The various pressures of a capital case on staff can affect office morale.

The CRC, as well as the other resource counsel, are available to assist FDOs in making the decision about whether to become involved as counsel in a federal capital case. Resource counsel can advise how to staff the case and how to develop a budget. These cases can be expensive, and often involve contracting for a variety of expert services, including mitigation investigation, mental health experts, and a range of other forensic experts.

**Contact Information**.

David Bruck
1247 Sumter St, Ste 201
P.O. Box 11744
Columbia, South Carolina 29211
Work: 803-765-1044
Cell: 803-413-1112
Fax: 803-765-1143
email: david@brucklaw.com

Richard (Dick) Burr
Burr & Welch
10511Dunbrook Drive
Houston, Texas 77070-4037
Work: 281-897-8934
Cell:713-628-3391
Fax: 713-893-2500
email: dick@burrandwelch.com

Michael Burt
Law Offices of Michael Burt
600 Townsend Street, Suite 329
San Francisco, CA 94103
Work: 415-522-1508
Cell: 415-250-4541
Fax: 415-522-1506
email: michael.burt@prodigy.net

Judy Clarke
National Capital Resource Counsel
c/o Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
Work: 619-234-8467
Cell: 619-279-3804
Fax: 619-374-2908
email: judyclarke@attglobal.net
and judy_clarke@fd.org (ccmail)

6

Isaiah "Skip" Gant
National Capital Resource Counsel
c/o Federal Public Defender
Middle District of Tennessee
810 Broadway, Suite 200
Nashville, Tennessee 37203
Work: 615-736-5047
Fax: 615-736-5265
email: skipgant@hotmail.com
and skip_gant@fd.org (also on ccmail)

Kevin McNally
McNally & O'Donnell
513 Capitol Avenue
P.O. Box 1243
Frankfort, Kentucky  40602
Work: 502-227-2142
Fax: 502-227-4669
email: kmcnally@dcr.net

**FIELDS13908**

7