

**Fwd: Re: getting in touch about mental health issues**

Julia OConnell    Julie at Work                                    06/28/2005 07:38 AM

Note: forwarded message attached.
----- Message from "Michael Burt" <michael.burt@prodigy.net> on Mon, 27 Jun 2005 22:31:03 -0700 -----

**To:** "Julia OConnell" <kikntake@swbell.net>

**Subject** Re: getting in touch about mental health
**:** issues

We should talk tommorrow before your pretrial. I'll be free from 4:00 PST onward. Best number is 415-250-4541
Michael Burt
Law Office of Michael Burt
600 Townsend Street Suite 329-E
San Francisco, California 94103
415-522-1508 phone
415-522-1506 fax
 ----- Original Message -----
 **From:** Julia OConnell
 **To:** Michael Burt
 **Sent:** Monday, June 27, 2005 9:41 PM
 **Subject:** Re: getting in touch about mental health issues
 I can talk to you this weekend.
 My pretrial is this Thursday;  jury selection starts next Tuesday.
 I appreciate this, I'm sure you're busier than I am.
 What's the best time/place for me to call?

 Thanks--
 J.

 ***Michael Burt* < *michael.burt@prodigy.net* >**  wrote:
  Hi Julie. Thanks for the good case summary. I have been deeply involved for the past 72 hours in a crisis situation
  on one of my case, and I most likely will free up by this weekend so we can talk. Will that work for you ?
  Michael Burt
  Law Office of Michael Burt
  600 Townsend Street Suite 329-E
  San Francisco, California 94103              **FIELDS15025**
  415-522-1508 phone
  415-522-1506 fax
   ----- Original Message -----
   **From:** Julia OConnell
   **To:** Michael Burt
   **Sent:** Saturday, June 25, 2005 2:50 PM

**Subject:** Re: getting in touch about mental health issues

Hi Michael,

Very nice to meet you.

I am appreciate your willingness to at least listen.  Here's my case, my client and my questions:

the case

Client dressed in a ghille suit he constructed himself in 2000 or so.  (It is a 2-piece outfit, with a hood, that has camoflauge-colored long bits of twine hanging from it.  It looks kinda like a slime monster or something.  You can buy these things from many sporting goods places-- they are for hunting.  Client used his for hunting squirrels.)

Client saw a man and woman in the National Forest.  He figured out where their campsite was, went there in his suit, and waited in the woods for them with his .22 rifle (with a scope, wrapped in burlap).  When they returned, he shot them.  They were seated at a picnic table. He shot the husband first, in the head.  Wife jumped up and ran for the van, some 20 feet away.  He shot at her, 2 or three times, 1 bullet hit her in the foot.  She made it to the van, got the door opened, but he shot her in the head before she got inside.  He then walked closer to her, shot her in the head again, went to the picnic table, and shot husband in the head again. He took items from the man's pockets, including cash.  Then he tugged on the woman, got her off the footwell of the van.  He closed the door, and rather than step over her, he went to the other side of the van.  Discovered the door was locked.  Picked up a big chunk of rock, and broke out the window, then got in the van and ransacked the front.  The van was large.  It was packed full;  these people were serious campers.  But all client went through was the front.  He stole some backpacks, camera, man's wallet, videocam, stuff like that.

Client did not know these people.  He saw them at a vista near the campground two days earlier.  Did not make contact with them at that time.

He took the loot and bought his woman an engagement ring.  Then he took her on a three-day shopping spree.  Spent a boatload (using cash and credit cards from victims) on school supplies for her teenage daughter, meals, clothing, new truck tires, cat litter and dog food, etc.

FBI analysis of client's computer came up with 50-some .jpg images of camoflauge, one HTML document from 2002 containing an article about the DC-area snipers, and nearly 500 "potentially relevant" cookies. (I don't know what this means, no discovery, so have moved to exclude.)

FBI interviews of friends uncovered that client told them a month earlier of sneaking up on a couple, at a place near the homicides, while in a ghillie suit, and watching them have sex in their car.  Could not have been the victims, if it did happen.

my client

My client nearly died at birth from hypoxia.  The hospital long ago destroyed his birth records. I have at least been lucky enough to find "Emergency Baptism" records from the Catholic church, which also indicates the baptism took place at the hospital the day after birth.  So, gov't can't completely say we're making it up.

Father worked in the coal mining industry, in management.  He worked very, very hard, and provided well for the family.  Mom was usually stay-at-home, with long-standing mental health issues.  Client has one sister, who is a lesbian, about eighteen months older than he is. Client's life was very under-productive.  His intellect is average.  He did not do well in school,

FIELDS15026

or anything for that matter.  No special achievements.  He ran away from home in the 11th grade, and shacked up with a 30-year-old biker babe.  When he came back home, parents took him to mom's shrink, who diagnosed him with depression.  Thereafter, his family got him into the navy, a little against his will.  He was a bowson's mate, did fine, then became a recruiter.  He was honorably discharged.  While in the navy, he fathered a daughter.  He didn't marry her mother.

Client married while in the navy.  From that relationship 2 children were born, a daughter and a son, now 16 and 14 years old.  The marriage was rocky.  She reports that he was "2 different people" and that she, at one point, asked his parents to help convince him to seek mental health treatment, but they would have nothing to do with it.  She divorced him due to an affair he had.  They got married again, a couple years later.  And then divorced again.  According to wife, he developed an addiction to the internet and on-line pornographic activity.  He was quick to anger, and infrequently violent toward her and the children.

