# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

EDWARD LEON FIELDS, JR.,     )
                 )
       *Petitioner*,     )
                 )
v.                 )     **Case No. CV-10-00115-RAW**
                 )     **Criminal Case No. CR-03-73-RAW**
UNITED STATES OF AMERICA     )
                 )
       *Respondent.*     )

## <u>REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN FAVOR OF THE GOVERNMENT</u>

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Ave
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
chris.wilson@usdoj.gov

JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 305-8910
Fax: (202) 353-9779
jeffrey.kahan@usdoj.gov

# TABLE OF CONTENTS

**PROCEDURAL HISTORY** .......................................................................................... **5**

**STANDARD OF REVIEW: THE COURT NEED NOT HOLD AN EVIDENTIARY
HEARING** .............................................................................................................. **5**

**ARGUMENT** ................................................................................................................ **7**

    I. COUNSEL COMPETENTLY PRESENTED AND ARGUED MENTAL HEALTH
    EVIDENCE ........................................................................................................... 7

        A.  Counsel's Mental Health Advocacy and the Jury's Verdict ............................ 7

        B.  Trial Counsel Reasonably Omitted Brain Damage Evidence .......................... 9

            1.     Counsel Acted Appropriately ........................................................ 9

            2.     Counsel's Actions did not Prejudice Fields .............................. 14

        C.  Trial Counsel Reasonably Opted to Forgo the Testimony of Fields's Treating Mental
        Health ...................................................................................................... 16

        Professionals ............................................................................................... 16

        D. Trial Counsel Reasonably Responded to Dr. Price's Testimony .................... 18

        E. Counsel's Reliance on the Opinions of Retained Experts ............................. 19

        F. Trial Counsel's Preparation of the Expert Witnesses .................................... 20

    II. FIELDS HAS FAILED TO STATE A JUSTICIABLE CLAIM THAT HE IS
    INCOMPETENT TO BE EXECUTED ............................................................... 20

    III. TRIAL COUNSEL REASONABLY RESPONDED TO THE GOVERNMENT'S VALID
    EVIDENCE AND ARGUMENTS ...................................................................... 20

    IV. TRIAL COUNSEL PRESENTED APPROPRIATE SOCIAL HISTORY EVIDENCE
    WITHOUT UNDERMINING THE DEFENSE STRATEGY ............................... 21

    V. COUNSEL PROPERLY OMITTED FUTILE OBJECTIONS TO APPROPRIATE
    PROSECUTION ARGUMENTS ........................................................................ 23

    VI. TRIAL COUNSEL PROPERLY REQUESTED A JURY CHARGE AND VERDICT
    FORM THAT PERMITTED A SINGLE WEIGHING OF AGGRAVATING AND
    MITIGATING FACTORS .................................................................................. 23

    VII. THE PROSECUTION HONORED ITS OBLIGATIONS TO DISCLOSE
    EXCULPATORY MATERIAL ........................................................................... 24

    VIII. THERE ARE NO ERRORS TO ACCUMULATE ......................................... 24

    IX. THIS COURT LACKS JURISDICTION TO DETERMINE WHETHER FIELDS'S
    EXECUTION WILL CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT ............ 25

**CONCLUSION** ........................................................................................................ **26**

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Mullin*, 368 F.3d 1220 (10th Cir. 2004)........................................................... 12

*Andrews v. Deland*, 943 F.2d 1162, 1195 (10th Cir. 1991)............................................. 8

*Bell v. Cone*, 535 U.S. 685, 689 (2002) ........................................................................ 18

*Cannon v. Gibson*, 259 F.3d 1253, 1277-78 (10th Cir. 2001) ....................................... 23

*Cullen v. Pinholster*, 563 U.S. 170 (2011)............................................................... 6, 13

*Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001)............................................... 8

*Dever v. Kan. State Penitentiary*, 36 F.3d 1531 (10th Cir. 1994) ................................... 6

*Ebbole v. United States*, 8 F.3d 530 (7th Cir.1993)....................................................... 6

*Fox v. Ward*, 200 F.3d 1286 (10th Cir. 2000).............................................................. 13

*Guam v. Ignacio,* 10 F.3d 608 (9th Cir. 1993)............................................................. 14

*Hatch v. Oklahoma*, 58 F.3d 1447 (10th Cir.1996) ..................................................... 14

*Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) ........................................ 19

*In re Andrews*, 52 P.2d 656 (Cal. 2002) ..................................................................... 11

*In re Elmore*, 172 P.3d 335 (Wash. 2007) .................................................................. 12

*Kemp v. Kelley*, No. 5:03-cv-55-DPM, 2015 WL 5842538 (E.D. Ark. Oct. 6, 2015).................. 12

*Kimmelman v. Morrison*, 477 U.S. 365 (1986)............................................................. 5

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) .......................................................... 6, 15

*Lema v. United States*, 987 F.2d 48, 55 (1st Cir.1993)................................................. 17

*Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir.1990) ............................................ 17

*Machibroda v. United States*, 368 U.S. 487 (1962)........................................................ 7

*Marek v. Singletary*, 62 F.3d 1295, 1300 (11th Cir. 1995)...................................... 16, 19

*Meyer v. Branker*, 506 F.3d 358, 372 (4th Cir. 2007) ...................................................... 16

*Michel v. Louisiana*, 350 U.S. 91, 101 (1955) ................................................................ 18

*Patel v. United States*, 19 F.3d 1231 (7th Cir. 1994) ...................................................... 6

*People v. Davis*, 208 P.3d 78 (Cal. 2009) ...................................................................... 11

