| | | |
|---|---|---|
| EDWARD LEON FIELDS, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CV-10-00115-RAW |
| | ) | Criminal Case No. CR-03-73-RAW |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE IN OPPOSITION TO MOTION TO ALTER AND AMEND JUDGMENT**

---

**COMES NOW**, Respondent, United States of America, by and through undersigned counsel, and files this response in opposition to Petitioner's Motion to Alter and Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 127).

**PRELIMINARY STATEMENT**

Following Fields's guilty plea to a six-count indictment, a petite jury in this district recommended a death sentence for the murders of two campers in the Ouachita National Forest. Trl. Doc. 228. This Court imposed the recommended sentence, and the Tenth Circuit Court of Appeals affirmed the judgment. *United States v. Fields*, 516 F.3d 923 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1905, 173 L.Ed.2d 1060 (2009).

Fields moved to vacate the judgment under 28 U.S.C. § 2255. Doc. 1. In support of that motion, his trial attorney, Julia O'Connell, provided a declaration in which she averred that she "had no tactical or strategic reason for not presenting [Fields's social] history either through one of the doctors or through Ms. Shettles." Doc. 2-2 at 13; Doc. 106-2 at 13. Following discovery and two expansions of the record, the government filed a motion for summary judgment (Doc. 110) and a reply in support thereof (Doc. 116). The government's pleadings, and its arguments

1

concerning the tactical bases for Ms. O'Connell's actions, were supported in part by illustrative examples of Ms. O'Connell's correspondence from the time of trial.

On December 15, 2016, this Court issued an opinion denying the § 2255 motion and a certificate of appealability. Doc. 125. The same day, the Court entered judgment. Doc. 126. On January 12, 2017, Fields moved to alter and amend the judgment under Rule 59(e). Doc. 127. This response in opposition follows.

## ARGUMENT

### THIS COURT PROPERLY DENIED A CLAIM OF INEFFECTIVNESS DESPITE COUNSEL'S DECLARATION THAT SHE ACTED WITHOUT A TACTICAL BASIS

Fields claims that this Court erred in rejecting Ms. O'Connell's declaration that she omitted, without a strategic basis, expert testimony about the defendant's social history. Fields also argues the Court erred when it did not find the social history evidence mitigating as a matter of law and its omission necessarily prejudicial to the defense. Doc. 127 at 2-7. Fields has failed to identify any clear error of fact or law that might give rise to a decision to alter or amend the judgment in this case.

Under Federal Rule of Civil Procedure 59(e), courts may grant reconsideration on three grounds: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A reconsideration motion "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd,* 43 F.3d 1484 (10th Cir.1994).

To demonstrate ineffective assistance of trial counsel, Fields must establish his attorney's performance was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, he first must show that counsel's performance fell below prevailing professional norms.

2

*Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009); *United States v. Salazar*, 323 F.3d 852, 857 (10th Cir. 2003). In so doing, Fields must overcome a strong presumption that counsel provided adequate assistance. *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000). Counsel's performance is not dictated by specific rules, and attorneys need not present all possible evidence in mitigation. *Bobby v. Van Hook*, 558 U.S. 4, 7, 10-12 (2009). Even counsel's admissions of error are not decisive, because the reasonableness of performance is a question for the court. *Walls v. Bowersox*, 151 F.3d 827, 836 (8th Cir. 1998); *see Allen v. Mullin*, 368 F.3d 1220, 1240 (10th Cir. 2004). Assuming Fields establishes deficient performance, he must also show a reasonable probability of a more favorable verdict, absent the alleged error. *See United States v. Haddock*, 12 F.3d 950, 958 (10th Cir. 1993).

In view of the prevailing authority, this Court properly rejected Ms. O'Connell's declaration that she omitted expert social history testimony without any tactical reason. The Court, as Fields recognizes, premised its decision on cases in which a sworn post-conviction admission of error was contradicted by trial counsel's earlier statements. Doc. 127 at 3 (citing *Allen*, 368 F.3d at 1240 and *Jackson v. United States*, 638 F. Supp. 2d 514, 528 (W.D.N.C. 2009)). Fields argues, however, that Ms. O'Connell had not made statements that conflicted with her declaration. In this regard, Fields – and not the Court – has erred.[1]

Ms. O'Connell explained to her colleagues before trial that the case in mitigation centered on evidence that the defendant experienced a drug-induced manic flip around the time of the murders. In an e-mail to Michael Burt, Ms. O'Connell wrote, "Most of my mitigation case

---

[1] Fields claims the cited authority does not apply to the facts of this case. Doc. 127 at 3-4. But he also asserts, without explanation, that the Court misapprehended the law. *Id*. at 5. Despite the perfunctory claim of legal error, Fields argument amounts to an effort to distinguish undisputedly valid case law and to "dress up arguments that previously failed." *Voelkel*, 846 F. Supp. at 1483.

3

is mental health evidence. Some evidence of frontal lobe impairment, but largely the compelling stuff is the manic-flip nature of Effexor treatment." Ex 1 at 15028 (Doc. 110 Ex. 8). The e-mail specifically set forth Ms. O'Connell's desire to forestall government evidence of Fields's anti-social conduct, however skeptical she was of it:

> My client has absolutely no criminal record. But the government believes he is a psychopathic retrobate [*sic*]. They gathered all the garbage they could on him, by going to the community and asking what they'd heard, about a month after the murders. The town is tiny, and there was nothing to talk about except the client. So the FBI guys got all the dirt. The gov't wanted to use the dirt in aggravation. The judge has ordered that most of it stays out. I'll list most of it here; don't laugh.
> [¶]
> Judge says virtually all of this stays out, as long as I don't open the door. Only stuff the gov't can use to support non-statutory aggravator of future danger is the growing interest in camoflauge [*sic*] and in stalking people. None of the cat hanging, cow slapping, minor violence, snake loving, creepy stuff.