Client's longest term of employment outside the navy was as a prison guard for the Oklahoma DOC.  He has had several short-term jobs.  At the time of the homicides, he was making 6.50 an hour working in the warehouse of a cracker factory.

Throughout his life, he has received mental health treatment, always diagnosed with depression.  He has been treated with serzone, paxil, lexapro, and others.

About six months prior to the homicides, client went to a local doc (a very nice man).  The clinic is in Poteau, Oklahoma, and many people don't have health insurance.  So, docs give lots of samples.  Client reported he was hearing voices that told him to repeatedly sharpen knives, and to go to his girlfriend's house even when she didn't want him to be there.  He also reported feelings of suicide.  The doc discussed inpatient treatment, which client refused.  Doc gave him Lexapro.  Client kept all his appointments, and discussed his progress with the doc.  Doc changed him to Effexor in mid-June.  Double the dose on July 7.  Murders happened on July 10.

Client's father died a year earlier from a painful bout of cancer;  his mother (with whom he had been living) sold the house without telling him, leaving him without a place to stay;  he was being garnished for child support, leaving him with about a hundred dollars a week take-home pay;  his love life was on the rocks.


questions

My client has absolutely no criminal record.  But the government believes he is a psychopathic retrobate.  They gathered all the garbage they could on him, by going to the community and asking what they'd heard, about a month after the murders.  The town is tiny, and there was nothing to talk about except the client.  So the FBI guys got all the dirt.

The gov't wanted to use the dirt in aggravation.  The judge has ordered that most of it stays out.  I'll list most of it here;  don't laugh:

FIELDS15027

Client has always been considered a little strange.  He was always coming on to women, some of whom say he was "creepy."  He often bragged of his sexual prowess. In fact, he dated 2 women at the same time, unbeknownst to either of the women, and spoke of marriage to both.  He had a webcam that he told people he jacked off in front of, with over 1000 visitors to his site, or so he bragged, anyway.  (And, as mentioned above, there was the fascination with pornography during his marriage.)  He chatted with women on the internet, and then went to

meet them!

Client liked to fish more than anything in the world.  Once he took a device to work-- it was locked in his truck, in the parking lot.  It was like a pipe bomb, with a kitchen timer.  But it had no detonator or explosive material.  In the parking lot, he showed it off to a couple guys, and explained it was for fishing.  He also took a rifle to work one day, again-- locked in the car.  He'd just purchased it at Wal-Mart, and didn't have time to take it home before his shift started.  He showed it off to a buddy.  (The bomb thing got him fired.)

He had a burmese python for a pet, and hunted rattlesnakes for extra cash (40 cents a foot).  He took one into the Boxcar Bar one day, and got kicked out because of it.

A distant relative believes he hung a cat over a limb when he was four years old.  Jump ahead 34 years---  Someone else saw him put a stray cat in a burlap bag and twirl the bag around until the cat got dizzy.  He told a co-worker he shot a cat that was keeping him awake at night.  Another co-worker reported that he said he fed baby kittens to his snake.  And, no kidding, a witnessed him hit a cow and curse at it.

As also related above, client had some domestic violence in his life.  Some people reported that his mother was afraid of him.  One said he kept loaded guns by every door in the house.

questions

Judge says virtually all of this stays out, as long as I don't open the door.  Only stuff the gov't can use to support non-statutory aggravator of future danger is the growing interest in camoflauge and in stalking people.  None of the cat hanging, cow slapping, minor violence, snake loving, creepy stuff.

Most of my mitigation case is mental health evidence.  Some evidence of frontal lobe impairment, but largely the compelling stuff is the manic-flip nature of Effexor treatment.  The gov't has 2 docs, the examinations were taped.  I have listened, and know the outcome, because the docs had been front-loaded with the creepy-crawly stuff.  Lots of questions about his womanizing, probing inquiry into why someone would make up the cat-hanging incident.  So I can anticipate all the "junk" will play a role in any determination made by gov't docs.  Most of that crap isn't true (like hanging a cat), or has been largely exaggerated (the bomb thing has turned into threatening people at work with a bomb).  But I'm worried that, through mental health evidence, all of it will somehow come in, because the govenrment's experts will say they reviewed it, it helped them reach their conclusions, whatever.

Whatever I don't put on the table with my mental health testimony, they will want to get it in the back door, as justification for their docs' opinions.

Question 1:  Can I keep it out, and if so, how?

Question 2:  Is their any way to attack the govt's psychologist protocol based on his receipt and review of unreliable information?

Question 3:  What other questions should I ask?

**FIELDS15028**

Thanks.  I'm incredibly thankful.

Julie

***Michael Burt <michael.burt@prodigy.net>***  wrote:

 Julia

 Any time. If you need to reach me over the weekend, call at 415-250-4541

Michael Burt
Law Office of Michael Burt
600 Townsend Street Suite 329-E
San Francisco, California 94103
415-522-1508 phone
415-522-1506 fax
----- Original Message -----
**From:** Julia OConnell
**To:** Lisa Greenman
**Cc:** michael.burt@prodigy.net
**Sent:** Thursday, June 16, 2005 9:06 PM
**Subject:** Re: getting in touch about mental health issues
Hi--
I haven't called Michael yet, because I have been crazy.  I do have an issue to ask about, and swear I will try to touch base with you tomorrow.
And thanks, Lisa, for watching over me.
J.

***Lisa Greenman* < *lgreenman@starpower.net* >  wrote:**
I can't remember whether I actually sent you both an email or just thought about doing it, and I'm thinking it was the latter.  Whether duplicative or not, here is an email to both of you, aimed at facilitating communication!  -- Lisa

**FIELDS15029**