*Ponce v. Garcia*, 2006 WL 2583677 (N.D. Cal. Sept. 7, 2006) ...................................... 12

*Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ................................................................ 10

*Schriro v. Landrigan*, 550 U.S. 465 (2007) ......................................................... 7, 13, 14

*Smith v. Workman*, 550 F.3d 1258 (10th Cir. 2008) ...................................................... 10

*Strickland v. Washington*, 466 U.S. 668 (1984) .............................................................. 6

*Sully v. Ayers*, 725 F.3d 1057 (9th Cir. 2013) ................................................................ 6

*United States Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998) .......................................... 24

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ......................................... 7, 16

*United States v. Haddock*, 12 F.3d 950 (10th Cir. 1993) ................................................ 6

*United States v. Harrison*, 375 Fed. Appx. 830 (10th Cir. 2010) .................................. 7

*United States v. Higgs*, 53 F.3d 281, 321 (4th Cir. 2003) ............................................ 24

*United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005) ......................................... 5

*United States v. Johnson*, 495 F.3d 951, 966 (8th Cir. 2007) ...................................... 21

*United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988) .............................................. 14

*United States v. Rogers*, 556 F.3d 1130, 1144 (10th Cir. 2009) .................................. 24

*Young v. Sirmons*, 486 F.3d 655, 680 (10th Cir. 2007) ................................................ 17

**Statutes**

18 U.S.C. § 3593 ..................................................................................................... 9, 21

**Rules**

Fed. R. Crim. Proc. 12.2 ................................................................................................. 13

Fed. R. Evid. 703 ........................................................................................................... 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EDWARD LEON FIELDS, JR.,** | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| **v.** | ) | **Case No. CV-10-00115-RAW** |
| | ) | **Criminal Case No. CR-03-73-RAW** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| *Respondent.* | ) | |

## REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN FAVOR OF THE GOVERNMENT

**COMES NOW**, Respondent, United States of America, by and through undersigned counsel, and replies in support of its motion for judgment in its favor.

## PROCEDURAL HISTORY

Following the affirmance of his conviction and death sentence, Fields moved for collateral relief under 28 U.S.C. § 2255. Docs. 1, 2, 14 & 106. After the government answered the Motion, the Court permitted discovery, including the government's neuropsychological evaluation of Fields and its receipt of a partial production of trial counsel's files. Docs. 50 & 82. Pursuant to a subsequent order (Doc. 91, 101), the government moved for judgment in its favor (Doc 110), and Fields filed a brief in opposition (Doc. 119). This reply follows.

## STANDARD OF REVIEW: THE COURT NEED NOT HOLD AN EVIDENTIARY HEARING

The disputed claims arise from allegations of trial counsel's ineffectiveness. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986); *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). To demonstrate ineffectiveness, Fields must show

deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong requires a showing that counsel's performance fell below prevailing professional norms. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). In other words, he must show that his representation fell so far below an objective standard of reasonableness that his attorneys did not function as "counsel" guaranteed by the Sixth Amendment. 466 U.S. at 688. But "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994). The second prong requires a showing that, absent attorney error, a reasonable probability exists that the defendant would have received a more favorable verdict. *United States v. Haddock*, 12 F.3d 950, 958 (10th Cir. 1993). A reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood." *Sully v. Ayers*, 725 F.3d 1057, 1069 (9th Cir. 2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

As the government established in its motion for judgment (Doc. 110), a substantial body of counsel's correspondence justifies the presumption that Fields's attorneys acted appropriately and strategically. In fact, the government relied on trial counsel's contemporaneous correspondence, and that documentation obviates the need for further evidentiary development.

Section 2255 does not require a hearing if "the motion *and the files and records of the case* conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (emphasis added). In short, the filing of a § 2255 motion does not automatically require an evidentiary hearing. *Patel v. United States*, 19 F.3d 1231, 1234-35 (7th Cir. 1994) (citing *Ebbole v. United States*, 8 F.3d 530, 534 (7th Cir.1993)). Rather, the Court must determine "'whether such a hearing could enable [the movant] to prove the [motion's] factual allegations, which, if true, would entitle the [movant] to . . . relief.'" *United States v. Barrett*, 797 F.3d 1207, 1224 (10th

6

Cir. 2015) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Thus, § 2255 "'does not strip the district courts of all discretion to exercise their common sense.'" *United States v. Harrison*, 375 Fed. Appx. 830, 833 (10th Cir. 2010) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

The discovery in this case has resulted in an expanded record. Those records permitted the government to identify rather than "make up" trial counsel's strategies, motivations and reasoning. *See e.g.*, Doc. 110 Exs. 1, 2, 8-10, 12, 13, 15-22; *cf.* Doc. 119 at 3 n.2. Those records, unaided by the lens of hindsight, provide a candid view of counsel's thinking, upon which this Court should deny relief without a hearing. *See Schriro*, 550 U.S. at 474.

## ARGUMENT

## I. COUNSEL COMPETENTLY PRESENTED AND ARGUED MENTAL HEALTH EVIDENCE

In its Motion, the government argued that the Court should deny relief with regard to Fields's six claims about the supposed failings of his attorneys in their investigation, presentation and summation of mental health evidence. Doc. 110 at 3-33. As it did in the motion, the government addresses the sub-claims, in order, relying on previously-submitted arguments except to the extent set forth below.