*Id.* at 15027-28.

Given Ms. O'Connell's stated desire to rely on psychopharmacology evidence while avoiding evidence of dangerousness, Fields cannot sustain his argument that the Court erred in rejecting the lawyer's subsequent and contradictory declaration. *See also* Ex. 2 (Doc 110 Ex. 37 ("I want to settle this case, and the only way to do it is to convince the committee in Washington that Ed was SICK and that medicine he now takes makes him better and not dangerous"). Ms. O'Connell's averment that she did not possess a tactical basis for her actions is unreliable and should not result in a decision to alter or amend the judgment. *See Allen*, 368 F.3d at 1240.

Had Ms. O'Connell not articulated her thinking in correspondence, this Court still could have inferred her strategy from the evidence she adduced at trial. *See Wood v. Allen*, 558 U.S. 290, 303 (2010) (holding a state court could reasonably infer counsel's strategy from a debatable record). To portray the murders as anomalous, the defense presented Cherie Fields, who testified that she loved her brother. Tr. 11:2676, 2689. She recounted how Fields demonstrated his love

by planting a garden for his father and fishing with him. Tr. 11:2685-86. Admittedly, Cherie testified to negative aspects of her brother's family life, but not to outright dysfunction. *See, e.g.*, Tr. 11:2674-76 (stating that she and her brother fought as teenagers), 2703-05 (recounting Fields's irresponsibility), 2711 (opining Fields was an inadequate father). Consistent with the defense's overall strategy, Cherie testified that Fields was "sick," not "vicious." *See* Tr. 11: 2719-20. Her observations served the effort to portray the murders as offenses committed after the defendant had lived for 20 years outside his parents' home without an arrest. Ms. O'Connell's evidentiary presentation manifested her express – and entirely reasonable – strategy to portray the homicides as the product of a pharmaceutical error, not a character flaw.

Having failed to show deficient performance, Fields fares no better in attempting to demonstrate that this Court erred in rejecting his claim of prejudice. He begins with reference to uncontroversial authority for the premise that admissible mitigating evidence need not have a nexus to a defendant's crime of conviction. Doc. 127 at 5-6 (citing, inter alia, *Kabir v. Quarterman*, 550 U.S. 233, 246 (2007) and *Porter v. McCollum*, 558 U.S. 30 (2009)). But Fields misreads his own cases, suggesting that they obligated this Court to find that any admissible mitigating evidence was entitled to weight. When assessing a post-conviction claim of ineffectiveness, the court reweighs the penalty phase evidence to consider any omitted testimony, but it has no obligation to give effect to all admissible mitigation information. *See Strickland*, 466 U.S. at 689.

In rejecting Fields's claim of ineffectiveness, this Court reweighed the evidence and found that the foregone social history evidence would have detracted from the defense case, rather than enhanced it. Doc. 125 at 33. The Court did not reject the possibility that a jury could have considered the evidence, it simply found that the social history information would not have

carried sufficient mitigating weight to alter the outcome of the case in the defendant's favor. That decision does not represent legal error, even if Fields disagrees with it.

Fields also argues that prejudice flowed from the fact that Ms. O'Connell did not succeed in wholly preventing the government from introducing some aggravating evidence about his life during cross-examination of defense witnesses. Doc. 127 at 6. But the fact that Ms. O'Connell could not foretell the future does not negate the existence of the tactics that informed her choices. *See generally United States v. Fields*, 565 F.3d 290 (5th Cir. 2009) (holding clairvoyance is not required for effective representation). In any event, Fields does not show that counsel's strategy failed, as the defense avoided much of the evidence that concerned Ms. O'Connell in her e-mail to Mr. Burt. For instance, the government did not adduce testimony about the defendant's cruelty to animals, his televised masturbation, or his decision to bring a bomb-like device to his workplace. *Cf*. Ex. 1. What damaging history the government adduced on cross-examination, Ms. O'Connell blunted on redirect, a luxury she would not have enjoyed had the defense sponsored social history testimony that undermined the Effexor theory. *Cf. e.g*., Tr. 11:2717-18 (Cherie Fields explaining that her mother would have expressed fear of her son for attention), 2761 (Teresa Fields explaining that she never feared the defendant would kill or seriously injure he despite his domestic violence). Ms. O'Connell's tactics did not prejudice the outcome of the case, even if the government was able to introduce some damaging evidence.

Ms. O'Connell made a valid and wholly effective choice to limit damaging evidence, and this Court properly reweighed the evidence in mitigation under *Strickland* without giving inappropriate weight to social history testimony that would have undercut the defense's theory of the case. As such, Fields has not demonstrated any error in the rejection of his claim of prejudice, and this Court should deny his request to alter or amend the judgment.

## CONCLUSION

Based on the foregoing reasoning and authority, the government respectfully urges this

Court to deny Fields's motion to alter and amend the judgment.

Dated: January 30, 2017,

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

*/S/ Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Ave
Muskogee, OK 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
chris.wilson@usdoj.gov

*/S/ Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Section
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 305-8910
Fax: (202) 353-9779
jeffrey.kahan@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on January 30, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Hunter Labovitz, Attorney for Petitioner
Cristi Charpentier, Attorney for Petitioner
Katherine E. Ensler, Attorney for Petitioner

*/S/ Jeffrey B. Kahan*
Trial Attorney