A. Counsel's Mental Health Advocacy and the Jury's Verdict

Fields claims that counsel ineffectively presented the defense's mental health case to the jury. 2255 Mtn. 7-16; Mem. 6-15.[1] As the government argued, Fields's contention relies on claims that counsel omitted arguments that were, in fact, made on his behalf. To the extent that counsel did not argue that the defense's mental health evidence would satisfy multiple

---

[1] 2255 Mtn. refers to docket no. 106, the amended motion for § 2255 relief; Mem. refers to docket no. 14, the memorandum of law in support of the motion.

mitigators, Fields has not established that the attorneys failed to provide constitutionally acceptable representation. Doc. 110 at 6-11. In response, Fields complains that the trial prosecutors criticized the defense presentation and the jury rejected it. Doc. 119 at 5-6. Fields's argument, devoid of legal substance, relies instead on the prosecution's arguments to the jury.

Fields's response crystalizes his position throughout this brief – an oft repeated complaint that counsel's strategies did not work. However, the trial transcript and Ms. O'Connell's correspondence depict a dedicated advocate who worked tirelessly to identify evidence with which to sway the jury. Ms. O'Connell sought advice from recognized luminaries, she retained multiple experts, and she directed an investigation of Fields's life, before organizing a cogent presentation designed to blame the murders on a psychotropic drug and depict her client as a person to be pitied. *See e.g..* Tr. 14: 3437-40. The mitigation case failed because it could not overcome the horrifying fact that the defendant slaughtered two people for sport before taking his girlfriend on a spending spree, not because it was ill-conceived or poorly presented.

With the benefit of hindsight and the government's summation, Fields takes issue with trial counsel's strategy, but he falls far short of establishing the denial of counsel as conceived by the Sixth Amendment and only manages to establish a difference in opinion over tactics. *See Andrews v. Deland*, 943 F.2d 1162, 1195 (10th Cir. 1991), *superseded by statute on other grounds as noted in Daniels v. United States*, 254 F.3d 1180, 1189-90 (10th Cir. 2001).

Apart from his insubstantial complaints about counsel's tactics, Fields implies that the government cannot appropriately argue that his attorneys provided competent representation because the prosecutors urged the jury to reject the mitigation case. *See* Doc. 119 at 5, 11 and 34. The government's approach is explained by the different legal standards at play at trial and under § 2255. In advocating for capital punishment at trial, the government bore the burden of

8

establishing that the aggravators sufficiently outweighed the mitigators to merit the imposition of the death penalty. 18 U.S.C. § 3593(e). It has never believed that the defense's mitigation evidence was as weighty as its aggravation case, and it said as much at trial. But in judging the quality of Fields's representation, the law contemplates "counsel's perspective at the time" decisions were made, giving a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 689, 691. Viewed in light of the challenges presented by the government's case – which involved the premeditated murder of two campers by a sniper in a ghillie suit – counsel took a common-sense approach. The defense's failure in the face of overwhelming aggravation is not the measure of counsel's effectiveness, and the government has not violated any ethical boundaries in advocating that Fields's attorneys chose the best cards from a bad hand.

B.  Trial Counsel Reasonably Omitted Brain Damage Evidence

Fields claims his attorneys were ineffective for failing to investigate and present evidence of his supposed brain damage. He further contends that he is severely affected by the condition, based on an opinion from Dr. Martell. 2255 Mtn. 16-31; Mem. 16-24. As the government argued, the omission of brain damage testimony was objectively reasonable under the circumstances and non-prejudicial. Doc. 110 at 11-21. In response, Fields has relied on post-trial declarations to assert that trial counsel omitted the brain damage evidence without reason. He further asserts that brain damage evidence as a species is of such consequence that an attorney may never reasonably omit it.

1.  Counsel Acted Appropriately

Fields argues that counsel omitted brain damage evidence out of pure neglect, having previously determined that Dr. Gelbort was a necessary witness. As Fields would have it, counsel made no decision, but "simply failed" to present the evidence he now claims would have

9

altered the outcome of his trial. Doc. 119 at 8. However, the existing records make clear that counsel prepared carefully for trial and spent a great deal of time and energy contemplating the brain damage evidence and its chief proponent, Dr. Gelbort. Counsel did not like Gelbort, she did not consider the brain damage evidence especially significant and she was well within her prerogative to forego them both, even if another attorney might have acted differently.

An attorney need not investigate all leads or present all available mitigating evidence, so long as the decision is reasonable under the circumstances. *See Smith v. Workman*, 550 F.3d 1258, 1270 (10th Cir. 2008). "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

In this case, Ms. O'Connell ultimately concluded she should proceed without Gelbort's testimony. As Fields observes, she initially expressed a high opinion of the brain damage evidence. *See* Trl. Doc. 122-2.[2] But neither the law nor counsel's initial statements barred her from a change of heart, and the record makes clear that Ms. O'Connell altered course. Two weeks after expressing limited satisfaction with Gelbort's report (*see* Doc. 119 Ex. 5), Ms. O'Connell voiced wholesale regret over her association with him:

> He stood me up on Saturday, didn't call as promised. I went to his session on Sunday and tracked him down, got him to commit to Monday morning breakfast. (I had been expecting we would have dinner meetings Saturday and Sunday.) [¶] We had a pleasant conversation, and I know very little more than I knew before. I tell you: anyone asks you about him, tell them not to hire him. He sucks. Not because he's not smart, or doesn't know his field, but because he's too difficult to work with.

Doc. 110 Ex. 20 at 4686. Co-counsel chimed in, "I concur whole-heartedly! He has continued to conduct himself in this manner even after I politley [*sic*] chastised him for doing so. Maybe I

---

[2] "Trl. Doc. refers to the docket in case no. CR-03-73-RAW.

shouldn't been [*sic*] so polite." *Id*. at 4688.

Ms. O'Connell did not merely dislike Gelbort – she did not think his opinion was especially significant in light of other evidence. As the government more fully noted in its initial papers, Ms. O'Connell wrote, "I'd rather rely on George than this guy. The potential brain damage has some value, but it's not a huge part of my mitigation. It just enters the equation." Doc. 110 at 13 and Ex. 20 at 4685. Just a few weeks before trial, Ms. O'Connell explained to Dr. Grinage why she thought she could do without Dr. Gelbort's testimony entirely:

> I'm writing to see how you feel about the neuropsychologist stuff we have. I'm thinking that-- if it is not vital to your conclusion-- you not mention it in your report. The reason for this is: if I have to go to trial, and their neuropsychologist reaches some conclusion contrary to Dr. Gelbort's, I can jettison the neuropsychologist testimony. Then the govt's neuropsychologist probably wouldn't be allowed to testify.

Ex. 1. Grinage saw no issue with the tactic: "I don't have a problem leaving out Dr. Gelbort's information with the understanding that if on the stand, if I am asked why I did not include his information in my report I would need to answer that it was at your request." Ex. 2. The strategy was consistent with advice Ms. O'Connell received from consulting attorney Greenman. *See* Doc. 110 Ex. 2 at 15056 ("In the alternative, you might consider not putting Gelbort on, sticking with the psychiatric evidence for penalty phase . . . and denying them the opportunity to put Price on the stand.").

As for Woods, he led counsel to believe he could testify about brain damage, as noted in the government's motion. *See* Doc. 110 at 16 (citing Ex. 22). Relying on Woods's testimony in another case, Fields asserts the neuropsychiatrist lacked the expertise to diagnose brain damage. But Woods has repeatedly testified about litigants' brain health. *E.g., People v. Davis*, 208 P.3d 78, 105 (Cal. 2009) (noting Woods testified about a lack of neurological problems); *In re Andrews*, 52 P.2d 656, 680 (Cal. 2002) (noting Woods testified about organic brain damage); *In*

11

*re Elmore*, 172 P.3d 335, 357 (Wash. 2007) (noting Woods testified to "brain impairments" and "neuropsychological deficits"); *Kemp v. Kelley*, No. 5:03-cv-55-DPM, 2015 WL 5842538, *9 (E.D. Ark. Oct. 6, 2015) (noting Woods testified to organic brain damage); *Ponce v. Garcia*, 2006 WL 2583677, *1 (N.D. Cal. Sept. 7, 2006) (noting Woods diagnosed a brain injury). Most tellingly, Woods diagnosed Kenneth Barrett with bipolar disorder and brain damage, precisely the finding Fields complains he did not receive:

> Mr. Barrett meets diagnostic criteria . . . for Bipolar Disorder, severe, 296.4x; and Post Traumatic Stress Disorder (PTSD), chronic, severe, 309.81. He also has clinically measured diffuse brain damage, particularly in the prefrontal, temporal, and limbic system cortices, with the most cognitively significant impairment located in the orbitofrontal and dorsolateral regions of the prefrontal cortex. Mr. Barrett's clinical profile medically indicates cognitive functioning and behavior that is severely compromised by overlapping symptoms of depression and mania – diagnostic of Bipolar and secondary to PTSD – and impairments in higher cortical regions necessary for inhibition, reasoning and judgment.

Ex. 3 at 24. Woods can obviously diagnose brain damage. To the extent he required input from a neuropsychologist to complete his diagnosis, he could have relied on information he received from Gelbort. *See* Fed. R. Evid. 703; Doc. 110 Ex. 20 at 4684. Woods's current complaints that counsel did not adequately prepare him to testify (*see* 2255 Mtn. Ex. 2) are betrayed by correspondence discussed in the government's motion. *See* Doc. 110 at 31-33.

In short, counsel's correspondence explains why she omitted the brain damage testimony: she did not think it was important and she believed she could reap a tactical advantage – the avoidance of the government's mental health expert – by omitting it. Five years after trial, Ms. O'Connell declared she had no reason for her actions (2255 Mtn. Ex. 1), but the assertion appears inaccurate given her correspondence. Ms. O'Connell cannot maintain that she articulated valid bases for omitting evidence, then acted in accordance with that strategy for no reason at all. *See Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004) (inferring a motive to

derail a death sentence from a declaration that was inconsistent with earlier statements); *cf.*
*Pinholster*, 563 U.S. at 196 (noting the "strong presumption" that counsel acted with "reasonable professional judgment"). In any event, counsel's ability to accurately recount her motives is not in issue. The records demonstrate, and common sense dictates, that Ms. O'Connell acted in accordance with her stated strategies, obviating the need for a hearing on that topic.[3] *Schriro*, 660 U.S. at 474.

Fields also fails to undermine the existence of Ms. O'Connell's strategies by arguing that the government's future dangerousness allegation created a basis for admitting the testimony of the government's mental health expert. *See* Doc. 119 at 18-26. That assertion is factually erroneous. Dr. Price testified only in rebuttal (*see* Tr. 12:3091-13:3247), and the government's notice of intent to seek the death penalty did not allege the defendant's mental condition as a basis for its future dangerousness aggravator, and referenced only his prior conduct and lack of remorse. Trl. Doc. 38 at 2-3. Moreover, Fields's argument flies in the face of the law, which permitted the government to evaluate Fields's mental health only in the service of its rebuttal case. *See* Fed. R. Crim. Proc. 12.2.

Fields goes on to argue at length that counsel did not possess a tactical reason for omitting the brain damage evidence because the defense ultimately failed to preclude Dr. Price's testimony. Doc. 119 at 17-26. Of course, a tactic's failure does not demonstrate a lack of strategy, and counsel's decision only amounts to ineffectiveness if it was "completely unreasonable, not merely wrong . . . [and bore] no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (internal quotes and cites omitted); *see also*

---

[3] Declarations of other witnesses have no bearing on the existence of Ms. O'Connell's tactics. For instance, the fact that the Dr. Gelbort cannot explain counsel's strategies (2255 Mtn. Ex. 35 at ¶ 12) proves only that she did not share her tactics and unflattering opinions with him.

*Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir.1996) (holding that "[t]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance"), *partially overruled on other grounds*, *Daniels*, 254 F.3d at 1188 n.1. Fields's exploration of the damaging evidence that was admitted proves only that trials can be unpredictable, not that Ms. O'Connell did not reasonably believe she could forego Gelbort's testimony. *See United States v. Layton*, 855 F.2d 1388, 1420 (9th Cir. 1988) (observing that "[l]ack of success . . . does not prove ineffective assistance of counsel"), *cert. denied*, 489 U.S. 1046 (1989), *partially overruled on other grounds*, *Guam v. Ignacio,* 10 F.3d 608, 612 n. 2 (9th Cir. 1993). More to the point, it fails to establish any likelihood that highly debatable evidence of marginal brain damage would have turned the tide at trial.

Given that Ms. O'Connell omitted the brain damage evidence based on rational tactical considerations, the Court should reject Fields's request for a hearing to delve into any immaterial statements offered years after the conclusion of trial. *Schriro*, 550 U.S. at 474.

2. Counsel's Actions did not Prejudice Fields

Assuming, arguendo, that counsel erred, Fields cannot demonstrate prejudice. See Doc. 16 Arg. I,B; Doc. 110 Arg. I,B. Having partially premised his claim of ineffectiveness on a post-judgment mental health evaluation (*see* 2255 Mtn. at 24-30), Fields now argues that the government cannot refute his contention by resorting to evidence that was not available at the time of trial. Doc. 119 at 26-29.

The evidence available at the time of trial was more than adequate to rebut a showing of prejudice from foregone brain damage evidence. The defense's testifying experts conceded that brain damage evidence was of minimal impact. Doc. 110 at 27. Grinage testified that he considered the information a "piece of evidence to be weighed," but nothing "cataclysmic." Tr.

14

11: 2830. He conceded that evidence of a frontal lobe impairment would "reveal itself in a number of ways concerning cognitive performance," though "you might be able to stretch to say that it would have some contribution to a bipolar type disorder." Tr. 11: 2830-31. He also agreed that "if the defendant had suffered brain damage at birth, age thirty-six is a little late to blame an alleged hypoxia."[4] *Id.* at 2868. Dr. Woods, read Dr. Gelbort's report (2255 Mtn. Ex. 2 at 2; Tr. 12: 3002) but made no mention of it in his findings. See Tr. 12: 2938-3069.

With regard to evidence that did not exist at the time of trial, the law does not limit the government's response in a § 2255 action to material it could have produced when it had no motive to do so. Fields bears the burden of establishing prejudice by demonstrating a reasonable probability that the evidence available to trial counsel would have permitted the defense to obtain a more favorable verdict. *Mirzayance*, 556 U.S. at 122. Since Fields did not present brain damage evidence at trial, and only sought Dr. Martell's opinion after the imposition of judgment, the government could only obtain its rebuttal post trial. But the government's expert report, though necessarily premised on testing and evaluation that occurred after the trial, permits the inference that counsel made no prejudicial omission. Indeed, Dr. Seward's findings demand the conclusion that Fields never suffered from brain damage and any attempt to prove otherwise would have been futile or misleading: "[I]insinuations that everyone is overlooking Mr. Fields's rotting brain, are not at all borne out by evidence. Failure to expose these to a trial jury . . . reflects only that an entirely fictional argument has yet to be made." Doc. 110 Ex. 23 at 98.

---

[4] To the extent Grinage later claimed he underestimated Gelbort's findings because he received only the raw test data (2255 Mtn. Ex. 3 at ¶ 11), it appears his post-trial declaration was mistaken: Ms. O'Connell stated in an e-mail: "I sent you was an excerpt of his preliminary report. What is important for me to know, you have told me – that it wasn't critical to your final opinion." Doc. 110 Ex. 34 at 1. Ms. O'Connell made clear to Grinage when she forwarded the report that he should feel free to contact the neuropsychologist. Ex. 4.

Fields also errs in implying that the omission of brain damage evidence requires a finding of per se prejudice. See Doc 119 at 12-14. The law does not require counsel to "present all available mitigating circumstance evidence in general, or all mental illness mitigating circumstance evidence in particular, in order to render effective assistance of counsel." *Marek v. Singletary*, 62 F.3d 1295, 1300 (11th Cir. 1995); *see also Meyer v. Branker*, 506 F.3d 358, 372 (4th Cir. 2007) (rejecting a "programmatic rule requiring the presentation of mental health mitigation testimony"). Indeed, the *Barrett* opinion, upon which Fields purports to rely, makes clear that for a court to assess the likelihood of prejudice it must "'consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the [§ 2255] proceeding—and reweigh it against the evidence in aggravation . . . a probing and fact-specific analysis." 797 F.3d at 1229 (internal quotes omitted).

In this case, no reasonable likelihood exists that Fields would have received a more favorable verdict had the defense presented brain damage evidence that was thought to be of small weight to his own experts in 2005, and was greatly overblown even then.

C. Trial Counsel Reasonably Opted to Forgo the Testimony of Fields's Treating Mental Health Professionals

Fields claims that trial counsel ineffectively failed to call witnesses who previously treated him for mental health issues. 2255 Mtn. 31-39; Mem. 24-29. As the government argued, counsel reasonably elected to avoid the testimony of these potential witnesses in light of the fact that the testifying experts could refer to the prior diagnoses, to the extent they assisted the defense, without exposing the treating professionals to substantial impeachment. Doc. 110 at 21-26. In response, Fields has taken the implied position that his attorneys could not have reasonably elected to forego the witnesses without first interviewing them. His argument finds

16

no support in the law, as interviews would not have altered counsel's understanding of the testimony the foregone witnesses might have offered.

"[C]ounsel need not interview every possible witness to have performed proficiently." *Young v. Sirmons*, 486 F.3d 655, 680 (10th Cir. 2007) (quoting *Owens v. United States*, 483 F.3d 48, 69 (1st Cir.2007) and *Riley v. Payne*, 352 F.3d 1313, 1318 (9th Cir.2003)); se*e also Lema v. United States*, 987 F.2d 48, 55 (1st Cir.1993) (noting a less than exhaustive investigation is adequate when justified by reasonable professional judgments); *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir.1990)) ("*Strickland* made clear, trial counsel [are] not bound by an inflexible constitutional command to interview every possible witness.").

Here, counsel knew of the findings of the Fields's treating mental health professionals. She possessed a medical file from the practice that employed Dr. Kemp, Dr. Winter, and PA Anderson. Ex. 5. She provided mental health records from the jail to her experts, who noted as much in their testimony. *See* Ex. 6; Doc. 110 Ex. 34 at 15003 (cover e-mail providing jail psychiatric notes to Grinage); Tr. 11: 2795-96; Tr. 12: 2944, 2978. She referred to the diagnoses of Dr. Kemp and both jail psychiatrists in her critique of Dr. Price's report. Ex. 7. And Ms. O'Connell presented the findings of the treating professionals during questioning of experts for both parties. *See, e.g.*, Tr. 12: 2985-86 (Woods); Tr: 11: 2889-94 (Grinage); Tr. 13:3209-10 (Price); *see also* Ex. 8 (counsel's notes for Price examination repeatedly mentioning prior diagnoses). Ms. O'Connell had no illusions about the findings of the treating professionals and no need to interview them to determine how they might testify. Fields has not demonstrated how further investigation of those professionals might have altered counsel's views, compelled her to present their testimony, or prejudicially erred in omitting their testimony.[5]

---

[5] As Fields notes, the government referred to his supposed bipolar condition as a thought

17

<u>D. Trial Counsel Reasonably Responded to Dr. Price's Testimony</u>

Fields alleges that trial counsel acted ineffectively when they failed to object to Dr. Price's testimony that the defendant appeared to have average cognitive function and when she adduced testimony from the expert that Fields was not brain damaged. 2255 Mtn. 39-46; Mem. 29-34. As the government argued, counsel's actions were part of a reasonable strategy of confronting, and attempting to neutralize Price. Doc. 110 at 26-29. In response, Fields again advances his untenable argument that his attorneys had a legal duty to present brain damage evidence and complains – on the basis of information obtained after trial – that counsel did not adequately confront Price's findings. Doc. 119 at 31-36. Fields's arguments violate a basic tenet in the evaluation of counsel's effectiveness – the avoidance of hindsight.

"Judicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, counsel enjoys a presumption that she employed sound strategy. *Bell v. Cone*, 535 U.S. 685, 689 (2002) (citing *Strickland* and *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Counsel, did not err when she briefly cross-examined Price about his findings, as the theory of the defense did not hinge on brain damage and counsel did not believe that even her own brain damage evidence was of much value. *See* Doc. 110 at Arg. I, B. Fields's insistence at

---

disorder, not a mood disorder (Doc. 119 p. 31 n.20), when it argued that Dr. Winters would not have assisted the defense. Doc. 110 at 23. The taxonomy of bipolar disorder notwithstanding, the government's position remains sound: Fields cannot show a reasonable probability of prejudice based on the omission of testimony from a doctor who diagnosed him with a condition other than bipolar disorder. Winters's depression diagnosis was an historic and uncontroverted fact, but it did not establish Fields's susceptibility to "manic flip" – the premise of his defense.

this juncture that brain damage evidence would have provided "powerful mitigation" amounts to an exercise in wishful thinking and forbidden hindsight. *Bell*, 535 U.S. at 689. As previously discussed, Fields cannot show that counsel had a legal obligation to present brain damage evidence. *See Marek*, 62 F.3d at 1300. Certainly, he cannot show that any brief foray into the topic with Dr. Price was reasonably likely to have affected the outcome of the trial.

E. Counsel's Reliance on the Opinions of Retained Experts

Fields claims his trial counsel ineffectively failed to present Peter Breggin to testify that Effexor use correlates with compulsive aggression. 2255 Mtn. 46-53; Mem. 34-39. As the government argued, trial counsel presented experts who attributed these murders to the defendant's use of Effexor. Fields cannot show his attorneys had a duty to discover, much less present Breggin's corroborative findings, especially given that federal courts have repeatedly barred him from testifying to a link between psychotropic drugs and violence. Doc. 110 at 29-31. In response, Fields argues that Breggin has previously testified in criminal trials and that counsel should have known of him because he was a published author. Doc. 119 at 37-38. Fields's arguments are lacking in legal or factual substance.

Though the government has shown that courts have, on three occasions, excluded Breggin's testimony under the Federal Rules of Evidence, Fields insists the psychiatrist has testified in several criminal cases. But Fields fails to identify a single case in which a court admitted, under federal authority, Breggin's theories linking violence and anti-depressants. *Cf.* Doc. 119 at 38 n.25. Moreover, Fields has not shown that counsel knew of Breggin, had reason to know of him, or – most importantly – to call him as a witness to testify to a theory she presented through other experts. *See Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (noting the duty to investigate and prepare a defense is not limitless).

19

F. Trial Counsel's Preparation of the Expert Witnesses

Fields claims his attorneys ineffective failed to adequately prepare the defense's mental health witnesses. 2255 Mtn. 53-54; Mem. 39-41. As the government argued, both experts testified consistently with the written opinions they rendered before Fields pleaded guilty and defended their conclusions during cross-examination. Doc. 110 at 31-33. Fields offers no further response to those arguments (Doc. 119 at 38), precluding any rebuttal.

## II. FIELDS HAS FAILED TO STATE A JUSTICIABLE CLAIM THAT HE IS INCOMPETENT TO BE EXECUTED

Fields claims that his alleged mental illnesses render him incompetent to be executed. 2255 Mtn. 54-55; Mem. 42-46. The parties concur the claim is not ripe for review. Doc. 110 at 33; Doc. 119 at 38.

## III. TRIAL COUNSEL REASONABLY RESPONDED TO THE GOVERNMENT'S VALID EVIDENCE AND ARGUMENTS

Fields claims that trial counsel ineffectively failed to investigate and identify rebuttal to the government's evidence and arguments in favor of two aggravators – mental anguish and substantial planning and premeditation. He further contends the government presented false and misleading evidence to support the factors. 2255 Mtn. 56-83; Mem. 46-62. The government stands by its earlier arguments that Fields's counsel acted reasonably, and that the prosecutors did not commit misconduct. Doc. 110 at 33-34 (citing Doc. 16 at 46-62). In response, Fields mischaracterizes the government's argument as generally impugning the conclusions of his recently-retained expert and therefore subject to evidentiary dispute. In fact, the government has argued primarily that counsel acted reasonably under the circumstances confronting them and that their actions did not prejudice the outcome of the case. *Id.* On those grounds, the Court requires no evidentiary development to deny the claim.

## IV. TRIAL COUNSEL PRESENTED APPROPRIATE SOCIAL HISTORY EVIDENCE WITHOUT UNDERMINING THE DEFENSE STRATEGY

Fields claims that trial counsel ineffectively failed to present and rely upon adequate social history evidence as a basis for mitigation. 2255 Mtn. 83-94; Mem. 62-71. As the government argued, trial counsel acted reasonably in presenting evidence that tended to portray the murders as aberrant behavior. Doc. 110 at 34-39. Fields responds that the government has falsely attempted to constrain mitigation evidence to information causally related to the crime. He further argues that the government was able to elicit damaging testimony about Fields's behavior that negated counsel's strategies. Doc. 39-42. The government appreciates the legal limits of mitigation evidence but has shown that any foregone testimony would have failed to alter the verdict and was therefore reasonably omitted.

Fields's reliance on the legal truism that evidence can have mitigating impact regardless of its connection to the crime is of no moment. The government has never asserted that a legal principle precluded the jury from finding that Fields had a less than ideal upbringing. Rather, it argues that counsel selected evidence to present a consistent and palatable theory in the hope of securing a favorable verdict. Such an effort reflects a mature understanding that the jury could find contradictory mitigators but had no obligation to give them weight. See 18 U.S.C. § 3593(e); *United States v. Johnson*, 495 F.3d 951, 966 (8th Cir. 2007). In short, counsel apparently understood that an effort to prove every conceivable factor would not assist Fields. For instance, omitted evidence that he received inadequate attention from his parents (Doc. 119 at 39-40) would have detracted from evidence that he was loved son. Trl. Doc. 228 at 39. Fields has failed to demonstrate that counsel acted unreasonably in attempting to portray the crime as an aberration.

Fields also errs in implying that counsel had a duty to abandon the defense strategy when the government adduced evidence that the defendant had acted badly in the past. *See* Doc. 119 at 41-42. Rather than give up on a managed portrait of Fields in favor of a shotgun approach to mitigation, counsel used redirect as an opportunity to minimize damage and assist the case. For instance, after the government questioned Fields's sister about their mother's stated fear of the defendant, defense counsel took the opportunity to present Cherie Fields's experience that Teresa Fields tended to exaggerate such claims, blunting the impact of cross-examination. Tr. 11:2717-18. From there, counsel segued to Cherie's recollection that Fields was never viscous to her, further tending to portray the defendant as non-violent. *Id*. at 2719. When the government adduced an admission from Fields's wife that she and the defendant had engaged in physical disputes, counsel used the opportunity to underscore the theme that the defendant's behavior was a product of his medication:

> Q. What's different [about Fields's behavior]?
>
> A. We have normal conversations. He cares to know about the kids. He wants to know what's going on with my health. He wants to know, you know, what I wanted before I met him with kids. He's talking, we talk. I can tell so much of a difference on his medicine. He gradually, you know, the more conversations that we had I can tell a big difference.

Tr. 11: 2762-63.

Ultimately, Fields's complaints are an exercise in hindsight. Had his attorneys changed course as soon as the government presented a negative fact from the defendant's life, Fields would now complain that he would have been better served if his attorneys maintained a consistent theme and portrayed the crime as an anomaly. Fields cannot show that he was prejudiced by the omission of evidence that would have sabotaged the effort to characterize him as a generally non-violent person who committed the crime due

22

to circumstances beyond his control.  *See Cannon v. Gibson*, 259 F.3d 1253, 1277-78 (10th Cir. 2001) (holding omitted evidence "would have negated much of the mitigation evidence actually adduced . . . and could have strengthened the prosecution's argument that Cannon represented a continuing threat to society").

## V. COUNSEL PROPERLY OMITTED FUTILE OBJECTIONS TO APPROPRIATE PROSECUTION ARGUMENTS

Fields claims his trial counsel provided ineffective assistance when they failed to object to several instances of alleged prosecutorial misconduct and also argues that his appellate counsel ineffectively failed to raise the issues on appeal. 2255 Mtn. 95-112; Mem. 71-90.  The government did not substantively address the matter in its motion, and Fields offers no rebuttal.

## VI. TRIAL COUNSEL PROPERLY REQUESTED A JURY CHARGE AND VERDICT FORM THAT PERMITTED A SINGLE WEIGHING OF AGGRAVATING AND MITIGATING FACTORS

Fields claims his trial counsel ineffectively requested a single penalty verdict for the two murders.  2255 Mtn. 112-119; Mem. 90-99.  As the government argued, the request for a unitary verdict supported the defense's efforts to characterize the murders as a single behavioral irregularity.  Given that defense, Fields suffered no prejudice.  Doc. 110 at 40-42.  Fields responds by arguing that the unitary verdict permitted the jury to apply the mental anguish factor to two murders instead of one.

As the government has previously stated, its notice of intent to seek the death penalty provides no support for the position that the mental anguish aggravator applied to any one murder.  Trl. Doc. 38 at 3.  Because Charles Chick's murder formed the initial basis of Shirley's mental anguish, there exists no rational argument why the aggravator would not apply to his killing.  Because Shirley consciously experienced the horror of the double murder, the factor applies to her homicide.

Fields misconceives the anguish factor as a cause of action personal to the victims, rather than an allegation by the third-party government focused on his behavior. The same strain of logic would, presumably, extinguish Fields's liability for multiple murder aggravator (18 U.S.C. § 3592(c)(16)), as applied to Charles Chick, because he died before the defendant killed Shirley Chick. But multiple murder applies equally to all victims because its statutory definition refers to the defendant's actions (killing or attempting to kill) rather than the experience of the people victimized. Likewise, the anguish factor speaks to the defendant's action in inflicting mental anguish rather than any one victim's experience of it. The government was free to define the aggravator as it saw fit. *See United States v. Higgs*, 53 F.3d 281, 321 (4th Cir. 2003); *United States Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998). Fields fails to demonstrate it did not apply to both victims, much less that his counsel ineffectively requested a single penalty verdict.

## VII. THE PROSECUTION HONORED ITS OBLIGATIONS TO DISCLOSE EXCULPATORY MATERIAL

Fields claims the government suppressed exculpatory evidence concerning a bottle of Effexor and failed to provide evidence concerning two seized computers. 2255 Mtn. 119-24; Mem. 100-06. As the government has argued, Fields has not demonstrated that any aspect of the prosecution's actions amounted to prejudicial misconduct. Doc. 110 at 42. Fields responds by arguing the government raised factual issues that the Court cannot resolve without an evidentiary hearing. The government, however, stands by its position that the defendant has not and cannot establish, as a legal matter, the materiality of any evidence it allegedly failed to disclose.

## VIII. THERE ARE NO ERRORS TO ACCUMULATE

As the government has previously argued and demonstrated, Fields has failed to establish the existence of any prejudicial errors to accumulate. Doc. 110 at 42; *See United States v. Rogers*, 556 F.3d 1130, 1144 (10th Cir. 2009). Fields responds by, again, requesting an

evidentiary hearing.  His response is a non sequitur – as it appears to concede that he has not

established the existence of any prejudicial errors.  In any event, the government maintains as a

matter of law that Fields has not established a basis for a hearing or relief.

### IX. THIS COURT LACKS JURISDICTION TO DETERMINE WHETHER FIELDS'S EXECUTION WILL CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

Fields claims his execution would constitute cruel and unusual punishment under the

Eighth Amendment. 2255 Mtn. 125; Mem. 109. The parties concur the claim is not ripe for

review.  Doc. 110 at 43; Doc. 119 at 45.

**CONCLUSION**

Except as expressly admitted, the government denies every allegation of the § 2255 Motion and specifically denies that Fields's sentence is improper, that the judgment and commitment underlying that sentence is improper, or that his rights are being violated. Based on the foregoing reasoning and authority and that offered in the underlying motion, the government respectfully urges this Court to deny and dismiss the § 2255 Motion in its entirety.

Dated: February 2, 2016,

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Ave
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
chris.wilson@usdoj.gov

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 305-8910
Fax: (202) 353-9779
jeffrey.kahan@usdoj.gov

## CERTIFICATE OF SERVICE

I, hereby certify that on February 2, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Hunter Labovitz, Attorney for Petitioner
Cristi Charpentier, Attorney for Petitioner
Katherine E. Ensler, Attorney for Petitioner

*/S/ Jeffrey B. Kahan*
Trial Attorney